# Exhibit B

## **Plaintiffs' and Defendants' pleadings and responses**

# EXHIBIT B -1

7/28/2016 11:29:24 AM
Chris Daniel - District Clerk Harris County
Envelope No. 11874864
By: Monica Ovalle
Filed: 7/28/2016 11:29:24 AM

<div style="writing-mode: vertical">Certified Document Number: 71255830 - Page 1 of 4</div>

CAUSE NO. _____

| | | |
|---|---|---|
| **ALLEN LAWRENCE BERRY** | § | **IN THE DISTRICT COURT OF** |
| **2007 TRUST** | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY,  T E X A S** |
| | § | |
| **DAMON CADE** | § | **_____TH JUDICIAL DISTRICT** |

### PLAINTIFF'S ORIGINAL PETITION

Allen Lawrence Berry, Individual Trustee of the Allen Lawrence Berry 2007 Trust, Plaintiff, files this Original Petition complaining of Damon Cade ("Defendant"), Defendant herein, and respectfully states as follows:

### I.
### DISCOVERY

1.      Discovery in this case is intended to be conducted under Level 2.  *See* Texas R. Civ. P. 190.3.

### II.
### JURSIDICTION AND VENUE

2.      This Court has subject matter jurisdiction because the amount in controversy exceeds the jurisdictional requirement of this Court and because none of the causes of action pled fall within the exclusive jurisdiction of any court of this state.

3.      Venue is proper in Harris County, Texas because the acts and occurrences giving rise to the various causes of action occurred in part in Harris County, Texas.

### III.
### PARTIES AND SERVICE OF CITATION

4.      Plaintiff is Allen Lawrence Berry, Trustee of the Allen Lawrence Berry 2007 Trust and whose address is 5005 Riverway, Suite 440, Houston, Texas  77056.

5.      Defendant, Damon Cade is an individual residing in Harris County, Texas who resides at 14303 Red Creek Cove, Humble, Texas. Service is not requested at this time.

**IV.**
**FACTS**

6.      Defendant was responsible for operating certain oil and gas interests of Plaintiff.  Defendant, in operating said interests, failed to act as a reasonably prudent operator.

**V.**
**CAUSES OF ACTION**

**NEGLIGENCE**

7.      Plaintiff incorporates all previous paragraphs as if fully restated herein.

8.      Defendant owed a duty to Plaintiff to conduct operations in a reasonably prudent manner.  Defendant breached this duty.  Defendant knew or should have known that he was not acting a reasonably prudent operator.

**VI.**

**DAMAGES**

9.      Plaintiff seeks to recover all out-of-pocket losses that it has sustained.  In addition, Plaintiff has sustained actual damages including direct and consequential damages, as well as special damages, as a result of Defendant's breaches, including but not limited to: benefit of the bargain; loss of profit; loss of business opportunity; loss of investment opportunity; expenses and fees.

10.      Plaintiff's damages resulting from the conduct and omissions of the Defendant are continuing and are in excess of the jurisdictional minimums of this Court.

Certified Document Number: 71255830 - Page 2 of 4

11.     Finally, Plaintiff sues to recover prejudgment interest on all elements of damages incurred in the past as provided by law; post-judgment interest on the judgment rendered in this case at the legal rate, until paid in full; and costs of court.

## VII.
## CONDITIONS PRECEDENT

12.     All conditions precedent to bringing the above causes of action have been met or occurred.

## VIII.
## NO ELECTION OF REMEDIES

13.     The foregoing facts and theories are pled cumulatively and alternatively, with no election or waiver of rights or remedies.

## IX.
## TRIAL BY JURY

14.     Plaintiff requests trial by jury and submits appropriate jury fee.

## X.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Allen Lawrence Berry, Individual Trustee of the Allen Lawrence Berry 2007 Trust prays that it take judgment against Defendant and recover:

a.     All the actual damages and special damages caused by the wrongful conduct complained of herein;

b.     Just and reasonable attorney's fees;

c.     Pre- and post-judgment interest;

Certified Document Number: 71255830 - Page 3 of 4

    d.      Costs of suit;

    e.      Other such relief at law and equity for which it may be justly entitled.


               Respectfully submitted,

               BUTCH BOYD LAW FIRM


               By: _____
               Ernest W. Boyd
               State Bar No. 00783694
               2905 Sackett Street
               Houston, Texas 77098
               butchboyd@butchboydlawfirm.com
               Phone:  (713) 589-8477
               Fax:  (713) 589-8563

Certified Document Number: 71255830 - Page 4 of 4



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 5, 2019

Certified Document Number:        71255830 Total Pages:  4

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

# EXHIBIT B -2

8/1/2016 3:47:05 PM
Chris Daniel - District Clerk Harris County
Envelope No. 11932560
By: Brianna Denmon
Filed: 8/1/2016 3:47:05 PM

## CAUSE NO. 2016-49928

| | | |
|---|---|---|
| **ALLEN LAWRENCE BERRY** | § | **IN THE DISTRICT COURT OF** |
| **2007 TRUST** | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY,  T E X A S** |
| | § | |
| **DAMON KADE, et al.** | § | **125th JUDICIAL DISTRICT** |

## PLAINTIFF'S FIRST AMENDED ORIGINAL PETITION

Allen Lawrence Berry, Individual Trustee of the Allen Lawrence Berry 2007 Trust, Plaintiff, files this Original Petition complaining of Damon Kade ("Defendant"), Defendant herein, and respectfully states as follows:

### I.
### DISCOVERY

1.      Discovery in this case is intended to be conducted under Level 2.  *See* Texas R. Civ. P. 190.3.

### II.
### JURSIDICTION AND VENUE

2.      This Court has subject matter jurisdiction because the amount in controversy exceeds the jurisdictional requirement of this Court and because none of the causes of action pled fall within the exclusive jurisdiction of any court of this state.

3.      Venue is proper in Harris County, Texas because the acts and occurrences giving rise to the various causes of action occurred in part in Harris County, Texas. Furthermore, one or more of the defendants reside in Harris County, Texas.

Certified Document Number: 71304398 - Page 1 of 6

## III.
## PARTIES AND SERVICE OF CITATION

4.       Plaintiff is Allen Lawrence Berry, Trustee of the Allen Lawrence Berry 2007 Trust and whose address is 5005 Riverway, Suite 440, Houston, Texas  77056.

5.       Defendant, Damon Kade is an individual residing in Harris County, Texas and may be served at 14303 Red Creek Cove, Humble, Texas or wherever he may be found.

6.       Defendant, Kay Reick is an individual who may be served at his place of employment, Furie Operating Alaska, LLC, 100 Enterprise Avenue, League City, Texas or wherever he may be found.

7.       Defendant, Lars Degenhardt is an individual who may be served at his place of employment, Furie Operating Alaska, LLC, 100 Enterprise Avenue, League City, Texas or wherever he may be found.

8.       Defendant, Tom Hord is an individual who may be served at his place of employment, Furie Operating Alaska, LLC, 100 Enterprise Avenue, League City, Texas or wherever he may be found.

9.        Defendant, Furie Operating Alaska, LLC, is a Texas LLC doing business at 100 Enterprise Avenue, League City, Texas and may be served by serving its registered agent for service, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas  75201-3136.

10.       Defendant, Cornucopia Oil & Gas Company, LLC, is a Texas LLC doing business at 100 Enterprise Avenue, League City, Texas and may be served by serving its registered agent for service, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas  75201-3136.

Certified Document Number: 71304398 - Page 2 of 6

## IV.
## FACTS

11.     Defendants were responsible for operating certain oil and gas interests of Plaintiff.  Defendants, in operating said interests, failed to act as a reasonably prudent operator.

12.     Defendants at all times material were  responsible for the administration of certain oil and gas interests of Plaintiff.  In carrying out the administration of these interests, Defendants failed to properly administer said interest and failed to keep Plaintiff properly advised of his interests and failed to properly account for his interests.

## V.
## CAUSES OF ACTION

### NEGLIGENCE

13.     Plaintiff incorporates all previous paragraphs as if fully restated herein.

14.     Defendants owed a duty to Plaintiff to conduct operations in a reasonably prudent manner.  Defendant breached this duty.  Defendant knew or should have known that they were not acting as a reasonably prudent operator.

### GROSS NEGLIGENCE

15.     Plaintiff incorporates all previous paragraphs as if fully restated herein.

16.     In addition or in the alternative, Defendants are liable to Plaintiff for gross negligence.

17.     Defendants consciously and/or deliberately engaged in recklessness, oppression, fraud, willfulness, wantonness and will malice through their operations and administration of Plaintiff's interests.

Certified Document Number: 71304398 - Page 4 of 6

IMPROPER ADMINISTRATION AND ACCOUNTING

18.     Plaintiff incorporates all previous paragraphs as if fully restated herein.

19.     Defendants, have breached their duties to Plaintiff through improper administration.   Defendants have a duty to properly account, bill, and pay the appropriate amounts based on Plaintiff's interest.   Defendants have failed in this duty causing Plaintiff damages greatly exceeding the minimum jurisdictional limits of this Court.

20.     Plaintiff sues for an equitable accounting related to all joint interest billings, and monies owed to plaintiff.

## VI.

## DAMAGES

21.     Plaintiff seeks to recover all damages that it has sustained.   In addition, Plaintiff has sustained actual damages including direct and consequential damages, as well as special damages, as a result of Defendant's breaches.

22.     Plaintiff's damages resulting from the conduct and omissions of the Defendants are continuing and are in excess of the jurisdictional minimums of this Court.

23.     Finally, Plaintiff sues to recover prejudgment interest on all elements of damages incurred in the past as provided by law; post-judgment interest on the judgment rendered in this case at the legal rate, until paid in full; and costs of court.

## VII.
## <u>CONDITIONS PRECEDENT</u>

24.      All conditions precedent to bringing the above causes of action have been met or occurred.

## VIII.
## <u>NO ELECTION OF REMEDIES</u>

25.      The foregoing facts and theories are pled cumulatively and alternatively, with no election or waiver of rights or remedies.

## IX.
## <u>TRIAL BY JURY</u>

26.      Plaintiff requests trial by jury and submits appropriate jury fee.

## X.
## <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Allen Lawrence Berry, Individual Trustee of the Allen Lawrence Berry 2007 Trust prays that it take judgment against Defendant and recover:

a.      All the actual damages and special damages caused by the wrongful conduct complained of herein;

b.      Just and reasonable attorney's fees;

c.      Pre- and post-judgment interest;

d.      Costs of suit;

e.      Other such relief at law and equity for which it may be justly entitled.

Certified Document Number: 71304398 - Page 5 of 6

Respectfully submitted,

BUTCH BOYD LAW FIRM

By: _____
Ernest W. Boyd
State Bar No. 00783694
2905 Sackett Street
Houston, Texas 77098
butchboyd@butchboydlawfirm.com
Phone:  (713) 589-8477
Fax:  (713) 589-8563

Certified Document Number: 71304398 - Page 6 of 6



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 5, 2019

Certified Document Number:        71304398 Total Pages:   6

Marilyn Burgess, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

# EXHIBIT B -3

8/29/2016 8:55:41 AM
Chris Daniel - District Clerk Harris County
Envelope No. 12407193
By: bradley darnell
Filed: 8/29/2016 8:55:41 AM

Cause No: 2016-49928

| | | |
|---|---|---|
| ALLEN LAWRENCE BERRY 2007 TRUST | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| DAMON KADE, et al., | § | |
| | § | |
| Defendant. | § | 125th JUDICIAL DISTRICT |

## DEFENDANTS' ORIGINAL ANSWER AND SPECIAL EXCEPTIONS

FURIE OPERATING ALASKA, LLC ("Furie") and CORNUCOPIA OIL & GAS COMPANY, LLC ("Cornucopia") (hereinafter the "LLC Defendants"), file this Original Answer and Special Exceptions and would respectfully show the Court as follows:

### I.  General Denial

Reserving their right to plead further, the LLC Defendants generally deny each and every, all and singular, the allegations made against them and demand proof thereof by a preponderance of the evidence.

### II.  Special Exceptions

1.      Plaintiff has failed to include a statement regarding claimed damages as expressly required by Tex. R. Civ. P. 47.

2.      Defendants owed no tort-based duties to Plaintiff.  The named Plaintiff, the "Allen Lawrence Berry 2007 Trust," owns no interest in any properties owned or operated by the LLC Defendants.[1]  But, even if it owned such an interest, it has no right or ability, under Texas law or otherwise, to assert the claims that it purports to make in its "First Amended Original Petition"

_____

[1] A trust bearing the name "2007 Allen Lawrence Berry Trust" owns an overriding royalty interest in a mineral property of which defendant Furie Operating Alaska, L.L.C., is the operator pursuant to a written operating agreement.  A copy of the applicable division order is attached as Exhibit A.

Certified Document Number: 71664929 - Page 1 of 4

(the "FAP"). Those claims include "Negligence," "Gross Negligence," and "Improper Administration and Accounting." FAP at 3-4. As the Supreme Court explained in *Graff v. Beard,* 858 S.W.2d 918, 919 (Tex.1993), "[i]t is fundamental that the existence of a legally cognizable duty is a prerequisite to all tort liability." The FAP includes no allegations—none—that show the existence of a "legally cognizable duty" running from one or more of the defendants to the Plaintiff. Plaintiff has alleged, in attempting to plead a claim for "negligence," that "Defendants owed a duty to Plaintiff to conduct operations in a reasonably prudent manner." FAP at ¶14. The claim for "gross negligence" is equally infirm, stating that "Defendants are liable to Plaintiff for gross negligence." FAP at ¶16. The existence, *vel non,* of a legally cognizable duty is an issue that the Court decides as a matter of law and it can be raised via special exceptions. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex. 1990) ("In a negligence cause of action, the existence of "duty" is a question of law for the court to decide from the facts surrounding the occurrence in question."). The conclusory allegations of the FAP are insufficient, as a matter of law, to demonstrate the existence of any legally cognizable duty running from one or more of the Defendants to the Plaintiff.

3.      The "economic-loss" rule bars the claims. As is made clear from the FAP, the Plaintiff's interests and rights, if any, are established and governed by the terms of written agreements. The economic-loss rule provides that there exists no duty in tort when the only injury claimed is one for economic damages recoverable under a breach of contract claim. *Sterling Chems., Inc. v. Texaco, Inc.,* 259 S.W.3d 793, 796 (Tex.App.Houston [1st Dist.] 2007, pet. denied). That is, the economic loss rule precludes recovery in negligence if the loss is the subject matter of an existing contract. *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.,* 29 S.W.3d 282, 285 (Tex.App.-Houston [14th Dist.] 2000, no pet.). Courts have repeatedly applied the economic-loss rule to bar claims made by working interest owners against operators, reasoning that the losses

Certified Document Number: 7164929 - Page 2 of 4

being claimed arose from the underlying operating agreement.  See *Cone v. Fagadau Energy Corp.,* 68 S.W.3d 147, 161 (Tex. App.—Eastland 2001, pet. denied); *Castle Tex. Prod. L.P. v. Long Trusts*, 134 S.W.3d 267, 274-75 (Tex. App.—Tyler 2003, pet. denied).  Plaintiff's claims, if any, are based in contract; the economic loss rule bars its non-contract claims.

## **PRAYER**

For the foregoing reasons, the LLC Defendants pray that the Court sustain their special exceptions and render judgment that Plaintiff take nothing by reason of its allegations; that this action be dismissed on its merits; and that Defendants recover their fees and costs herein expended. The LLC Defendants seek such and other further relief, both specific and general, at law or in equity, to which the LLC Defendants may be justly entitled.

Respectfully submitted,

REYNOLDS FRIZZELL LLP

By:     */s/ Chris Reynolds*
          Chris Reynolds
          State Bar No:  16801900
          Christopher M. Hogan
          State Bar No:  24065434

1100 Louisiana Street, Suite 3500
Houston, TX 77002
Phone: (713) 485-7200
Fax:    (713) 485-7250
creynolds@reynoldsfrizzell.com
chogan@reynoldsfrizzell.com

**ATTORNEYS FOR DEFENDANTS**
**FURIE OPERATING ALASKA, LLC and**
**CORNUCOPIA OIL & GAS COMPANY, LLC**

## CERTIFICATE OF SERVICE

     I certify that on this the 29th day of August 2016, a true and correct copy of the foregoing instrument has been served upon counsel of record in accordance with the requirements of the Texas Rules of Civil Procedure, addressed as follows:

     Ernest W. Boyd
     BUTCH BOYD LAW FIRM
     2905 Sackett Street
     Houston, TX 77098
     Email: butchboyd@butchboydlawfirm.com
     Fax: (713) 589-8563

     */s/ Chris Reynolds*
     Chris Reynolds

Certified Document Number: 71664929 - Page 4 of 4



I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   November 5, 2019

Certified Document Number:        71664929 Total Pages:  4

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# EXHIBIT A

Certified Document Number: Page 1 of 3

# DIVISION ORDER

Furie Operating Alaska, LLC
100 Enterprise Ave
League City, TX  77573

12/13/2015

Owner:

        2007 Allen Lawrence Berry Trust
        A. Lawrence Berry, Trustee
        c/o Escopeta Oil Company
        5005 Riverway, Suite 440
        Houston, TX  77056

Owner Number: BERR01
Type of Interest: O
Decimal Interest: 0.00750000

| | |
|---|---|
| Property #: | KLU03 |
| Property Name: | KLU #3 Kitchen Lights Unit |
| Effective Date: | 11/01/2015 |
| Operator: | FURIE OPERATING ALASKA, LLC |

Legal Description:    T10N, R11W, SM, Sec. 2, Cook Inlet, Alaska
Corsair Block Lease

Production        GAS: Y      OIL: Y      PRD: Y

**THIS AGREEMENT DOES NOT AMEND ANY LEASE OR OPERATING AGREEMENT BETWEEN THE INTEREST OWNERS AND THE LESSEE OR OPERATOR OR ANY OTHER CONTRACTS FOR THE PURCHASE OF OIL OR GAS.**

The undersigned certifies the ownership of their decimal interest in production or proceeds as described above.

**TERMS OF SALE**:    The undersigned will be paid in accordance with the division of interests as set above.  The payor shall pay all parties at the price agreed to by the operator for oil and gas to be sold pursuant to this division order.  Payor shall compute quantity and make corrections for gravity and temperature and make deductions for impurities.

**PAYMENTS**:   From the effective date, payments are to be made by checks of payor, its successors or assigns, based on this division of interest, less taxes required by law to be deducted and remitted by payor as purchaser.  Payments of less than $100 will be accrued before disbursement until the total amount equals $100 or more, or December 31 of each year, whichever occurs first.  Owner agrees to refund payor any amounts attributable to an interest or part of an interest that owner does not own.

Certified Document Number: Page 2 of 3



**INDEMNITY:**   The owner agrees to indemnify and hold payor, its successors and assigns, and its agents, servants and employees harmless from all liability resulting from payments made to the owner in accordance with said division of interest, including but not limited to, attorney fees or judgments in connection with any suit that affects the owner's interest in which payor is made a party.

**DISPUTES-WITHHOLDING OF FUNDS:**  If a suit is filed that affects the interest of the owner, written notice shall be given to payor by the owner together with a copy of the complaint or petition filed.  In the event of a claim or dispute that affects title to the division of interest credited herein, payor is authorized to withhold payments accruing to such interest, without interest unless otherwise required by applicable statue until the claim or dispute is settled.

**TERMINATION:**   Termination of this agreement is effective on the first day of the month that begins after the 30th day after the date written notice of termination is received by either party.

**NOTICES:**The owner agrees to notify payor in writing of any change in the division of interest, including changes of interest contingent on payment of money or expiration of time.  No change of interest is binding on payor until the recorded copy of the instrument of change or documents satisfactorily evidencing such change are furnished to payor at the time the change occurs.  Any change of interest shall be made effective on the first day of the month following receipt of such notice by payor.  Any correspondence regarding this agreement shall be furnished to the addresses listed unless otherwise advised by either party.

**DEFAULT:**  If a working interest owner is in default in the payment of its share of the lease expenses, operator of the above lease, may withhold payment of any monies due the undersigned until operator has recovered all monies it is due for lease expenses.

In addition to the terms and conditions of this Division Order, the undersigned and Payor may have certain statutory rights under the laws of the state in which the property is located.

Owner(s) Signature(s):          Owner(s) Tax ID Number(s):          Daytime Phone:

_76-6225019_          _713/963-9112_

Witness Signature:

Witness Signature:

Owner Contact Email: _Lberry4@yahoo.com_

Federal Law requires you to furnish your Social Security or Taxpayer Identification Number.
Failure to comply will result in 30.5% tax withholding and will not be refundable by Payor.

Certified Document Number: Page 3 of 3



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 5, 2019

Certified Document Number:        71664931 Total Pages:  3

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# EXHIBIT B -4

9/6/2016 2:44:01 PM
Chris Daniel - District Clerk Harris County
Envelope No. 12544523
By: MELISSA TORRES
Filed: 9/6/2016 2:44:01 PM

<div align="center">

**CAUSE NO. 2016-49928**

</div>

| | | |
|---|---|---|
| **ALLEN LAWRENCE BERRY** | § | **IN THE DISTRICT COURT OF** |
| **2007 TRUST** | § | |
| | § | **HARRIS COUNTY, TEXAS** |
| **v.** | § | |
| | § | |
| **DAMON KADE, ET AL.** | § | **125TH JUDICIAL DISTRICT** |

<div align="center">

**DEFENDANT DAMON KADE'S**
**ORIGINAL ANSWER, SPECIAL EXCEPTIONS, AND REQUEST FOR DISCLOSURE**

</div>

Defendant Damon Kade ("Kade") files his original answer and special exceptions to the first amended original petition filed by Plaintiff Allen Lawrence Berry, Trustee of the Allen Lawrence Berry 2007 Trust and his request for disclosure. In support of his answer, special exceptions, and request for disclosure, Kade would respectfully show the Court the following:

<div align="center">

**General Denial**

</div>

1.     Kade generally denies the allegations in Plaintiff's First Amended Original Petition and demands strict proof thereof.

<div align="center">

**Special Exceptions**

</div>

2.     Kade specially excepts to paragraphs 11-12 of Plaintiff's First Amended Original Petition, which set forth the only factual allegations in the petition. The two paragraphs comprise four short sentences of very general, broad allegations. They are insufficient to give Kade fair notice of the factual basis for any of Plaintiff's claims against him and enable him to prepare a defense. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896-97 (Tex. 2000); *see also* TEX. R. CIV. P. 47(a).

3.     Kade specially excepts to paragraphs 16-17 of Plaintiff's First Amended Original Petition, which allege gross negligence, because Plaintiff fails to allege sufficient facts to apprise Kade of the kind of proof that Plaintiff will offer to show gross negligence. *See Williams v.*

Certified Document Number: 71775186 - Page 1 of 3

*Neutercorp*, No. 01-94-00823-CV, 1995 WL 231140, at *6 (Tex. App.—Houston [1ˢᵗ Dist.] Apr. 20, 1995, no writ).

4.      Kade specially excepts to paragraphs 21-23 of Plaintiff's First Amended Original Petition, which pertain to damages, because Plaintiff fails to specify the maximum amount of damages he claims. *See* TEX. R. CIV. P. 47(c).

5.      Kade specially excepts to the Prayer contained in Plaintiff's First Amended Original Petition because it asks for attorney's fees but does not specify any legal basis for an award of attorney's fees in this case.

6.      Kade asks the Court, after a hearing, to sustain his special exceptions and order Plaintiff to replead and cure the pleading defects.

### Request for Disclosure

7.      Kade requests, pursuant to Texas Rule of Civil Procedure 194, that Plaintiff disclose, within 30 days of the service of this request, the information or material described in Texas Rule of Civil Procedure 194.2.

### Prayer

8.      For these reasons, Kade respectfully requests that the Court sustain his special exceptions and dismiss this suit with prejudice or render judgment that Plaintiff take nothing. Kade further requests all other relief to which he may be entitled.

Certified Document Number: 71775186 - Page 2 of 3

Respectfully submitted,

**DALY & BLACK, P.C.**

By: /s/ John Scott Black
    John Scott Black
    State Bar No. 24012292
    Richard D. Daly
    State Bar No. 00796429
    Melissa Waden Wray
    State Bar No. 24008614
    2211 Norfolk Street, Suite 800
    Houston, Texas 77098
    jblack@dalyblack.com
    rdaly@dalyblack.com
    mwray@dalyblack.com
    713.655.1405—Telephone
    713.655.1587—Facsimile

**ATTORNEYS FOR DEFENDANT
DAMON KADE**

## CERTIFICATE OF SERVICE

I certify that on September 6, 2016, the foregoing document was served on the following counsel of record by notice of electronic filing in accordance with the Texas Rules of Civil Procedure:

Ernest W. Boyd
Butch Boyd Law Firm
2905 Sackett St.
Houston, Texas 77098
(713) 589-8477 – Phone
(713) 589-8563 – Fax
butchboyd@butchboydlawfirm.com

          /s/ John Scott Black
          John Scott Black

Certified Document Number: 71775186 - Page 3 of 3



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 5, 2019

Certified Document Number:        71775186 Total Pages:  3

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# EXHIBIT B -5

11/1/2016 6:21:20 PM
Chris Daniel - District Clerk Harris County
Envelope No. 13567052
By: Barbara Thompson
Filed: 11/1/2016 6:21:20 PM

<div style="text-align:center">

**CAUSE NO. 2016-49928**

</div>

| | | |
|---|---|---|
| **ALLEN LAWRENCE BERRY** | § | **IN THE DISTRICT COURT OF** |
| **2007 TRUST** | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, T E X A S** |
| | § | |
| **DAMON KADE, et al.** | § | **125th JUDICIAL DISTRICT** |

<div style="text-align:center">

**PLAINTIFF'S SECOND AMENDED PETITION**

</div>

Allen Lawrence Berry, Individual Trustee of the Allen Lawrence Berry 2007 Trust ("Plaintiff") files this Second Amended Petition complaining of Damon Kade, Kay Reick, Lars Degenhardt, Tom Hord, Furie Operating Alaska, LLC, and Cornucopia Oil & Gas Company, LLC ("Defendants"), Defendants herein, and respectfully states as follows:

<div style="text-align:center">

**I.**
**DISCOVERY AND RELIEF SOUGHT**

</div>

1.      Discovery in this case is intended to be conducted under Level 2.  *See* Tex. R. Civ. P. 190.3.

2.      Plaintiff seeks monetary relief over $1,000,000.  *See* Tex. R. Civ. P. 47(c).

<div style="text-align:center">

**II.**
**JURSIDICTION AND VENUE**

</div>

3.      This Court has subject matter jurisdiction because the amount in controversy exceeds the jurisdictional requirement of this Court and because none of the causes of action pled fall within the exclusive jurisdiction of any court of this state.

4.      Venue is proper in Harris County, Texas because the acts and occurrences giving rise to the various causes of action occurred in part in Harris County, Texas. Furthermore, one or more of the defendants reside in Harris County, Texas.

Certified Document Number: 72577579 - Page 1 of 10

### III.
### PARTIES AND SERVICE OF CITATION

4.     Plaintiff is Allen Lawrence Berry, Trustee of the Allen Lawrence Berry 2007 Trust and whose address is 5005 Riverway, Suite 440, Houston, Texas 77056.

5.     Defendant, Damon Kade has made an appearance in this case.  Damon Kade is represented John Scott Black, Richard D. Daly, and Melissa Waden Wray of Daly & Black, P.C., 2211 Norfolk Street, Ste. 800, Houston, TX 77098

6.     Defendant, Kay Reick is an individual who may be served at his place of employment, Furie Operating Alaska, LLC, 100 Enterprise Avenue, League City, Texas or wherever he may be found.

7.     Defendant, Lars Degenhardt is an individual who was served by substituted service on October 24, 2016.

8.     Defendant, Tom Hord is an individual who was served by substituted service on October 24, 2016.

9.      Defendant, Furie Operating Alaska, LLC, is a Texas LLC has made an appearance in this case. Defendant Furie Operating Alaska, LLC is represented by Chris Reynolds and Christopher M. Hogan of Reynolds Frizzell, LLP, 1100 Louisiana Street, Ste. 3500, Houston, TX 77002.

10.     Defendant, Cornucopia Oil & Gas Company, LLC, is a Texas LLC has made an appearance in this case. Cornucopia Oil & Gas Company is represented by Chris Reynolds and Christopher Hogan of Reynolds Frizzell, LLP, 1100 Louisiana Street, Ste. 3500, Houston Texas 77002.

Certified Document Number: 72577579 - Page 2 of 10

## IV.
## FACTS

11.     Escopeta Oil, LLC ("Escopeta Oil") and Escopeta of Alaska, LLC, ("Escopeta Alaska") were originally owned by Allen Lawrence Berry ("Berry") and Danny Davis ("Davis").

12.     On October 22, 2010, Escopeta Oil and Taylor Minerals, LLC ("Taylor"), as Assignors, entered into a Lease Assignment and Participation Agreement ("Lease Assignment") with Escopeta Alaska, as Assignee, regarding leases in the Cook Inlet Basin ("Leases") in Alaska.   The following are the pertinent provisions of the Lease Assignment:

9.3     The parties acknowledge that under the current laws of the State of Alaska, certain expenses incurred in connection with the development of the KLU Leases may qualify to be refunded or reimbursed by the State of Alaska, HB 280 and the overall ACES Program or for credits against income taxes otherwise payable to the State of Alaska.  To the extent the parties are able to qualify for such tax credits, [Escopeta Oil] and Taylor hereby agree that all tax credits shall be monetized for the benefit of [Escopeta Alaska] as full and complete payment for the working interest costs of [Escopeta Oil] and Taylor for the drilling of the #1 KLU and subsequent wells in which [Escopeta Oil] and Taylor are working interest owners.

9.4     The parties acknowledge that under the current laws of the State of Alask, the wells drilled on all the Leases may qualify for a production royalty or a reduction in the royalty percentage paid to the State of Alaska.  To the extent the parties are successful in obtaining this royalty relief credit, the value or interest received pursuant to any such program on all leases will belong 79% to [Escopeta Alaska] and 21% to [Escopeta Oil] (for itself and, as applicable, for the benefit of Taylor).

9.5     [Escopeta Oil] and Taylor will contribute 100% of their share and all right, title and interested in and to all funds due from SB 309, HB 280, and the Alaska ACES Program for the development of the KLU.  For this contribution, along with prior work in developing the KLU geology and exploration program, [Escopeta Oil] and

Certified Document Number: 72577579 - Page 3 of 10

Taylor will own a 21% working interest based on a 75% NRI in the KLU drilling and development program. This working interest shall be free and clear of any and all additional costs and assessments and will include all drilling, completion, platform, pipeline and facility costs to bring oil and gas into production. The 21% working interest will come into effect at the time [Escopeta Alaska] has recovered 100% of its total costs of drilling, completing, building pipelines, platforms, necessary facilities and placing the Kitchen Lights Unit on production. [Escopeta Oil] and Taylor will pay their share of all operating expenses, workover and recompletion costs, in accordance with their respective working interest ownership, once [Escopeta Alaska] has recovered 100% of its total cost.

13. After the Lease Assignment was entered, Davis and Berry assigned 100% interest of Escopeta Oil and Escopeta Alaska to Furie Operating Alaska, LLC. However, Davis retained his interest in the Leases individually, and Berry transferred his interest in the Leases to the Allen Lawrence Berry 2007 Trust ("Berry Trust").

14. Escopeta Alaska changed its name to Defendant Cornucopia Oil & Gas Company, LLC ("Cornucopia") after entering into the Lease Assignment. Upon information and belief, Furie Operating is owned 100% by Defendant Furie Petroleum Company, LLC ("Furie Petroleum"), Furie Petroleum is owned 100% by Defendant Advanced Capital Funding ("ACF"), and Furie Petroleum is owned 88% by Cornucopia.

15. Additionally, upon information and belief, Cornucopia is also owned wholly or partially by Deutsche Oel & Gas, AG ("Deutsche"), Deutsche is owned 100% by Alecto, Ltd. ("Alecto"), and Alecto is owned 100% indirectly by Defendant Kay Reick.

16. Upon information and belief, Defendant Lars Degenhardt is the President of Furie Operating and has a connection to Deutsche, Defendant Damon Kade is the

former President of Furie Petroleum, and DefendantTom Hord is the Chief Operating Officer of Furie Petroleum.

17.     Pursuant to the Lease Assignment and a subsequent transfer of an additional 1% to Cornucopia from Escopeta Oil, the current working interest in the Leases is divided as follows:

| | |
|---|---|
| 80% | Cornucopia |
| 6.875% | Davis |
| 7.875% | Berry Trust |
| 5.25% | Taylor |

18.     Pursuant to a Joint Operating Agreement between Escopeta Oil (later Furie Operating) and Escopeta Alaska (later Cornucopia) entered into on October 21, 2010, Furie Operating, through itself and the relationships with the other Defendants, was responsible for the administration and operation of the Leases.  Defendants, in operating said interests, failed to properly administer said interest, failed to keep Plaintiff properly advised of his interests, and failed to properly account for his interests.

19.     Specifically, Defendants (1) failed to properly account for tax credits received by the state of Alaska under Section 9.3 of the Lease Assignment; (2) failed to properly account for discovery royalties under Section 9.4 of the Lease Assignment; and (3) charged improper and excessive operating costs for the Leases at issue. Further, Defendants improperly engaged in self-dealing, as shown from the intertwined business relationship between the majority interest owner of the lease assignment, Cornucopia, and the operator, Furie Operating, and the further ownership structure of the entities described herein.

Certified Document Number: 72577579 - Page 5 of 10

## V.
## CAUSES OF ACTION

### NEGLIGENCE

20.     Plaintiff incorporates all previous paragraphs as if fully restated herein.

21.     Defendants owed a duty to Plaintiff to conduct operations in a reasonably prudent manner.  Defendants breached this duty.  Defendants knew or should have known that they were not acting as a reasonably prudent operator.

### GROSS NEGLIGENCE

22.     Plaintiff incorporates all previous paragraphs as if fully restated herein.

23.     In addition, or in the alternative, Defendants are liable to Plaintiff for gross negligence.

24.     Defendants consciously and/or deliberately engaged in recklessness, oppression, fraud, willfulness, wantonness and will malice through their operations and administration of Plaintiff's interests.

### BREACH OF CONTRACT

25.     Plaintiff incorporates all previous paragraphs as if fully restated herein.

26.     Defendants failed to abide by the terms and conditions of the Lease Assignment and Joint Operating Agreement.

27.     Plaintiff has peformed his contractual obligations, and all conditions precedent have been met.

28.     Defendants have breach the Lease Assignment and Joint Operating Agreement by failing to abide by one or more of the terms and conditions.  This breach has cause injury to Plaintiff.

Certified Document Number: 72577579 - Page 7 of 10

### BREACH OF FIDUCIARY DUTY/AIDING AND ABETTING

29.     Plaintiff incorporates all previous paragraphs as if fully restated herein.

30.     Defendants acted as a fiduciary to Plaintiff, owing Plaintiff the duty of good faith and fair dealing and the duty to make full disclosure to Plaintiff concerning matters affecting the Leases.

31.     Defendants have breached and/or aided and abetted the breach of fiduciary duties owed to Plaintiff by knowingly and intentionally failing to fully disclose and account for material facts concerning the Leases.  The breaches resulted in damages to Plaintiff greatly exceeding the minimum jurisdictional limits of this Court.

### IMPROPER ADMINISTRATION AND ACCOUNTING

32.     Plaintiff incorporates all previous paragraphs as if fully restated herein.

33.     Defendants, have breached their duties to Plaintiff through improper administration.   Defendants have a duty to properly account, bill, and pay the appropriate amounts based on Plaintiff's interest.  Defendants have failed in this duty causing Plaintiff damages greatly exceeding the minimum jurisdictional limits of this Court.

34.     Plaintiff sues for an equitable accounting related to all joint interest billings, and monies owed to plaintiff.

### VI.
### DAMAGES

35.     Plaintiff seeks to recover all damages that it has sustained.  In addition, Plaintiff has sustained actual damages including direct and consequential damages, as well as special damages, as a result of Defendants' breaches and action.

36.     Plaintiff's damages resulting from the conduct and omissions of the Defendants are continuing and are in excess of the jurisdictional minimums of this Court.

37.     Finally, Plaintiff sues to recover prejudgment interest on all elements of damages incurred in the past as provided by law, post-judgment interest on the judgment rendered in this case at the legal rate, until paid in full, and costs of court.

**VII.**
**CONDITIONS PRECEDENT**

38.     All conditions precedent to bringing the above causes of action have been met or occurred.

**VIII.**
**NO ELECTION OF REMEDIES**

39.     The foregoing facts and theories are pled cumulatively and alternatively, with no election or waiver of rights or remedies.

**IX.**
**TRIAL BY JURY**

40.     Plaintiff requests trial by jury and submits appropriate jury fee.

**X.**
**REQUEST FOR DISCLOSURE**

41.     Plaintiff requests, pursuant to Texas Rule of Civil Procedure 194, the Defendants named in this case to disclose, the information or material described in Texas Rule of Civil Procedure 194.2.

Certified Document Number: 72577579 - Page 8 of 10

## XI.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Allen Lawrence Berry, Individual Trustee of the Allen Lawrence Berry 2007 Trust prays that it take judgment against Defendants and recover:

a.      All the actual damages and special damages caused by the wrongful conduct complained of herein;

b.      Just and reasonable attorney's fees;

c.      Pre- and post-judgment interest;

d.      Costs of suit; and

e.      Other such relief at law and equity for which it may be justly entitled.

Respectfully submitted,

**BUTCH BOYD LAW FIRM**

_____
ERNEST W. BOYD
State Bar No. 00783694
butchboyd@butchboydlawfirm.com
CHERYL L. TURNER
State Bar No. 24076279
cherylturner@butchboydlawfirm.com
2905 Sackett Street
Houston, TX 77098
Phone:  (713) 589-8477
Fax:  (713) 589-8563

**ATTORNEYS FOR PLAINTIFF**

Certified Document Number: 72577579 - Page 9 of 10

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing instrument was served on all Counsel in accordance with T.R.C.P. on the 1st day of November, 2016:

*Via Facsimile (713) 485-7250*
*& Via Email*
Mr. Chris Reynolds
creynolds@reynoldsfrizzell.com
Mr. Christopher M. Hogan
chogan@reynoldsfrizzell.com
Reynolds Frizzell, LLP
1100 Louisiana Street, Ste. 3500
Houston, TX 77002
*Attorneys for Defendants, Furie Operating Alaska, LLC and Cornucopia Oil & Gas Company, LLC*

*Via Facsimile: 713-655-1587*
*& Via Email*
Mr. John Scott Black
jblack@dalyblack.com
Mr. Richard D. Daly
rdaly@dalyblack.com
Ms. Melissa Waden Wray
mwray@dalyblack.com
Daly & Black, P.C.
211 Norfolk Street, Ste. 800
Houston, TX 77098
*Attorneys for Defendant, Damon Kade*


_____

ERNEST W. BOYD



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 5, 2019

Certified Document Number:        72577579 Total Pages:  10

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

# EXHIBIT B -6

11/13/2016 8:36:49 PM
Chris Daniel - District Clerk Harris County
Envelope No. 13760468
By: MELISSA TORRES
Filed: 11/14/2016 12:00:00 AM

**Cause No: 2016-49928**

| | | |
|---|---|---|
| ALLEN LAWRENCE BERRY 2007 TRUST, | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| DAMON KADE, et al., | § § | |
| Defendants. | § | 125TH JUDICIAL DISTRICT |

## DEFENDANT TOM HORD'S ORIGINAL ANSWER

Defendant Tom Hold makes this his appearance and general denial and would show this Court as follows:

## GENERAL DENIAL

1.      Defendant Tom Hold generally denies each and every, all and singular the allegations in Plaintiff's petitions filed with this Court, which includes Plaintiff's live pleading, Plaintiff's Second Amended Petition that was filed with this Court on November 1, 2016.

## PRAYER

For these reasons, Defendant Tom Hord asks this Court to: (1) enter a take nothing judgment against Plaintiff Allen Lawrence Berry 2007 Trust; (2) assess costs against Plaintiff; and (3) award all other relief to which Defendant is entitled.

Respectfully submitted,

*/s/ J. Marcus "Marc" Hill*
J. Marcus "Marc" Hill
State Bar Number 09638150
Hill & Hill, P.C. Law Firm
1770 St. James Place, Suite 115
Houston, Texas 77056
713-688-6318 (Telephone)
713-688-2817 (Facsimile)
marc@hillpclaw.com

**ATTORNEY FOR DEFENDANT TOM HORD**

## CERTIFICATE OF SERVICE

I certify that on this 13th day of November 2016, a true and correct copy of the foregoing instrument has been served upon counsel of record in accordance with the requirements of the Texas Rules of Civil Procedure, by electronic e-filing service provider and electronic mail, as follows:

Ernest W. Boyd
Cheryl L. Turner
Butch Boyd Law Firm
butchboyd@butchboydlawfirm.com
cherylturner@butchboydlawfirm.com

**ATTORNEYS FOR PLAINTIFF**

John Scott Black
Richard D. Daly
Melissa Waden Wray
Daly & Black, P.C.
jblack@dalyblack.com
rdaly@dalyblack.com
mwray@dalyblack.com

**ATTORNEYS FOR DEFENDANT
DAMON KADE**

Chris Reynolds
Chris Hogan
Cory Liu
Reynolds Frizzell LLP
creynolds@reynoldsfrizzell.com
chogan@reynoldsfrizzell.com
cliu@reynoldsfrizzell.com

**ATTORNEYS FOR DEFENDANTS
FURIE OPERATING ALASKA LLC
and CORNUCOPOA OIL & GAS COMPANY LLC**

_/s/ J. Marcus "Marc" Hill_
J. Marcus "Marc" Hill

Certified Document Number: 72708461 - Page 2 of 2



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 5, 2019

Certified Document Number:        72708461 Total Pages:  2

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# EXHIBIT B -7

12/16/2016 1:28:07 PM
Chris Daniel - District Clerk Harris County
Envelope No. 14330541
By: MELISSA TORRES
Filed: 12/16/2016 1:28:07 PM

Cause No: 2016-49928

| | | |
|---|---|---|
| ALLEN LAWRENCE BERRY 2007 TRUST | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| DAMON KADE, et al., | § § | |
| Defendant. | § | 125th JUDICIAL DISTRICT |

## DEFENDANTS' FIRST AMENDED ANSWER AND SPECIAL EXCEPTIONS

FURIE OPERATING ALASKA, LLC ("Furie") and CORNUCOPIA OIL & GAS COMPANY, LLC ("Cornucopia") (collectively, the "LLC Defendants"), file this First Amended Answer and Special Exceptions and would respectfully show the Court as follows:

### I. General Denial

Reserving their right to plead further, the LLC Defendants generally deny each and every, all and singular, the allegations made against them and demand proof thereof by a preponderance of the evidence.

### II. Special Exceptions

1.      The Plaintiff alleges that it owns a "working interest" in Alaskan oil and gas leases being operated by Furie Operating.[1] Second Amended Petition (the "SAP") at ¶17. This case, as most recently re-pleaded, concerns Plaintiff's claims that Furie Operating has breached contractual obligations allegedly owed to Plaintiff, in its capacity as the owner of a working interest, under two agreements, including a "Lease Assignment and Participation Agreement" and a "Joint Operating Agreement" (the "JOA"). SAP at ¶¶ 17-18. Copies of the two agreements referenced

---

[1] The LLC Defendants deny that the Plaintiff owns a working interest in the project. Their records indicate that the Plaintiff owns an overriding royalty interest, but that the working interest is owned by Mr. Berry, in his individual capacity.

Certified Document Number: 73125609 - Page 1 of 5

in the SAP are attached as Exhibits A and B.  Only Furie Operating has any duties under either of the two agreements.  It now stands in the shoes of the original operator under the JOA.  SAP at ¶18.  None of the other defendants are parties to the JOA.  Those other defendants include, instead, (i) Cornucopia, the owner of the lion's share of the working interest; (ii) various individuals currently or formerly employed by affiliates of Furie Operating; and Kay Reick, an individual who has not yet been served.  Plaintiff's only allegation specific to Reick is that he is the ultimate, and quite indirect, owner of Cornucopia, itself a mere working interest owner.  SAP at ¶15.

2.      None of the Defendants owed any tort-based duties to Plaintiff.  Having pleaded the existence of governing agreements, Plaintiff has no right or ability, under Texas law or otherwise, to assert the tort claims that it purports to make in the SAP.  Those claims include "Negligence," "Gross Negligence," "Breach of Fiduciary Duty," and "Aiding and Abetting" SAP at 6-7.

3.      As the Supreme Court explained in *Graff v. Beard,* 858 S.W.2d 918, 919 (Tex.1993), "[i]t is fundamental that the existence of a legally cognizable duty is a prerequisite to all tort liability."  The SAP includes no allegations—none—that show the existence of a "legally cognizable duty" (save and except for the contractual duties of Furie Operating under the two, written agreements) running from one or more of the Defendants to the Plaintiff.  Accordingly, the LLC Defendants specially except to all of Plaintiff's tort claims.

4.      In addition, the "economic-loss" rule bars the claims.  As the SAP makes clear, the Plaintiff's interests and rights, if any, are established and governed by the terms of two, written agreements.  The economic-loss rule provides that there exists no duty in tort when the only injury claimed is one for economic losses arising from the breach of a contractual duty. *Sterling Chems., Inc. v. Texaco, Inc.,* 259 S.W.3d 793, 796 (Tex.App.Houston [1st Dist.] 2007, pet. denied).  That

Certified Document Number: 73125609 - Page 2 of 5

is, the economic loss rule precludes recovery in tort if the loss is the subject matter of an existing contract. *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.,* 29 S.W.3d 282, 285 (Tex.App.-Houston [14th Dist.] 2000, no pet.).  Courts have repeatedly applied the economic-loss rule to bar claims made by working interest owners against operators, reasoning that the losses being claimed arose from alleged breaches of the underlying operating agreement.  See *Cone v. Fagadau Energy Corp.,* 68 S.W.3d 147, 161 (Tex. App.—Eastland 2001, pet. denied); *Castle Tex. Prod. L.P. v. Long Trusts*, 134 S.W.3d 267, 274-75 (Tex. App.—Tyler 2003, pet. denied). Plaintiff's claims, if any, are based in contract; the economic loss rule bars its non-contract claims.

## **PRAYER**

For the foregoing reasons, the LLC Defendants pray that the Court sustain their special exceptions and render judgment that Plaintiff take nothing by reason of its allegations; that this action be dismissed on its merits; and that Defendants recover their fees and costs herein expended. The LLC Defendants seek such and other further relief, both specific and general, at law or in equity, to which the LLC Defendants may be justly entitled.

Certified Document Number: 73125609 - Page 3 of 5

Respectfully submitted,

**REYNOLDS FRIZZELL LLP**

By:    */s/ Chris Reynolds*
       Chris Reynolds
       State Bar No:  16801900
       Christopher M. Hogan
       State Bar No:  24065434
       Cory R. Liu
       State Bar No:  24098003
1100 Louisiana Street, Suite 3500
Houston, TX 77002
Phone: (713) 485-7200
Fax:    (713) 485-7250
creynolds@reynoldsfrizzell.com
chogan@reynoldsfrizzell.com
cliu@reynoldsfrizzell.com

**ATTORNEYS FOR DEFENDANTS
FURIE OPERATING ALASKA, LLC and
CORNUCOPIA OIL & GAS COMPANY, LLC**

4

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 16th day of December 2016, a true and correct copy of the foregoing instrument has been served upon counsel of record in accordance with the requirements of the Texas Rules of Civil Procedure, addressed as follows:

Ernest W. Boyd
Cheryl L. Turner
BUTCH BOYD LAW FIRM
2905 Sackett Street
Houston, TX 77098
butchboyd@butchboydlawfirm.com
cherylturner@butchboydlawfirm.com
Fax: (713) 589-8563
*Attorneys for Plaintiff*

John Scott Black
Richard D. Daly
Melissa Waden Wray
DALY & BLACK, P.C.
2211 Norfolk Street, Suite 800
Houston, TX 77098
jblack@dalyblack.com
rdaly@dalyblack.com
mwray@dalyblack.com
Fax: (713) 655-1587
*Attorneys for Defendant Damon Kade*

J. Marcus "Marc" Hill
HILL & HILL, P.C. LAW FIRM
1770 St. James Place, Suite 115
Houston, TX 77056
marc@hillpclaw.com
Fax: (713) 688-2817
*Attorney for Defendant Tom Hord*

*/s/ Chris Reynolds*
Chris Reynolds



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 5, 2019

Certified Document Number:        73125609 Total Pages:  5

Marilyn Burgess, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 5, 2019

Certified Document Number:      73125610 Total Pages:  0

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# EXHIBIT B

Certified Document Number: 51 Page 1 of 6

October 22, 2010

---

## LEASE ASSIGNMENT AND
## PARTICIPATION AGREEMENT

## COOK INLET BASIN, ALASKA

---

Between

# ESCOPETA OIL CO., LLC

And

# TAYLOR MINERALS, LLC

**"Assignors"**

And

# ESCOPETA OIL OF ALASKA LLC

**"Assignee"**

Certified Document Number: 88709 — Page 2 of 6

# LEASE ASSIGNMENT AND PARTICIPATION AGREEMENT

### *Cook Inlet, Alaska*

**THIS AGREEMENT** ("the Agreement") is made and entered into on October 22, 2010 ("the Effective Date") by and between

(1)  **Escopeta Oil Co., LLC**, a Texas Limited Liability Company ("**Escopeta**" or the "**Company**"), whose address is 5005 Riverway, Suite 440, Houston Texas 77056 and **Taylor Minerals, LLC**, a Texas Limited Liability Company, ("**Taylor**") whose address is 500 Dallas St., Penthouse 3450, One Allen Center, Houston, Texas 77002, collectively, "**Assignors**, and

**(2)**  **Escopeta Oil of Alaska LLC, ("EA"),** whose address is 5005 Riverway, Suite 440, Houston, Texas 77056.

## RECITALS

1.  Escopeta and Taylor are private companies engaged in the acquisition, exploration and development of oil and gas properties, and are the owners of certain oil and gas leases and rights to acquire additional leases located in the Cook Inlet Basin, State of Alaska.

2.  The leases owned by Assignors are as described in Exhibit "B" hereto, cover a recorded total of 94,706 acres of land, and comprise two major prospects identified as the Kitchen Light Unit ("KLU") and the North Alexander Prospect ("NAP"). Additional leases were purchased by Assignors in the Cook Inlet Areawide 2010 Sale, comprising ±17,000 acres of not yet recorded lease entitlements (the "Additional Leases") as described in Exhibit "E" to this Agreement, and are also included in the lease assignments contemplated by this Agreement. The leases comprising KLU, NAP, and Additional Leases are collectively referred to as the "Leases".

3.  Taylor owns a 25% working interest in certain of the Leases (the "Taylor Interest"), and Escopeta owns a 75% working interest in those Leases. In all other Leases, Escopeta owns 100% of the working interest, the 75% and 100% working interest ownership of Escopeta being hereinafter referred to as the "Escopeta Interest".

4.  EA wishes to acquire an ownership interest in the Leases from Assignors and undertake certain financial commitments to allow operations to explore and develop the Leases to immediately commence.

5.  Assignors are willing to collectively assign 79% of the working interest in the Leases to EA in return for the Consideration and under the terms and conditions set out in this Agreement.

**NOW, THEREFORE**, in consideration of the foregoing recitals and the agreements and covenants hereinafter set forth, the parties, agreeing to be legally bound, hereby agree as follows:

Certified Document Number: 88709847 - Page 3 of 6

## I.  The Lease Assignment

1.1     On and subject to the terms and conditions of this Agreement, each of the Assignors hereby agrees to assign and transfer to EA, and EA agrees to accept assignment of, each Assignor's proportionate share of 79% of the working interest in the Leases, all according to Section 9.5 of this Agreement, meaning that Assignors agree to collectively assign and deliver to Assignee 79% of the working interest in the Leases, based on a 75% net revenue interest delivered to 100% of the working interest.

1.2     The assignments and transfer by Assignors of the Leases to EA are subject to the payment by EA of the Consideration on a timely basis in US Dollars as set forth in Paragraph 2 below.

1.3     The assignment and transfers of 79% of the Escopeta Interest and 79% of the Taylor Interest in the Leases will be through recordable assignments to EA with a special warranty of title by, through and under Escopeta and Taylor, as applicable, but not otherwise.

1.4     The State of Alaska form of assignment will be executed for assignment of all interests conveyed in accordance with this Agreement herein.  All assignments of interest of all parties will be prepared and executed to be recorded with the State of Alaska by November 5, 2010.  A copy of the State of Alaska form of assignment is attached hereto as Exhibit "B".

## II.  Consideration and Payment

2.1     The consideration payable by EA to Assignors for the transfer of the interest in the Leases set out in Section 1.1 above shall be the sum of $20,800,000.00, being the reimbursement to Escopeta and Taylor acquisition and ownership of the leases.  As additional consideration, EA shall pay to Assignors, in immediately available funds, the estimated cost for the drilling of the #1 exploratory well, including costs of rig move, set up and related expenses, including but not limited to those set out in the Authority for Expenditure (AFE) attached to this Agreement as Exhibit "C" (the "Drilling Costs" ).  The parties understand that EA has the option for drilling the #2 KLU and it will be essentially the same as the current AFE.  The total #1 well costs are $25,000,000.00.

2.2     The Total Costs of $45,800,000.00 shall be deposited in two payments into Assignors designated account by wire transfer to:

**Texas Community Bank Co., LLC**
**1131 Uptown Park Blvd #12**
**Houston, Texas 77056**
**ABA #113124598**
**For Credit to:  Escopeta Oil Co., LLC**
**Account #1803444**

2.3     As further additional consideration, EA will pay 100% of  all Lease rental payments due to the State of Alaska for each of the Leases due or payable on or before December 15, 2010 (estimated

in the amount of $350,000.00 US dollars), and 100% of all Lease rental payments accruing thereafter.

## III.  Representations and Warranties of Assignors

3.1   The Escopeta Interest and the Taylor Interest are final, binding, enforceable and non-changeable, and are properly registered and recorded in the State of Alaska, including the applicable recording districts in the State of Alaska.

3.2   Escopeta is currently the registered operator of record in the State of Alaska for the KLU.

3.3   Escopeta and Taylor are limited liability companies duly organized, validly existing, and in good standing under the laws of the State of Texas.

3.4   Escopeta and Taylor are both duly registered and authorized to transact business in the State of Alaska.

3.5   All Leases are free and clear of debts and encumbrances, and Assignors are legally competent to assign the Leases, or any portion thereof, as they may desire.

3.6   Escopeta and Taylor each have full power and authority to execute and deliver this Agreement and to perform each of their obligations hereunder.

3.7   Escopeta and Taylor represent and warrant that the information provided to EA prior to the execution of this Agreement has been prepared with reasonable diligence and in accordance with recognized industry standards and practices.  To the actual knowledge of Escopeta and Taylor, none of the information provided is materially inaccurate, incomplete or misleading.

3.8.   Neither Escopeta nor Taylor are in breach or violation of, and the execution, delivery and performance of this Agreement by Escopeta and Taylor will not result in a breach or violation of, any of the provisions of their respective articles of organization, as amended to the date of this Agreement, operating agreement, as amended to the date of this Agreement, or any other contract to which Escopeta or Taylor is a party and that is material to its business plans or prospects.

3.9   Escopeta and Taylor each has the full right, corporate power and authority to execute and deliver this Agreement and to perform the transactions contemplated by this Agreement. The execution and delivery of this Agreement by Escopeta and Taylor and the performance by Escopeta and Taylor of the transactions contemplated hereby have been duly and validly authorized by all necessary corporate action. This Agreement has been duly executed, acknowledged, and delivered by Escopeta and Taylor and is the legal, valid and binding obligation of Escopeta and Taylor, enforceable against each of them in accordance with its terms, except to the extent that the enforceability hereof may be limited by bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally or by general principles of equity.

## IV.  Representations and Warranties of Assignee

Certified Document Number: 87064546 - Page 5 of 6

4.1     EA has or can obtain the financial resources in order to pay the Consideration as set out in Article II of this Agreement.

4.2     EA is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Texas.

4.3     EA is duly registered and authorized to transact business in the State of Alaska.

4.4     EA is not in breach or violation of, and the execution, delivery and performance of this Agreement by EA will not result in a breach or violation of, any of the provisions of EA articles of organization, as amended to the date of this Agreement, operating agreement, as amended to the date of this Agreement or any other contract to which EA is a party that is material to its business plans or prospects.

4.5     EA has the full right, corporate power and authority to execute and deliver this Agreement and to perform the transactions contemplated by this Agreement. The execution and delivery of this Agreement by EA and the performance by EA of the transactions contemplated hereby have been duly and validly authorized by all necessary corporate action. This Agreement has been duly executed, acknowledged, and delivered by EA and is the legal, valid and binding obligation of EA enforceable against EA in accordance with its terms, except to the extent that the enforceability hereof may be limited by bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally or by general principles of equity.

4.6     EA represents and warrants to Escopeta that EA or its principals are either experienced and knowledgeable in the oil and gas exploration and production business or have access to experienced and knowledgeable professionals and that they are making this investment decision based on their own due diligence and economic evaluations.

## V.  Obligations of Assignors

5.1     Escopeta and Taylor and their respective officers, directors, employees, attorneys, agents, and representatives have or will timely furnish to EA the following documents or information to the extent it is in their possession or control:

5.1.1   copies of all geological and geophysical work and proprietary information, seismic re-processing, sub-surface interpretation, and all other information and interpretation of the KLU and NAP prospects; and

5.1.2   Copies of all documents pertaining to State of Alaska permitting for the drilling of the KLU and NAP prospects.

5.2     Assignors shall cooperate, following closing, with EA in executing all necessary documents to assist EA in obtaining the necessary documents to operate in the State of Alaska;

Certified Document Number: 88709848 - Page 6 of 6

5.3    Assignors shall cooperate, following closing, to assist EA, the State of Alaska, and all third parties in furnishing information and executing documents, completing permits, and other general matters so that drilling can be commenced in the KLU in 2010. Escopeta agrees to provide EA with all technical assistance as reasonably requested during the development of the KLU.

5.4    Assignors shall furnish at closing lease assignments prepared in accordance with the then current form of assignment approved by the State of Alaska and in the number of original copies required for filing in all appropriate recording districts.

## VI.  Obligations of Assignee

6.1    Assignee shall pay the Consideration in a timely manner and in accordance with the terms of this agreement.

6.2    Obligations of Assignee that are clearly intended to continue after and beyond the Closing shall survive the Closing.

## THE PARTICIPATION AGREEMENT

## VII. Financing of the KLU Drilling Operations

7.1    The #1 Kitchen Lights Unit exploratory well ("#1 KLU) must be funded by EA no later than December 31, 2010 and spudded no later than May 30, 2011, or such later time as may be agreed to by all parties.

7.2    EA will pay 100% of the cost to drill the #1 exploratory well.  An updated Schedule of Operations and AFE for the #1 KLU are attached hereto as Exhibit "C".  The projected AFE in Exhibit "C" may be periodically updated prior to the spud date to reflect actual costs incurred and adjustments to projected costs that may occur between the time of AFE preparation and the spud date.  All AFE costs billed or used in preparation of updated AFE's will be directly from vendor invoice without surcharge.  EA understands that at its option the cost to drill the #2 KLU, subject to update for changed conditions or pricing, will be the same as for the #1 KLU, less an adjustment for rig movement costs.

7.3    EA, or its designated nominee, assignee or subsidiary shall provide and deliver the drilling funds as necessary to meet the requirements for the drilling of the #1 KLU exploratory well, and any subsequent KLU exploratory or development wells..

7.4    EA has an obligation under this portion of the Agreement to fund the drilling of the #1 KLU well.  In the event EA elects not to continue with the project after the drilling of the first two wells, EA shall be obligated and agrees to reassign the KLU Leases back to Escopeta and Taylor, less and except for the earned acreage granted to Escopeta, Taylor and EA by the State of Alaska.

## 8.  Drilling Operations in the KLU

Certified Document Number: 88709d4c77b22af2 - Page 6 of 6

8.1     Escopeta will remain the unit operator of the KLU following Closing.  EA, Escopeta and Taylor shall execute a Joint Operating Agreement ("JOA") in a form substantially similar to that set out in Exhibit "D" attached hereto, which has gained previous approval from the State of Alaska. Future obligations and the rights and obligations of all parties in relation to operating arrangements within the KLU shall be governed by the JOA.   In the event of a conflict between the JOA and this Agreement, the terms of this Agreement shall prevail, to the extent permitted by applicable law.

8.2     Escopeta, as operator, will cause actual drilling operations to commence on or before May 30, 2011 for the initial Test Well on the Kitchen Lights Unit (#1 KLU) to be drilled with due diligence to a target depth of not less than 17,000 feet subsea, or commencing at some later date or to some different depth as may otherwise be subsequently agreed to by all parties to the JOA.

8.3     In carrying out its obligations, Escopeta, as operator, will be responsible for procuring all drilling rigs, personnel and other necessities to enable drilling operations to take place in accordance with and at or near the prices detailed in the AFE for the initial exploratory well to be drilled on the Kitchen Lights Unit.  EA agrees to assist Escopeta on all aspects of the drilling of the #1 KLU.

8.4     Escopeta shall charge the joint account for travel expenses, including but not limited to transportation, lodging and food expenses and outside consultants when necessary, when such travel or engagement is conducted on behalf or in support of the KLU program, as reasonably necessary or as requested by EA or the members of the JOA in concert.

8.5     On all wells drilled on the Leases, each of the KLU Prospects subsequent to the Test Well on a KLU Prospect, Escopeta and Taylor will be compensated in the same manner as set forth in Section 9.5 of this Agreement.


## IX.  Post Closing Conduct of Business


9.1     Escopeta, as operator, will notify EA to pay all rental and other liabilities due and payable under the terms of the Leases to the State of Alaska for all periods following the year 2010.  Anything to the contrary herein notwithstanding, lease rental, renewal and other liabilities arising under this Section 9.1 shall be wholly to the account of EA, who shall pay 100% of such expenses for the life of this Agreement.

9.2     By entering into this Agreement, the parties hereby establish an area of mutual interest ("AMI") surrounding the Leases.  The AMI shall be comprised of the area within two (2) miles of the borders of each of the KLU and NAP  Leases.  On future leases added to the KLU, regardless of the party acquiring the lease, Escopeta and Taylor will hold or receive a 21% and EA a 75% net revenue interest to 100% of the working interest on the new lease, as will be the division on all Leases after assignment pursuant to this Agreement.  The retained overriding royalty interest and

working interest in all Leases will apply to any new leases acquired within the KLU or NAP or in the AMI as set forth herein and to any renewals or extensions of the Leases taken within three years after expiration or release of any Lease within the AMI. Any party acquiring a new lease within the AMI shall immediately advise the other working interest owners of such acquisition, and each working owner shall have thirty (30) in which to elect to participate proportionately to his working interest or reject the new lease. The acquiring party shall offer any rejected portion of the new lease, or any part thereof, to the working interest owners electing to participate. The acquiring party shall be reimbursed for lease acquisition costs by any working owner electing to participate, with the reimbursement proportionate to the ownership interest.

9.3     The parties acknowledge that under the current laws of the State of Alaska, certain expenses incurred in connection with development of the KLU Leases may qualify to be refunded or reimbursed by the State of Alaska SB 309, HB 280 and the overall ACES Program or for credits against income taxes otherwise payable to the State of Alaska. To the extent the parties are able to qualify and receive credit for such tax credits, Escopeta and Taylor hereby agree that all tax credits shall be monetized for the benefit of EA as full and complete payment for the working interest costs of Escopeta and Taylor for the drilling of the #1 KLU and subsequent wells in which Escopeta and Taylor are working interest owners.

9.4     The parties acknowledge that under the current laws of the State of Alaska, the wells drilled on all the Leases may qualify for a production royalty or a reduction in the royalty percentage paid to the State of Alaska. To the extent the parties are successful in obtaining this royalty relief credit, the value or interest received pursuant to any such program on all leases will belong 79% to EA and 21% to Escopeta (for itself and, as applicable, for the benefit of Taylor).

9.5     Escopeta and Taylor will contribute 100% of their share and all right, title and interest in and to all funds due from SB 309, HB 280, and the Alaska ACES Program for the development of the KLU. For this contribution, along with prior work in developing the KLU geology and exploration program, Escopeta and Taylor will own a 21% working interest based on a 75% NRI in the KLU drilling and development program. This working interest shall be free and clear of any and all additional costs and assessments and will include all drilling, completion, platform, pipeline and facility costs to bring oil and gas into production. The 21% working interest will come into effect at the time EA has recovered 100% of its total costs of drilling, completing, building pipelines, platforms, necessary facilities and placing the Kitchen Lights Unit on production. Escopeta and Taylor will pay their share of all operating expenses, workover and recompletion costs, in accordance with their respective working interest ownership, once EA has recovered 100% of its total cost.

9.6     For so long as Escopeta remains operator of the KLU:

        9.6.1   Upon reasonable notice by EA, Escopeta will use reasonable efforts to allow EA or its designated nominee, assignee or subsidiary to attend meetings, conferences and/or other similar formally scheduled events to discuss the progress of the project.

        9.6.2   Upon reasonable notice by EA, Escopeta will use reasonable efforts to accommodate requests by EA for the completion of specific tasks by specifically scheduled and

Certified Document Number: 87709546 - Page 9 of 6

mutually agreed upon deadlines; provided, however that EA has funded the unit operations in accordance with the then current AFE and the terms of this Agreement.

9.7     Subject to the understandings and qualifications set forth in Section 3.7, above, EA shall be entitled to rely on the completeness, correctness and accuracy of the information provided by Escopeta and Taylor in relation to the Leases and by Escopeta as to matters to be managed on a day-to-day basis after closing by Escopeta as operator.

9.8     Escopeta, Taylor and EA each agree and acknowledge that they shall comply at all times with all applicable federal and state laws and adhere to such regulations and guidelines provided and enforced by any regulatory bodies charged with the regulation of any aspect of operating the business of oil and gas exploration and production in general, and shall each pay their respective share of any and all taxes that fall due on any operations conducted in Alaska, including, without limitation, payroll taxes.

9.9     In the event Escopeta, Taylor, or EA wishes to sell all or part of its working interest position in the KLU or NAP to a third party, the prospective seller shall procure from the proposed purchaser a bona fide written offer for cash consideration, which it is willing to accept. The offering party shall give the other working interest owners thirty (30) days from the date the written offer is delivered to them, in which to purchase the interest for sale at the price and under the terms and conditions set out in the written offer. In the event the other working interest owners do not match the proposed purchaser's offer, then the offering party may sell its interest to the proposed purchaser. Parties have the right to transfer (not for sale) its interest whole or in part, to an affiliated company of the Party, in which case the right of first refusal option will not apply.

## X. Confidentiality; Return of Property and Information

10.1    "Confidential Information" of a party means and includes, but is not limited to, all information about that party, including, but not limited to, hardware, software, screens, specifications, designs, plans, drawings, data, prototypes, discoveries, research, developments, methods, processes, procedures, improvements, "know-how," trade secrets, compilations, market research, marketing techniques and plans, business plans and strategies, customer names and other information related to customers, price lists, pricing policies and financial information or other business and/or technical information and materials, in written, graphic, machine-readable form or in any other medium. Notwithstanding anything to the contrary contained in this Agreement, Confidential Information shall not include any information that: (i) is in the public domain or becomes generally known to parties outside of this Agreement on a non-confidential basis, through no wrongful act of the party to this Agreement having received such information from the disclosing party; (ii) is lawfully obtained by either party of this Agreement, as the case may be, from a party outside of this Agreement without any obligation to maintain the information as proprietary or confidential; (iii) was known to either party to this Agreement, as the case may be, prior to its disclosure by the other party to this Agreement, without any obligation to keep it confidential as evidenced by tangible records kept in the ordinary course of business; (iv) is independently developed by either party to this Agreement, as the case may be, without reference to any Confidential Information disclosed by the other party to this Agreement as evidenced by

Certified Document Number: 88709246 - Page 64 of 6

tangible records kept in the ordinary course of business; (v) is the subject of a written agreement whereby Escopeta or Taylor, or EA or its designated nominee, assignee or subsidiary, as the case may be, consents to the use or disclosure of such Confidential Information by the other party to this Agreement; or (vi) is required by applicable law to be disclosed by the party disclosing the same.

10.2    Each of Escopeta and Taylor severally agree that at all times they shall preserve as confidential all Confidential Information concerning EA and any actual or potential financial, strategic or operational participants or associates that has been disclosed to Escopeta and Taylor, and Escopeta and Taylor shall not, without the prior written consent of EA, use for Escopeta's and Taylor's own benefit or purposes, or disclose to any other party, any of the Confidential Information or participation, except as required under the terms of this Agreement or by applicable law. These obligations with respect to confidentiality shall continue for a period of one-year after the expiration or termination of this Agreement.  The terms of this Section 8.2 do not impair the right to disclose such Confidential Information by Escopeta and Taylor in order to defend Escopeta and Taylor from any claim in any court of law once Escopeta and/or Taylor has given EA notice of such intended use.

10.3    EA agrees that at all times EA or its designated nominee, assignee or subsidiary, shall preserve as confidential all confidential information concerning Escopeta, Taylor, and the KLU and NAP prospects, and EA shall not, without the prior written consent of Escopeta or Taylor, as applicable, use for EA's own benefit or purposes, or disclose to any third party, any of the Confidential Information, except:  (i) as required by the terms of this Agreement; (ii) as required by applicable law; and (iii) as may reasonably be required to be disclosed to EA lenders, potential lenders or any bona fide potential purchaser of an undivided interest of EA's interest in the Leases (subject to the terms of Section 9.9, above, and so long as such third party executes a confidentiality agreement reasonably acceptable to Escopeta).  These obligations with respect to confidentiality of the Confidential Information shall continue for a period of one (1) year after expiration or termination of this Agreement.  The terms of this Section 8.3 do not impair the right to disclose such Confidential Information by EA in order to defend EA from any claim in any court once EA gives Escopeta and Taylor notice of such intended use.

10.4    All records, business plans, financial statements, manuals, memoranda, documents, correspondence, reports, records, charts, lists and other similar data delivered to or compiled by Escopeta or by or on behalf of EA that pertain to the business of Escopeta and Taylor shall be and remain the property of Escopeta and Taylor, and shall be subject at all times their joint discretion and control. In the event of the termination of this Agreement, whether before or after Closing, all such materials pertaining to the business of Escopeta and Taylor that has been obtained by EA shall be delivered promptly to Escopeta upon written request by Escopeta, provided, however, that EA may retain copies of any such documents and materials which may be reasonably necessary to maintain business, accounting, and legal records associated with this Agreement and its obligations thereunder.

### XI.  Default; Notice and Cure

11.1    Anything contained in this Agreement to the contrary notwithstanding, neither party shall be considered to have failed to perform any material obligation or duty under this Agreement unless and until:

    11.2.1  In the case of a failure to pay any monetary consideration, such failure shall not have been cured within ten (10) business days after receipt of written notice thereof from the party demanding payment.

    11.2.2  In the case of any other failure to perform any obligation or duty under this Agreement, such failure shall not have been cured within thirty (30) business days after receipt of written notice from the demanding party describing in reasonable detail the obligation or duty and circumstances of the defaulting party's failure to perform.

## XII.  Miscellaneous

12.1    <u>Amendments</u>

This Agreement may be amended, supplemented or modified only in a writing signed by authorized representatives of the parties hereto.

12.2    <u>Notices</u>

All notices and other communications provided for or permitted hereunder shall be in writing and shall be delivered personally, by facsimile or by courier service providing for next day service, or sent by registered or certified mail, postage prepaid, and return receipt requested, or electronic mail, if confirmed by a subsequent written letter to the party at the address noted below:

<u>If to EA:</u>
Escopeta Oil of Alaska L.L.C.
5005 Riverway, Suite 440
Houston, Texas 77056
USA
Tel: 713-623-2219
Fax: 713-439-1205
<u>E-mail: escopeta@swbell.net</u>

<u>If to Escopeta:</u>
Escopeta Oil Co., L.L.C.
5005 Riverway, Suite 440
Houston, Texas 77056
USA
Tel: 713-623-2219
Fax: 713-439-1205
E-mail: escopeta@swbell.net

Certified Document Number: 8Page 2 of 6

If to Taylor:
One Allen Center
3400 Penthouse
500 Dallas St #3450
Houston, Texas 77002
USA
Tel: 713-654-7799
Fax: 713-654-7814
E-mail: rtaylor@rgtaylorlaw.com

12.3    Governing Law; Jurisdiction

This Agreement shall be governed by the laws of the State of Texas without giving effect to its conflict of laws provisions in relation to all the clauses in this Agreement save for those clauses dealing with the validity of the Leases and the drilling and exploration rights which shall be governed by the laws of the State of Alaska. The parties agree to submit to the jurisdiction of the courts of the State of Texas for all purposes, and sole and exclusive venue for any dispute or disagreement arising under or relating to this Agreement shall rest with the applicable court sitting in Harris County, Texas.

12.4    Waiver

Failure or delay on the part of either party hereto to enforce any right, power, or privilege hereunder shall not be deemed to constitute a waiver thereof. Additionally, a waiver by either party of a breach of any promise hereof by the other party shall not operate as or be construed to constitute a waiver of any subsequent waiver by such other party.

12.5    Binding Effect

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

12.6    Attorneys' and Experts' Fees; Remedies

In any action, suit or proceeding brought to enforce any provision of this Agreement, or where any provision of this Agreement is validly asserted as a defense, the prevailing party shall be entitled to recover reasonable attorneys' and experts' fees and expenses in addition to any other available remedy. Other than the right to recover fees in the preceding sentence, in any dispute between the parties arising out of this Agreement, neither party shall be liable to the other for any indirect, special, consequential or incidental damages (including, without limitation, lost profits).

12.7    No Third Party Beneficiary

The terms and provisions of this Agreement are intended solely for the benefit of each party hereof and their respective successors or permitted assigns, and it is not the intention of the

Certified Document Number: 88709 Page 3 of 6

parties to confer third-party beneficiary rights upon any other person or entity other than the participants of this Agreement or to a permitted assignee holding a valid and legally binding assignment of the benefits, rights and obligations as contained in this Agreement

12.8    Severability

Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

12.9    Section Headings, Construction

The headings of Articles and Sections in this Agreement are provided for convenience only and will not affect its construction or interpretation. All words used in this Agreement will be construed to be of such gender or number as the circumstances may require. Unless otherwise expressly provided, the word "including" does not limit the preceding words or terms.

12.10   Entire Agreement

This Agreement (including all Exhibits and Appendices) constitutes the entire agreement among the parties and supersedes any prior understandings, agreements, or representations by or among the parties, written or oral, to the extent they may be related in any way to the subject matter hereof.

12.11   Currency

All references to currency within this Agreement, unless otherwise stated, shall mean United States Dollars.

12.12   Business Day

For the purposes of this Agreement, a business day is defined as any calendar day during which the New York Stock Exchange is scheduled to be officially open for business for any period of time.

12.13   Counterparts

This Agreement may be executed in one or more counterparts by the parties hereto or any successor in interest, each of which shall be deemed to be an original and all of which together shall be deemed to constitute one and the same agreement.  The signature of any party to any counterpart shall be deemed a signature to, and may be appended to, any other counterpart.

### XIII.  Authorized Representatives

Certified Document Number: 8Page 4 of 6

13.1   For the execution and delivery of this Agreement, EA shall be duly represented by its Manager, or such other person as designated in writing by its Manager, who is authorized to execute this Agreement and commit and legally bind EA to the terms and conditions contained herein. Taylor shall be duly represented by its President or other person designated in writing by the President of Taylor, who is authorized to commit and legally bind Taylor to the terms and conditions contained herein.  Escopeta shall be duly represented by its Manager, or such other person as designated in writing by its Manager, who is authorized to execute this Agreement and commit and legally bind Escopeta to the terms and conditions contained herein.

13.2    For all operational matters following the Closing, each party shall be represented by its then current chief executive officer, or such person designated in writing by the then current chief executive officer, who shall be authorized to (a) provide suggestions, make recommendations and take such decisions as are required of working interest owners in dealing with the operator of any active unit comprised of the Leases, and (b) to provide suggestions and recommendations to the operational manager for any of the Leases not subject to a then current unit operating agreement.

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed and delivered by their duly authorized officers or agents as set forth below.


**Escopeta Oil of Alaska LLC**


Date: _____, 2010          By: _____
                                      Name: Danny S. Davis
                                      Title:   Manager


**Escopeta Oil Co., L.L.C.**


Date: _____, 2010          By: _____
                                      Name: Danny S. Davis
                                      Title:   Manager



Date: _____, 2010          By: _____
                                      Name: Lawrence Berry

Certified Document Number: 88709435 - Page 5 of 6

Title:   Manager

**Taylor Minerals, L.L.C.**

Date:   _____10/22/10_____ , 2010

By: _____

Name:  Robert G. Taylor II

Title:   President

Certified Document Number: 88709 — Page 6 of 6



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 5, 2019

Certified Document Number:        73125611 Total Pages:  16

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# EXHIBIT B -8

12/16/2016 3:43:13 PM
Chris Daniel - District Clerk Harris County
Envelope No. 14336648
By: MELISSA TORRES
Filed: 12/16/2016 3:43:13 PM

**CAUSE NO. 2016-49928**

| | | |
|---|---|---|
| ALLEN LAWRENCE BERRY 2007 TRUST | § § § | IN THE DISTRICT COURT OF |
| | | HARRIS COUNTY, TEXAS |
| v. | § § | |
| | § | |
| DAMON KADE, ET AL. | § | 125TH JUDICIAL DISTRICT |

### DEFENDANT DAMON KADE'S
### FIRST AMENDED ANSWER AND SPECIAL EXCEPTIONS

Defendant Damon Kade ("Kade") files his First Amended Answer and Special Exceptions and would respectfully show the Court the following:

### I.  General Denial

Reserving his right to plead further, Kade generally denies each and every, all and singular, the allegations made against him and demands proof thereof by a preponderance of the evidence.

### II.  Special Exceptions

1.      This case, as most recently re-pleaded, alleges negligence, gross negligence, breach of contract, breach of fiduciary duty/aiding and abetting, and improper administration and accounting against Defendants, who include: 1) Furie Operating Alaska, LLC ("Furie Operating"); 2) Cornucopia Oil & Gas Company, LLC ("Cornucopia"); and 3) several individuals. Kade is one of those individual defendants. He is the former president of Furie Operating.

2.      Plaintiff's claims purport to arise out of two agreements, including a "Lease Assignment and Participation Agreement" and a "Joint Operating Agreement" (the "JOA"). Second Amended Petition (the "SAP") at ¶¶ 17-18. Copies of the two agreements are attached as Exhibits A and B. Plaintiff alleges (and Defendants deny) that it owns a "working interest" in the properties being operated by Furie Operating. SAP at ¶ 17.

3.      Only Furie Operating has any duties under either of the two agreements. It now stands in the shoes of the original operator under the JOA. SAP at ¶18. Neither Kade nor any of

Certified Document Number: 73129713 - Page 1 of 4

the other Defendants is a party to the JOA. Plaintiff's only allegation specific to Kade is that he is the former president of Furie Operating. SAP at ¶ 16.

4.      In addition, none of the Defendants, including Kade, owed any tort-based duties to Plaintiff. Having pleaded the existence of governing agreements, Plaintiff has no right or ability, under Texas law or otherwise, to assert the tort claims that it purports to make in the SAP. As the Supreme Court explained in *Graff v. Beard,* 858 S.W.2d 918, 919 (Tex. 1993), "[i]t is fundamental that the existence of a legally cognizable duty is a prerequisite to all tort liability." The SAP includes no allegations—none—that show the existence of a "legally cognizable duty" (save and except for the contractual duties of Furie Operating under the two written agreements) running from one or more of the Defendants to Plaintiff. Accordingly, Kade specially excepts to all of Plaintiff's tort claims.

5.      Further, the "economic loss" rule bars the claims. As is made clear from the SAP, Plaintiff's interests and rights, if any, are established and governed by the terms of two written agreements. The economic loss rule provides that there exists no duty in tort when the only injury claimed is one for economic losses arising from the breach of a contractual duty. *See Sterling Chems., Inc. v. Texaco, Inc.,* 259 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). That is, the economic loss rule precludes recovery in tort if the loss is the subject matter of an existing contract. *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.,* 29 S.W.3d 282, 285 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Courts have repeatedly applied the economic loss rule to bar claims made by working interest owners against operators, reasoning that the losses being claimed arose from alleged breaches of the underlying operating agreement. *See, e.g., Cone v. Fagadau Energy Corp.,* 68 S.W.3d 147, 161 (Tex. App.—Eastland 2001, pet. denied); *Castle Tex. Prod. L.P. v. Long Trusts*, 134 S.W.3d 267, 274-75 (Tex. App.—Tyler 2003, pet. denied). Plaintiff's claims, if any, are based in contract (albeit no such claims exist against Kade because he is not a party to either contract); the economic loss rule bars its non-contract claims.

2

## PRAYER

For the foregoing reasons, Defendant Damon Kade prays that the Court sustain his special exceptions and render judgment that Plaintiff take nothing by reason of its allegations; that this action be dismissed on its merits; and that Kade recover his fees and costs herein expended. Kade seeks such and other further relief, both specific and general, at law or in equity, to which he may be justly entitled.

Respectfully submitted,

**DALY & BLACK, P.C.**

By: /s/ John Scott Black
    John Scott Black
    State Bar No. 24012292
    Richard D. Daly
    State Bar No. 00796429
    Melissa Waden Wray
    State Bar No. 24008614
    2211 Norfolk Street, Suite 800
    Houston, Texas 77098
    jblack@dalyblack.com
    rdaly@dalyblack.com
    mwray@dalyblack.com
    713.655.1405—Telephone
    713.655.1587—Facsimile

**ATTORNEYS FOR DEFENDANT
DAMON KADE**

3

## <u>CERTIFICATE OF SERVICE</u>

       I certify that on December 14, 2016, the foregoing document was served on the following counsel of record by notice of electronic filing in accordance with the Texas Rules of Civil Procedure:

Ernest W. Boyd
Butch Boyd Law Firm
2905 Sackett St.
Houston, Texas 77098
(713) 589-8477 – Phone
(713) 589-8563 – Fax
butchboyd@butchboydlawfirm.com

<div align="right">
/s/ John Scott Black<br/>
John Scott Black
</div>

Certified Document Number: 73129713 - Page 4 of 4



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 5, 2019

Certified Document Number:        73129713 Total Pages:  4

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# EXHIBIT B -9

3/3/2017 12:47:03 PM
Chris Daniel - District Clerk Harris County
Envelope No. 15653814
By: Monica Ovalle
Filed: 3/3/2017 12:47:03 PM

Certified Document Number: 74099868 - Page 1 of 18

<div align="center">

**CAUSE NO. 2016-49928**

</div>

| | | |
|---|---|---|
| **ALLEN LAWRENCE BERRY** | § | **IN THE DISTRICT COURT OF** |
| **2007 TRUST** | § | |
| | § | |
| **V.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **DAMON KADE, ET AL** | § | **125TH  JUDICIAL DISTRICT** |

<div align="center">

**PLEA IN INTERVENTION**

</div>

COMES NOW, TAYLOR MINERALS, LLC and GIZA HOLDINGS, LLC, hereinafter referred to as Intervenors, and file this *Plea in Intervention* and respectfully show the following:

<div align="center">

**I.**

</div>

1.      Intervenor TAYLOR MINERALS, LLC, hereinafter, "Taylor", is a Texas limited liability company whose address is 4119 Montrose Blvd., Suite 550, Houston, Texas 77006.

2.      Intervenor GIZA HOLDINGS, LLC, hereinafter, "Giza", is a Texas limited liability company whose address is 4119 Montrose Blvd., Suite 550, Houston, Texas 77006.

3.      Plaintiff is the Allen Lawrence Berry 2007 Trust, hereinafter, "Berry", acting through Allen Lawrence Berry, Trustee, and whose address is 5005 Riverway, Suite 440, Houston, Texas 77056.  Plaintiff's Counsel is Ernest W. Boyd, Butch Boyd Law Firm, 2905 Sackett Street, Houston, Texas 77098.

4.      Defendant, Damon Kade, hereinafter, "Kade", has made an appearance in this case. Damon Kade is represented John Scott Black, Richard D. Daly, and Melissa Waden Wray of Daly & Black, P.C., 2211 Norfolk Street, Ste. 800, Houston, TX 77098.

<div align="center">

Page **1** of 18

</div>

5.      Defendant, Kay Reick, hereinafter, "Reick", is an individual who may be served at his place of employment, Furie Operating Alaska, LLC, 100 Enterprise Avenue, League City, Texas or wherever he may be found.

6.      Defendant, Lars Degenhardt, hereinafter, "Degenhardt", is an individual who was served by substituted service on October 24, 2016.

7.      Defendant, Tom Hord, hereinafter, "Hord", is an individual who was served by substituted service on October 24, 2016.

8.       Defendant, Furie Operating Alaska, LLC, hereinafter, "Furie", is a Texas LLC has made an appearance in this case. Defendant Furie Operating Alaska, LLC is represented by Chris Reynolds and Christopher M. Hogan of Reynolds Frizzell, LLP, 1100 Louisiana Street, Ste. 3500, Houston, TX 77002.

9.       Defendant, Cornucopia Oil & Gas Company, LLC, hereinafter, "Cornucopia", is a Texas LLC has made an appearance in this case. Cornucopia Oil & Gas Company is represented by Chris Reynolds and Christopher Hogan of Reynolds Frizzell, LLP, 1100 Louisiana Street, Ste. 3500, Houston Texas 77002.

## II.

10.      Defendant FURIE PETROLEUM COMPANY, LLC has not appeared in this action and is a Texas domestic corporation which may be served with process by serving C. T. Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

Certified Document Number: 74099868 - Page 2 of 18

Certified Document Number: 74099868 - Page 3 of 18

### III.
### DISCOVERY PLAN

11.     In accordance with Rule 190 of the Texas Rules of Civil Procedure, Intervenor requests discovery be conducted under Level 3 and that an appropriate Docket Control Order be entered after Defendants have responded.

### IV.

12.     On July 28, 2016, Plaintiff sued Defendants.  Plaintiff filed his *Second Amended Original Petition* on November 1, 2016.  Plaintiff's lawsuit alleges negligence, gross negligence, breach of contract, breach of fiduciary duty and aiding and abetting breach of fiduciary duty, improper administration and improper accounting by Defendants relating to contracts and representations involving the Lease Assignment and Participation Agreement, hereinafter, "Lease Agreement", entered on or about October 22, 2010 and the Joint Operating Agreement, hereinafter "JOA", entered on or about the same date.  The Lease Agreement and JOA relate to certain Oil and Gas Leases issued by the State of Alaska.  Plaintiff owns a portion of a working interest in the oil and gas agreements which were made basis of the litigation.

13.     Intervenors satisfy the intervention standard provided in Texas Rule of Civil Procedure 60.  A party may intervene in litigation in which it has a justiciable interest in a pending suit.  *In re Union Carbide Corp.*  273 S.W.3d 152, 155 (Tex. 2008).  A party holds a justiciable interest in a lawsuit when its interests will be affected by the litigation. *Id at 155*   A party may intervene in a suit if it could have brought all or part of the same suit in its own name. *Id at 155*

3

13.     Intervenor Taylor is similarly situated to Plaintiff.  Taylor is a party to both the Lease Agreement and the JOA made basis of this litigation and Taylor and also owns working interest rights under these agreements and leases of the same nature as Plaintiff.  Taylor's interests clearly may be affected by this litigation and Taylor's claims include the same causes of action as Plaintiff.

14.     Intervenor Giza is also similarly situated to Plaintiff.  Giza owns royalty interests arising from the Leases, Lease Agreement and the JOA agreement which are made subject of this litigation and its rights may be affected by this litigation.

15.     Intervenors have a justiciable interest in the matters in controversy in this litigation.

## V.

16.     Intervenor Taylor and Intervenor Giza are Texas limited liability companies. Escopeta Oil Co., LLC, hereinafter "Escopeta Oil", and Escopeta of Alaska, LLC, hereinafter, "Escopeta Alaska", were originally owned by Plaintiff and Danny Davis, hereinafter, "Davis".

17.     On January 26, 2004, Escopeta Oil Co., LLC and Taylor Minerals, LLC entered into a Participation Agreement in which Taylor Minerals acquired an undivided 25% working interest in approximately 99,000 acres covered by Oil and Gas Leases in the Alexander, Kitchen and East Kitchen Prospect, Cook Inlet Alaska.  Taylor Minerals paid substantial cash consideration to Escopeta Oil to acquire the interest.  In addition, Escopeta agreed to assign to Taylor or its designee an overriding royalty interest in the Leases.  Pursuant to the Participation Agreement, Escopeta undertook the obligation to manage the interests and the parties agreed to execute an operating agreement.

Certified Document Number: 74099868 - Page 4 of 18

18.     At the request at Escopeta Oil, Taylor and Escopeta Oil executed a Nominee Agreement and Notice of Nominee Agreement dated January 6, 2004, which authorized Escopeta Oil at its request to hold record title to the interests in the name of Escopeta for the benefit of Escopeta and Taylor "for ease of administration and management of the Interests."  Escopeta Oil agreed to act as nominee, agent and attorney-in-fact on behalf of Taylor Minerals in accordance with the Nominee Agreement.  The Nominee Agreement imposed specific restrictions on the agent's authority with respect to the Taylor Minerals' interest.

19.     On October 22, 2010, Escopeta Oil and Taylor entered the Lease Assignment with Escopeta Alaska regarding leases owned by Escopeta Oil and Taylor in the Cook Inlet Basin in Alaska, hereinafter, "Leases".  The Lease Assignment included the following agreements:

> 9.3 The parties acknowledge that under the current laws of the State of Alaska, certain expenses incurred in connection with the development of the KLU Leases may qualify to be refunded or reimbursed by the State of Alaska, HB 280 and the overall ACES Program or for credits against income taxes otherwise payable to the State of Alaska. To the extent the parties are able to qualify for such tax credits, [Escopeta Oil] and Taylor hereby agree that all tax credits shall be monetized for the benefit of [Escopeta Alaska] as full and complete payment for the working interest costs of [Escopeta Oil] and Taylor for the drilling of the #1 KLU and subsequent wells in which [Escopeta Oil] and Taylor are working interest owners.

> 9.4 The parties acknowledge that under the current laws of the State of Alaska, the wells drilled on all the Leases may qualify for a production royalty or a reduction in the royalty percentage paid to the State of Alaska. To the extent the parties are successful in obtaining this royalty relief credit, the value or interest received pursuant to any such program on all leases will belong 79% to [Escopeta Alaska] and 21% to [Escopeta Oil] (for itself and, as applicable, for the benefit of Taylor).

> 9.5 [Escopeta Oil] and Taylor will contribute 100% of their share and all right, title and interested in and to all funds due from SB 309, HB 280, and the Alaska ACES Program for the development of the KLU. For this contribution, along with prior work in developing the KLU geology and exploration program, [Escopeta Oil] and Taylor will own a 21% working interest based on a 75% NRI in the KLU drilling

5

Certified Document Number: 74099868 - Page 5 of 18

Certified Document Number: 74099868 - Page 6 of 18

and development program. This working interest shall be free and clear of any and all additional costs and assessments and will include all drilling, completion, platform, pipeline and facility costs to bring oil and gas into production. The 21% working interest will come into effect at the time [Escopeta Alaska] has recovered 100% of its total costs of drilling, completing, building pipelines, platforms, necessary facilities and placing the Kitchen Lights Unit on production. [Escopeta Oil] and Taylor will pay their share of all operating expenses, workover and recompletion costs, in accordance with their respective working interest ownership, once [Escopeta Alaska] has recovered 100% of its total cost.

20.     Pursuant to the Lease Assignment, Taylor received a 5.25% working interest and certain overriding royalty interests in the Leases.  Subsequently, with knowledge of all parties to the Lease Agreement and JOA, certain overriding royalty interests were assigned by Taylor to Giza Holdings, parent of Taylor, out of Taylor's working interest in the Leases..  Prior to entering the Lease Agreement and JOA, Taylor entered into the Participation Agreement with Escopeta Oil and had acquired an undivided 25% working interest and a 25% of 75% Net Revenue Interest for a cash payment to Escopeta Oil.  Under the Participation Agreement, Escopeta Oil was responsible for the administration and operation of the Leases.  The Lease Assignment, JOA and Participation Agreement expressly state that each Agreement is binding upon and inures to the benefit of the successors and assigns of each party.

21.     Pursuant to the JOA entered into on October 21, 2010 between Escopeta Oil and Escopeta Alaska, including Intervenor Taylor, Escopeta Oil was the operator and Escopeta Alaska and Taylor were non-operating working interest owners.  Pursuant to the terms of the Lease Assignment agreement, Escopeta Alaska and Taylor assigned certain rights to Escopeta Oil and retained certain royalty interests and 21% of the working interest.  Escopeta Alaska, among other duties, agreed to fund 100% of the costs of drilling and development of the leases and in return, received assignment of 79% of the working interest.

6

22.     Subsequently to entering the Lease Agreements and the Joint Operating Agreement, ownership of Escopeta Oil and Escopeta Alaska was transferred to Defendant Furie with Plaintiff and Davis retaining interests in the Leases.  On August 19, 2011, Escopeta Alaska changed its name to become Defendant Cornucopia.   On September 21, 2011, Escopeta Oil changed its name became Defendant Furie.

23.     Defendants, in operating said interests, failed to properly administer the working interest owners' interests in the Oil and Gas Lease and the Kitchen Lights Unit interest, failed to keep Intervenors properly advised as to financial and operational matters relating to the parties' interests and failed to properly account for all interests.  Escopeta Alaska maintained a majority working interest in the Leases.

24.     After the dates of the agreements, Defendants applied for and received tax credits from the State of Alaska through programs, such as ACES Program and State of Alaska HB 280, and, further, Defendants received an increase in the net revenue interest as a result of a reduction in the royalty percentage payable to the State of Alaska, as lessor.  Defendants have failed and refused to properly account to Intervenors for any tax credits received from the State of Alaska under Section 9.3 of the Lease Assignment.  Further, Defendants failed to properly account to Intervenors for discovery or production royalty or reduction of same under Section 9.4 of the Lease Assignment; and Defendants have charged improper and excessive operating costs for the Leases at issue.

25.     Further, Defendants received a discovery royalty, production royalty or reduction in royalty pursuant to incentive plans adopted by the State of Alaska to encourage drilling and development of oil and gas properties on State owned lands.  Defendants have failed to pay or

Certified Document Number: 74099868 - Page 7 of 18

account for this amount to Intervenors, including Intervenor Giza, which holds a royalty interest in the Lease. Intervenors have been harmed by the failure to pay and account for this royalty which Defendants have failed to pay. Defendants have a contractual and equitable duty to do so and have breached that duty.

26.     Defendants improperly engaged in self-dealing, as shown from the intertwined business relationships between Cornucopia, the majority interest owner of the working interest in the Leases, and the operator, Furie Operating, and the further ownership structure of the entities described in paragraphs 27 through 31.

27.     .Defendant Kay Reick owns and controls, through control of several parent corporations, all of Defendant Cornucopia. Defendant Lars Degenhardt is President of Furie Operating and, further, has represented himself to be a director for Deutsch Oel & Gas, also known as German Oil & Gas (hereinafter "Deutsche"), a parent of Defendant Cornucopia.

28.     Upon information and belief, Furie Operating is owned 100% by Defendant Furie Petroleum Company, LLC (hereinafter "Furie Petroleum") and Furie Petroleum is owned 88% by Defendant Cornucopia. Additionally, upon information and belief, Defendant Cornucopia is owned, wholly or partially by Deutsche. Deutsche is owned 100% by Alecto, Ltd., hereinafter "Alecto", which is, in turn, owned 100% by Defendant Reick.

29.     Upon information and belief, Defendant Degenhardt is the President of Furie and is an officer or member of the board of directors of Deutsche. Deutsche is also member of Furie Petroleum Company's Management and owns 12% of Cornucopia.

Certified Document Number: 74099868 - Page 8 of 18

30.    Defendant Kade is the former President and Director of Defendant Furie and the former President of Defendant Furie Petroleum and was involved with many other companies which were subsidiaries of Defendant Furie, Furie Petroleum and Cornucopia.

31.    Defendant Tom Hord is the Chief Operating Officer of Furie Petroleum and a Director of Defendant Furie.

## VI.
## BREACH OF CONTRACT

32.    Intervenors incorporate all previous paragraphs as if fully restated herein.

33.    Intervenors entered into or have rights derived from the Participation Agreement, Lease Agreement and JOA.

34.    Defendants have failed to abide by the terms and conditions of the Participation Agreement, Lease Assignment and JOA.

35.    Intervenors performed their contractual obligations, and all conditions precedent have been met.

36.    Defendants have breached the Participation Agreement, Lease Assignment and JOA by failing to abide by one or more of the terms and conditions.

37.    This breach has caused injury to Intervenors.

## VII.
## BREACH OF FIDUCIARY DUTY

38.    Intervenors incorporate all previous paragraphs as if fully restated herein.

Certified Document Number: 74099868 - Page 9 of 18

39.     Defendants have a fiduciary relationship with Intervenors and owe Intervenors the duty of good faith and fair dealing and the duty to make full disclosure to Intervenors concerning matters affecting the Leases pursuant to the terms of the Participation Agreement, the Nominee Agreement, as well as the Lease Assignments and JOA.

40.     Defendants have breached and aided and abetted each other in the breach of fiduciary duties owed to Intervenors by knowingly and intentionally failing to fully disclose and account for material facts concerning the Leases. The breaches resulted in damages to Intervenors.

41.     Defendant Cornucopia further has received funds beneficially owned by and payable to Intervenors and breached its legal, equitable and fiduciary duty to Intervenor Taylor as it received, but failed to account for and pay to Taylor, production royalty or reduction of the production royalty percentage paid to the State of Alaska.  Further, Defendants, acting in concert, sought and received "royalty relief credits" and have failed and refused to account for or pay Taylor these amounts.

## VIII.
## IMPROPER ADMINISTRATION AND ACCOUNTING

42.     Intervenors incorporate all previous paragraphs as if fully restated herein.

43.     Defendants have a duty to properly account, bill, and pay the appropriate amounts based on Plaintiff's and Intervenor's interests in accordance with the JOA and the Accounting Procedure attached to the JOA.  Defendants' actions caused damages to Intervenors.

44.     Intervenors sue for an accounting under the JOA and Accounting Procedure related to all costs, expenses and joint interest billings properly attributable to Intervenors' interests and

Certified Document Number: 74099868 - Page 10 of 18

for all monies owed to Intervenors and an equitable accounting as to all moneys, credits and other benefits received by Defendants that are properly attributable to or payable to Intervenors.

## IX.
## AIDING AND ABETTING/CONSPIRACY

45.     Intervenors incorporate all previous paragraphs as if fully restated herein.

46.     Defendants, with knowledge of Intervenors' rights, conspired with concerted action and/or aided and abetted each other in the breaches of contract and fiduciary duties owed to Intervenors.  Intervenors by knowingly and intentionally failing to fully disclose and account for material facts concerning the Leases. The breaches caused and resulted in damages to Intervenors.

47.     Defendants, wrongfully breached, intentionally, negligently and grossly negligently acted in concert to prevent Intervenors from receiving the benefits of their bargain and their rights set forth under the Participation Agreement, Lease Agreement and JOA.  Each of these actions intentionally, negligently and grossly negligently succeeded in breach of the Participation Agreement, Lease Agreement and JOA and cause the property interests and rights owned by Intervenor to be impaired and damaged.  Defendants caused injury to Intervenors as set forth herein.

48.     Further, Defendants operated in concert throughout this matter and have advanced a common scheme to engage in self-dealing through a myriad of interlocking domestic and foreign entities and to deceive Intervenors as to the disposition of property, to conceal amounts received by Defendants, to prevent Intervenors from becoming aware of the amounts Defendants received, to conceal and convert amounts expended through self-dealing and other actions set forth herein.

Certified Document Number: 74099868 - Page 11 of 18

Certified Document Number: 74099868 - Page 12 of 18

## X.
## CONVERSION

49.     Intervenors incorporate all previous paragraphs as if fully restated herein.

50.     Pursuant to the Lease Assignment and JOA, Intervenors are entitled to a percentage of royalties and working interest based upon oil and gas removed from the property subject to the leases.

51.     Defendants have established commercial production and sold substantial quantities of oil and gas from the Leases but have failed to pay to Intervenors their share of such proceeds. Accordingly, Defendants have improperly converted these rights and monies and have refused to return same to Intervenor.  Further, due to Defendants' knowledge of Intervenors' rights and their intentional disregard, malice and gross negligence for Intervenors' rights, Intervenors' property and the injury which would result from Defendants' actions, Intervenors seek exemplary damages from Defendants.

## XI.
## NEGLIGENCE

52.     Intervenors incorporate all previous paragraphs as if fully restated herein.

53.     Defendants owed a duty to Intervenors to conduct operations in a reasonably prudent manner.  Defendants further had a duty to use proper accounting procedures and methods. Defendants breached their duties.

54.     Defendants knew or should have known and had actual and/or constructive notice that their improper actions reasonably caused Intervenors to suffer injury.  Defendants knew or should have known that they were not acting as a reasonably prudent operator.  Defendants

12

continued to act, individually and in concert, which proximately caused the damage to and destruction of Intervenors' lawful contractual and equitable rights.   Further, Defendants' interference and negligent actions resulted in Intervenors being denied possession of, use of and access to its interests in the assigned rights and property interests.  Defendants' actions constitute negligence and/or gross negligence which proximately caused the injuries described by Intervenors herein.

55.     Defendants' negligent acts include, but are not limited to:

a)     Negligently and grossly negligently failed to provide accurate information regarding Intervenors' rights under the Participation Agreement, Lease Agreement and JOA

b)     Negligently and grossly negligently failed to make payment of amounts due to Intervenors and using same for Defendants' purposes;

c)     Negligently and grossly negligently failing to make and keep proper accounting of all amounts received and expended subject to the Participation Agreement, Lease Agreement and JOA;

d)     Negligently and grossly negligently failing to pay to Intervenors all amounts properly due to them subject to the Participation Agreement, Lease Agreement and JOA;

e)     Negligently and grossly negligently failing to maintain records of all amounts which would offset any payment toward Intervenors' interests, such as, their "Back-in right" subject to the Participation Agreement, Lease Agreement and JOA;

f)     Failing to properly investigate each other Defendant's improper actions which harmed Intervenors and failure to advise Intervenors of said actions;

g)     Negligently and grossly negligently receiving and retaining monies properly belonging to Intervenors;

h)     Negligently and grossly negligently failing to cease and desist in all improper activity in violation of Intervenors' rights;

Certified Document Number: 74099868 - Page 13 of 18

56.     Further, the negligent, tortious and improper actions and conversion by Defendants by continuing to violate Intervenors' contracted and assigned rights are reckless, willful and wanton disregard for Intervenors' known rights.   Such actions constitute negligence, gross negligence interference and conversion which proximately caused Intervenors' damages in the past and ongoing described herein.

## XII.
## GROSS NEGLIGENCE

57.     Intervenors incorporates all previous paragraphs as if fully restated herein.

58.     In addition, or in the alternative, Defendants are liable to Intervenors for gross negligence.

59.     Defendants consciously and/or deliberately engaged in recklessness, oppression, fraud, willfulness, wantonness and will malice through their operations and administration of Intervenors' interests.

## XIII.
## UNJUST ENRICHMENT

60.     Defendants, through their improper actions, have retained property and property interests which rightfully belong to Intervenors.   Retention of such property is unconscionable.

## XIV.
## CONDITIONS PRECEDENT

61.     All conditions precedent to bringing the above causes of action have been met or occurred.

Certified Document Number: 74099868 - Page 14 of 18

14

## XV.
## NO ELECTION OF REMEDIES

62.     The foregoing facts and theories are pled cumulatively and alternatively, with no election or waiver of rights or remedies.

## XVI.
## DAMAGES

63.     As a direct and proximate result of the incidents made the basis of this lawsuit and improper actions and failures to act by Defendants, Intervenors suffered serious damage.  Each action complained of herein is a direct and proximate cause of Intervenor's damages set forth herein.

64.     Intervenor incurred the following damages, which are of a continuing nature, due to Defendants' actions:

A.     Any and all amounts not paid to Intervenors pursuant to their rights under the Participation Agreement, Lease Assignment and JOA.

B.     All property rights sold and assigned by Defendants, monies paid to Defendants, and the losses incurred by Intervenor as a result of same.

C.     Interest, prejudgment and post judgment *and*

D.     Any and all other damages available via statute, common law and equity.

65.     Because of these injuries and damages, Intervenor is entitled to recover compensatory damages of an amount which is within the jurisdictional requirements of this Honorable Court.   Intervenor also seeks punitive and/or exemplary damages to the extent allowed by law.

Certified Document Number: 74099868 - Page 15 of 18

*Attorney's fees*

66.     Because of the conduct of Defendants, including breach of the agreements between the parties, Intervenor has been compelled to engage the services of an attorney to prosecute this action.   Intervenor is entitled to recover a reasonable sum for the necessary services to the maximum extent allowed by law, including all expenses and court costs, of the attorney in the preparation and trial of this action and for appeals to the Court of Appeals or the Texas Supreme Court.

## XVII.
## JURY DEMAND

67.     A jury trial is demanded.

## XVIII.
## REQUEST FOR DISCLOSURE

68.     Under the Texas Rules of Civil Procedure 194, Intervenors hereby request that each Defendants disclose the information or material described in 194.2.

**WHEREFORE, PREMISES CONSIDERED**, Intervenors requests and prays that the parties take notice of the filing of this *Plea in Intervention*, that additional Defendants be cited to appear, and that Intervenors have judgment against all Defendants for all relief requested, attorney's fees, costs, pre and post judgment interest, punitive and exemplary damages, and for such other and further relief, general and special, at law or in equity, to which Intervenor is entitled, whether pled or unpled.

Certified Document Number: 74099868 - Page 16 of 18

BY: _/s/ Robert G. Taylor, III_____
     Robert G. Taylor, III
     **ATTORNEY FOR INTERVENORS**

**Robert G. Taylor, III**
**Law Office of Robert G. Taylor, III**
**Texas Bar Number 19721100**
**4119 Montrose, Suite 550**
**Houston, Texas 77006**
**(713) 654-7799**
**(713) 654-7814 facsimile**
**rt3atty@gmail.com**

Certified Document Number: 74099868 - Page 17 of 18

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document was forwarded via electronic service, facsimile and/or U. S. Mail on this the 3rd day of March, 2017 to:


Ernest W. Boyd
butchboyd@butchboydlawfirm.com
Cheryl L. Turner
cherylturner@butchboydlawfirm.com
Butch Boyd Law Firm
2905 Sackett Street
Houston, Texas 77098
Facsimile (713) 589-8563

Chris Reynolds
creybolds@reynoldsfrizzell.com
Christopher Hogan
chogan@reynoldsfrizzell.com
Reynolds Frizzell, LP
1100 Loiusiana Street, Suite 3500
Houston, Texas 77002

John Scott Black
jblack@dalyblack.com
Richard D. Daly
rdaly@dalyblack.com
Melissa Waden Wray
mwray@dalyblack.com
Daly & Black, P.C.
211 Norfolk Street, Suite 800
Houston, Texas. 77098

*/s/ **Robert G. Taylor, III***_____
**Robert G. Taylor, III**

18

Certified Document Number: 74099868 - Page 18 of 18



I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   November 5, 2019

Certified Document Number:        74099868 Total Pages:  18

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# EXHIBIT B -10

3/3/2017 5:05:17 PM
Chris Daniel - District Clerk Harris County
Envelope No. 15666504
By: MELISSA TORRES
Filed: 3/3/2017 5:05:17 PM

Certified Document Number: 74111984 - Page 1 of 15

### CAUSE NO. 2016-49928

| | | |
|---|---|---|
| **ALLEN LAWRENCE BERRY** | § | **IN THE DISTRICT COURT OF** |
| **2007 TRUST  and DANNY DAVIS** | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, T E X A S** |
| | § | |
| **DAMON KADE, et al.** | § | **125th JUDICIAL DISTRICT** |

### PLAINTIFFS' THIRD AMENDED PETITION

Allen Lawrence Berry, Individual Trustee of the Allen Lawrence Berry 2007 Trust and Danny Davis ("Plaintiffs") files this Third Amended Petition complaining of Damon Kade, Kay Reick, Lars Degenhardt, Tom Hord, Furie Operating Alaska, LLC, and Cornucopia Oil & Gas Company, LLC ("Defendants") and respectfully states as follows:

### I.
### DISCOVERY AND RELIEF SOUGHT

1.       In accordance with Rule 190 of the Texas Rules of Civil Procedure, discovery in this case is intended to be conducted under Level 3.

2.       Plaintiffs seek monetary relief over $1,000,000.  *See* Tex. R. Civ. P. 47(c).

### II.
### JURSIDICTION AND VENUE

3.       This Court has subject matter jurisdiction because the amount in controversy exceeds the jurisdictional requirement of this Court and because none of the causes of action pled fall within the exclusive jurisdiction of any court of this state.

4.       Venue is proper in Harris County, Texas because the acts and occurrences giving rise to the various causes of action occurred in part in Harris County, Texas. Furthermore, one or more of the defendants reside in Harris County, Texas.

Certified Document Number: 74111984 - Page 2 of 15

## III.
## PARTIES AND SERVICE OF CITATION

5.      Plaintiff is Allen Lawrence Berry, Trustee of the Allen Lawrence Berry 2007 Trust, whose address is 5005 Riverway, Suite 440, Houston, Texas 77056.

6.      Plaintiff is Danny Davis, whose address is 5005 Riverway, Suite 440, Houston, Texas 77056.

7.      Defendant, Damon Kade is an individual residing in Harris County, Texas who has made an appearance in this case.

8.      Defendant, Kay Reick is an individual who may be served at his place of employment, Furie Operating Alaska, LLC, 100 Enterprise Avenue, League City, Texas or wherever he may be found.

9.      Defendant, Lars Degenhardt is an individual who was served by substituted service on October 24, 2016 and has made a special appearance in this case.

10.     Defendant, Tom Hord is an individual who was served by substituted service on October 24, 2016 and has made an appearance in this case.

11.      Defendant, Furie Operating Alaska, LLC, is a Texas LLC that has made an appearance in this case.

12.     Defendant, Cornucopia Oil & Gas Company, LLC, is a Texas LLC that has made an appearance in this case.

## IV.
## FACTS

13.     Escopeta Oil, LLC ("Escopeta Oil") and Escopeta of Alaska, LLC, ("Escopeta Alaska") were originally owned by Allen Lawrence Berry ("Berry") and Danny Davis ("Davis").

2

14.     On October 22, 2010, Escopeta Oil and Taylor Minerals, LLC ("Taylor"), as Assignors, entered into a Lease Assignment and Participation Agreement ("Lease Assignment") with Escopeta Alaska, as Assignee, regarding leases in the Cook Inlet Basin ("Leases") in Alaska.   The following are the pertinent provisions of the Lease Assignment:

9.3     The parties acknowledge that under the current laws of the State of Alaska, certain expenses incurred in connection with the development of the KLU Leases may qualify to be refunded or reimbursed by the State of Alaska, HB 280 and the overall ACES Program or for credits against income taxes otherwise payable to the State of Alaska.  To the extent the parties are able to qualify for such tax credits, [Escopeta Oil] and Taylor hereby agree that all tax credits shall be monetized for the benefit of [Escopeta Alaska] as full and complete payment for the working interest costs of [Escopeta Oil] and Taylor for the drilling of the #1 KLU and subsequent wells in which [Escopeta Oil] and Taylor are working interest owners.

9.4     The parties acknowledge that under the current laws of the State of Alask, the wells drilled on all the Leases may qualify for a production royalty or a reduction in the royalty percentage paid to the State of Alaska.  To the extent the parties are successful in obtaining this royalty relief credit, the value or interest received pursuant to any such program on all leases will belong 79% to [Escopeta Alaska] and 21% to [Escopeta Oil] (for itself and, as applicable, for the benefit of Taylor).

9.5     [Escopeta Oil] and Taylor will contribute 100% of their share and all right, title and interested in and to all funds due from SB 309, HB 280, and the Alaska ACES Program for the development of the KLU.  For this contribution, along with prior work in developing the KLU geology and exploration program, [Escopeta Oil] and Taylor will own a 21% working interest based on a 75% NRI in the KLU drilling and development program.  This working interest shall be free and clear of any and all additional costs and assessments and will include all drilling, completion, platform, pipeline and facility costs to bring oil and gas into production.  The 21% working interest will come into effect at the time [Escopeta Alaska] has recovered 100% of its total costs of drilling, completing, building pipelines, platforms, necessary facilities and placing the Kitchen Lights Unit on production.  [Escopeta Oil] and

Certified Document Number: 74111984 - Page 4 of 15

> Taylor will pay their share of all operating expenses, workover and recompletion costs, in accordance with their respective working interest ownership, once [Escopeta Alaska] has recovered 100% of its total cost.

Under the Lease Agreement, Escopeta Oil was responsible for the administration and operation of the Leases.

15.     Pursuant to the Joint Operating Agreement entered into on October 21, 2010 between Escopeta Oil and Escopeta Alaska, Escopeta Oil was the operator and Escopeta Alaska and Taylor were non-operating working interest owners.  Pursuant to the terms of the Lease Agreement, Escopeta Alaska and Taylor assigned certain rights to Escopeta Oil and retained certain royalty interests and 21% of the working interest. Escopeta Alaska, among other duties, agreed to fund 100% of the costs of drilling and development of the leases and in return, received assignment of 79% of the working interest.  The Lease Assignment and Joint Operating Agreement expressly state that each Agreement is binding upon and inures to the benefit of the successors and assigns of each party.

16.     After the Lease Assignment was entered, Davis and Berry assigned 100% interest of Escopeta Oil and Escopeta Alaska to Furie Operating Alaska, LLC.  However, Davis retained his interest in the Leases individually, and Berry transferred his interest in the Leases to the Allen Lawrence Berry 2007 Trust.  On August 19, 2011, Escopeta Alaska changed its name to become Defendant Cornucopia.   On September 21, 2011, Escopeta Oil changed its name became Defendant Furie.

17.     Pursuant to the Lease Assignment and a subsequent transfer of an additional 1% to Cornucopia from Escopeta Oil, the current working interest in the Leases is divided as follows:

| | |
|---|---|
| 80% | Cornucopia |
| 6.875% | Davis |
| 7.875% | Berry Trust |
| 5.25% | Taylor |

18.     Defendant Lars Degenhardt is President of Furie Operating and, further, has represented himself to be a director for Deutsch Oel & Gas, also known as German Oil & Gas (hereinafter "Deutsche"), a parent of Defendant Cornucopia.  Defendant Damon Kade is the former President of Furie Petroleum, and Defendant Tom Hord is the Chief Operating Officer of Furie Petroleum.

19.     Upon information and belief, Furie Operating is owned 100% by Defendant Furie Petroleum Company, LLC ("Furie Petroleum"), Furie Petroleum is owned 100% by Defendant Advanced Capital Funding ("ACF"), and Furie Petroleum is owned 88% by Cornucopia.

20.     Additionally, upon information and belief, Cornucopia is also owned wholly or partially by Deutsche Oel & Gas, AG ("Deutsche"), Deutsche is owned 100% by Alecto, Ltd. ("Alecto"), and Alecto is owned 100% indirectly by Defendant Kay Reick.

21.     Pursuant to a Joint Operating Agreement between Escopeta Oil (later Furie Operating) and Escopeta Alaska (later Cornucopia) entered into on October 21, 2010, Furie Operating, through itself and the relationships with the other Defendants, was responsible for the administration and operation of the Leases.  Defendants, in operating said interests, failed to properly administer said interest, failed to keep Plaintiffs properly advised of their interests, and failed to properly account for their interests.

Certified Document Number: 74111984 - Page 6 of 15

22.     Specifically, Defendants (1) failed to properly account for tax credits received by the state of Alaska under Section 9.3 of the Lease Assignment; (2) failed to properly account for discovery royalties under Section 9.4 of the Lease Assignment; and (3) charged improper and excessive operating costs for the Leases at issue. Further, Defendants improperly engaged in self-dealing, as shown from the intertwined business relationship between the majority interest owner of the lease assignment, Cornucopia, and the operator, Furie Operating, and the further ownership structure of the entities described herein.

23.     After the dates of the agreements, Defendants applied for and received tax credits from the State of Alaska through programs, such as ACES Program and State of Alaska HB 280, and, further, Defendants received an increase in the net revenue interest as a result of a reduction in the royalty percentage payable to the State of Alaska, as lessor.  Defendants have failed and refused to properly account for any tax credits received from the State of Alaska under Section 9.3 of the Lease Assignment.  Further, Defendants failed to properly account for discovery or production royalty or reduction of same under Section 9.4 of the Lease Assignment; and Defendants have charged improper and excessive operating costs for the Leases at issue.

24.     Further, Defendants received a discovery royalty, production royalty or reduction in royalty pursuant to incentive plans adopted by the State of Alaska to encourage drilling and development of oil and gas properties on State owned lands. Defendants have failed to pay or account for this amount.

25.     Defendants, in operating said interests, failed to properly administer the working interest owners' interests in the Oil and Gas Lease and the Kitchen Lights Unit

interest, failed to keep the parties properly advised as to financial and operational matters relating to the parties' interests and failed to properly account for all interests.

26.     Further, Defendants made misrepresentations to Plaintiffs regarding Plaintiffs' forthcoming receipt of the discovery royalties and full amount due from the tax benefits.

## V.
## CAUSES OF ACTION

### NEGLIGENCE / GROSS NEGLIGENCE

27.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

28.     Defendants owed a duty to Plaintiffs to conduct operations in a reasonably prudent manner.  Defendants further had a duty to use proper accounting procedures and methods.  Defendants breached their duties.

29.     Defendants knew or should have known and had actual and/or constructive notice that their improper actions reasonably caused Plaintiffs to suffer injury.  Defendants knew or should have known that they were not acting as a reasonably prudent operator.   Defendants continued to act, individually and in concert, which proximately caused the damage to and destruction of Plaintiffs' lawful contractual and equitable rights.   Further, Defendants' interference and negligent actions resulted in Plaintiffs being denied possession of, use of and access to its interests in the assigned rights and property interests.  Defendants' actions constitute negligence and/or gross negligence which proximately caused the injuries described by Plaintiffs herein.

30.     Defendants' negligent acts include, but are not limited to:

a)      Negligently and grossly negligently failed to provide accurate information regarding Plaintiffs' rights under the Lease Agreement and Joint Operating Agreement;

b)      Negligently and grossly negligently failed to make payment of amounts due to Plaintiffs and using same for Defendants' purposes;

c)      Negligently and grossly negligently failing to make and keep proper accounting of all amounts received and expended subject to the Lease Agreement and Joint Operating Agreement;

d)      Negligently and grossly negligently failing to pay to Plaintiffs all amounts properly due to them subject to the Lease Agreement and Joint Operating Agreement;

e)      Negligently and grossly negligently failing to maintain records of all amounts which would offset any payment toward Plaintiffs' interests, such as, their "Back-in right" subject to the Lease Agreement and Joint Operating Agreement;

f)      Failing to properly investigate each other Defendant's improper actions which harmed Plaintiffs and failure to advise Plaintiffs of said actions;

g)      Negligently and grossly negligently receiving and retaining monies properly belonging to Plaintiffs; and

h)      Negligently and grossly negligently failing to cease and desist in all improper activity in violation of Plaintiffs' rights.

31.      Further, the negligent, tortious and improper actions by Defendants by continuing to violate Plaintiffs' contracted and assigned rights are reckless, willful, and wanton disregard for Plaintiffs' known rights.

32.      Defendants consciously and/or deliberately engaged in recklessness, oppression, fraud, willfulness, wantonness and will malice through their operations and administration of Plaintiffs' interests, which proximately caused Plaintiffs' damages in the past and ongoing described herein.

**BREACH OF CONTRACT**

33.      Plaintiffs incorporate all previous paragraphs as if fully restated herein.

Certified Document Number: 74111984 - Page 8 of 15

8

34.     Plaintiffs entered into or have rights derived from the Lease Agreement and Joint Operating Agreement.

35.     Defendants failed to abide by the terms and conditions of the Lease Assignment and Joint Operating Agreement.

36.     Plaintiffs have peformed their contractual obligations, and all conditions precedent have been met.

37.     Defendants have breach the Lease Assignment and Joint Operating Agreement by failing to abide by one or more of the terms and conditions.

38.     This breach has cause injury to Plaintiffs.

### BREACH OF FIDUCIARY DUTY/AIDING AND ABETTING

39.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

40.     Defendants acted as a fiduciary to Plaintiffs, owing Plaintiffs the duty of good faith and fair dealing and the duty to make full disclosure to Plaintiffs concerning matters affecting the Leases.

41.     Defendants have breached and/or aided and abetted the breach of fiduciary duties owed to Plaintiffs by knowingly and intentionally failing to fully disclose and account for material facts concerning the Leases.

42.     The breaches resulted in damages to Plaintiffs greatly exceeding the minimum jurisdictional limits of this Court.

43.     Defendant Cornucopia further has received funds beneficially owned by and payable to Plaintiffs and breached its legal, equitable and fiduciary duty to Plaintiffs as it received, but failed to account for and pay to Plaintiffs, production royalty or reduction of the production royalty percentage paid to the State of Alaska.

Certified Document Number: 74111984 - Page 9 of 15

44.     Further, Defendants, acting in concert, sought and received "royalty relief credits" and have failed and refused to account for or pay Plaintiffs these amounts.

### IMPROPER ADMINISTRATION AND ACCOUNTING

45.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

46.     Defendants have breached their duties to Plaintiffs through improper administration.  Defendants have a duty to properly account, bill, and pay the appropriate amounts based on Plaintiffs' interest.

47.     Defendants have failed in this duty causing Plaintiffs damages greatly exceeding the minimum jurisdictional limits of this Court.

48.     Plaintiffs sue for an equitable accounting related to all joint interest billings, and monies owed to plaintiff.

### CONVERSION

49.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

50.     Pursuant to the Lease Agreement and and Joint Operating Agreement, Plaitiffs are entitled to a percentage of royalties and working interest based upon oil and gas removed from the property subject to the Leases at issue.

51.     Defendants have established commercial production and sold substantial quantities of oil and gas from the Leases but have failed to pay to Plaintiffs their share of such proceeds.  Accordingly, Defendants have improperly converted those rights and monies and have refused to return same to Plaintiffs.  Further, due to Defendants' knowledge of Plaintiffs' rights and their intentional disregard, malice, and gross negligence for Plaintiffs' rights, Plaintiffs' property and the injury which would result, Plaintiffs seek exemplary damages from Defendants.

Certified Document Number: 74111984 - Page 10 of 15

Certified Document Number: 74111984 - Page 11 of 15

**CONSPIRACY**

52.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

53.     Defendants, with knowledge of Plaintiffs' rights, conspired with concerted action and/or aided and abetted each other in the breaches of contract and fiduciary duties owed to Plaintiffs.  Plaintiffs by knowingly and intentionally failing to fully disclose and account for material facts concerning the Leases. The breaches caused and resulted in damages to Plaintiffs.

54.     Defendants, wrongfully breached, intentionally, negligently and grossly negligently acted in concert to prevent Plaintiffs from receiving the benefits of their bargain and their rights set forth under the Lease Agreement and Joint Operating Agreement.  Each of these actions intentionally, negligently and grossly negligently succeeded in breach of the Lease Agreement and and Joint Operating Agreement and cause the property interests and rights owned by Plaintiffs to be impaired and damaged.

55.     Defendants caused injury to Plaintiffs as set forth herein.

56.     Further, Defendants operated in concert throughout this matter and have advanced a common scheme to engage in self-dealing through a myriad of interlocking domestic and foreign entities and to deceive Plaintiffs as to the disposition of property, to conceal amounts received by Defendants, to prevent Plaintiffs from becoming aware of the amounts Defendants received, to conceal and convert amounts expended through self-dealing and other actions set forth herein.

Certified Document Number: 74111984 - Page 12 of 15

**UNJUST ENRICHMENT**

57.     Defendants, through their improper actions, have retained property and property interests which rightfully belong to Plaintiffs.  Retention of such property is unconscionable.

**FRAUD**

58.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

59.     Defendants fraudulently represented to Plaintiffs that receipt of the discovery royalties and full amount due from the tax benefits was forthcoming.  These representations were material.

60.     Defendants representations were false, and Defendants knew the representations were false when they were made.

61.     Defendants had no intention of following through on these misrepresentations.

62.     Defendants fraudulent conduct was willful, wanton, and malicious.

63.     Defendants intended Plaintiffs to rely on their representations and conduct, and Plaintiffs did in fact rely on the representations.

64.     Plaintiffs have been injured by Defendants' fraudulent conduct and are entitled to recover damages for that injury.

**VI.**
**DAMAGES**

65.     As a direct and proximate result of the incidents made the basis of this lawsuit and improper actions and failures to act by Defendants, Plaintiffs suffered serious damage.  Each action complained of herein is a direct and proximate cause of Plaintiffs' damages set forth herein.

Certified Document Number: 74111984 - Page 13 of 15

66.     Plaintiffs incurred the following damages, which are of a continuing nature, due to Defendants' actions:

    a)   Any and all amounts not paid to Plaintiffs pursuant to their rights under the Lease Assignment and Joint Operating Agreement.

    b)   All property rights sold and assigned by Defendants, monies paid to Defendants, and the losses incurred by Plaintiffs as a result of same.

    c)   Interest, prejudgment and post judgment; and

    d)   Any and all other damages available via statute, common law and equity.

67.     Because of these injuries and damages, Plaintiffs are entitled to recover compensatory damages of an amount which is within the jurisdictional requirements of this Honorable Court.   Plaintiffs also seek punitive and/or exemplary damages to the extent allowed by law.

68.     Because of the conduct of Defendants, including breach of the agreements between the parties, Plaintiffs have been compelled to engage the services of an attorney to prosecute this action.   Plaintiffs are entitled to recover a reasonable sum for the necessary services to the maximum extent allowed by law, including all expenses and court costs, of the attorney in the preparation and trial of this action and for appeals to the Court of Appeals or the Texas Supreme Court.

## VII.
## CONDITIONS PRECEDENT

69.     All conditions precedent to bringing the above causes of action have been met or occurred.

## VIII.
## NO ELECTION OF REMEDIES

70.     The foregoing facts and theories are pled cumulatively and alternatively, with no election or waiver of rights or remedies.

## IX.
## TRIAL BY JURY

71.     Plaintiffs request trial by jury and submits appropriate jury fee.

## X.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that they take judgment against Defendants and recover:

a.     All the actual damages and special damages caused by the wrongful conduct complained of herein;

b.     Just and reasonable attorney's fees;

c.     Pre- and post-judgment interest;

d.     Costs of suit; and

e.     Other such relief at law and equity for which it may be justly entitled.

Respectfully submitted,

**BUTCH BOYD LAW FIRM**

_____
ERNEST W. BOYD
State Bar No. 00783694
butchboyd@butchboydlawfirm.com
CHERYL L. TURNER
State Bar No. 24076279
cherylturner@butchboydlawfirm.com
2905 Sackett Street
Houston, TX 77098
Phone:  (713) 589-8477
Fax:  (713) 589-8563

**ATTORNEYS FOR PLAINTIFFS**

(ADD COS PLEASE)



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 5, 2019

Certified Document Number:        74111984 Total Pages:  15

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# EXHIBIT B -11

3/7/2017 2:31:42 PM
Chris Daniel - District Clerk Harris County
Envelope No. 15715777
By: MELISSA TORRES
Filed: 3/7/2017 2:31:42 PM

Cause No: 2016-49928

| | | |
|---|---|---|
| ALLEN LAWRENCE BERRY 2007 TRUST | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| DAMON KADE, et al., | § § | |
| Defendant. | § | 125th JUDICIAL DISTRICT |

## DEFENDANTS' SPECIAL EXCEPTIONS TO THIRD AMENDED PETITION
## AND PLEA IN INTERVENTION

FURIE OPERATING ALASKA, LLC ("FOA"), CORNUCOPIA OIL & GAS COMPANY, LLC ("Cornucopia"), FURIE PETROLEUM COMPANY, LLC ("FPC"), DAMON KADE, TOM HORD, and, subject to his pending Special Appearance to Contest Jurisdiction, LARS DEGENHARDT (collectively, the "Defendants"), specially except to Plaintiffs' Third Amended Petition, together with the recently filed Plea in Intervention, as follows:

### Special Exceptions

1.       The Plaintiffs and the Intervenors allege that they own either "working interests" or "royalty interests" in Alaskan oil and gas leases being operated by FOA. Third Amended Petition (the "TAP") at ¶17; Plea in Intervention (the "PII") at ¶¶13-14. This case, as most recently re-pleaded, concerns claims that FOA has breached contractual obligations allegedly owed to Plaintiffs and the Intervenors, in their capacities as the owner of working or royalty interests, under two agreements, including a "Lease Assignment and Participation Agreement" and a "Joint Operating Agreement" (the "JOA"). TAP at ¶¶ 17-18; PII at ¶¶19-22. Copies of the two agreements referenced in the TAP are attached as Exhibits A and B. Only Furie Operating has any duties under either of the two agreements. It now stands in the shoes of the original operator under the JOA. TAP at ¶18. None of the other Defendants owe any duties to Plaintiffs or Intervenors under the JOA. Those other defendants include, instead, (i) Cornucopia, the owner of the lion's

Certified Document Number: 74141386 - Page 1 of 5

share of the working interest; (ii) FPC, an entity with no connection to this dispute; (iii) various individuals currently or formerly employed by affiliates of FOA; and (iv) Kay Reick, an individual who has not yet been served.  The only allegation specific to Reick is that he is the ultimate, and quite indirect, owner of Cornucopia, itself a mere working interest owner.  TAP at ¶20; PII at ¶27.

2.      None of the Defendants owe any tort-based duties to Plaintiffs or the Intervenors. Having pleaded the existence of governing agreements, neither Plaintiffs nor Intervenors has the right or ability, under Texas law or otherwise, to assert the tort claims that they purport to assert in the TAP and the PII.  Those claims include "Negligence," "Gross Negligence," "Breach of Fiduciary Duty," and "Aiding and Abetting," "Conversion," "Fraud," "Unjust Enrichment" and "Conspiracy." TAP at 7-12; PII at 9-14.  Nor has any of the claiming parties pleaded facts from which a fiduciary duty would arise, bearing in mind that the duty must trace itself not to the transaction in issue, but it "must exist prior to, and apart from, the agreement made the basis of the suit." *Meyer v. Cathey,* 167 S.W. 3d 327, 331 (Texas 2005).  Plus, it would be odd indeed if the individual defendants, each of whom is or was (allegedly) an officer of FOA, was found simultaneously to owe a fiduciary duty both to his employer and to his employer's contractual counterparties.

3.      As the Supreme Court explained in *Graff v. Beard,* 858 S.W.2d 918, 919 (Tex. 1993), "[i]t is fundamental that the existence of a legally cognizable duty is a prerequisite to all tort liability."  Neither the TAP nor the PII includes any allegations that show the existence of a "legally cognizable duty" (save and except for the contractual duties of FOA under the two, written agreements) running from one or more of the Defendants to the Plaintiff.  Accordingly, the Defendants specially except to all of Plaintiff's tort claims.

Certified Document Number: 74141386 - Page 2 of 5

4.      In addition, the "economic-loss" rule bars the claims.  As the TAP and the PII make clear, the interests and rights, if any, of the Plaintiffs and the Intervenors are established and governed by the terms of two, written agreements.  The economic-loss rule provides that there exists no duty in tort when the only injury claimed is one for economic losses arising from the breach of a contractual duty. *Sterling Chems., Inc. v. Texaco, Inc.,* 259 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).  That is, the economic loss rule precludes recovery in tort if the loss is the subject matter of an existing contract. *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.,* 29 S.W.3d 282, 285 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Courts have repeatedly applied the economic-loss rule to bar claims made by working interest owners against operators, reasoning that the losses being claimed arose from alleged breaches of the underlying operating agreement.  See *Cone v. Fagadau Energy Corp.,* 68 S.W.3d 147, 161 (Tex. App.—Eastland 2001, pet. denied); *Castle Tex. Prod. L.P. v. Long Trusts*, 134 S.W.3d 267, 274-75 (Tex. App.—Tyler 2003, pet. denied).  The claims of Plaintiffs and Intervenors, if any, are based in contract and lie only against FOA; the economic loss rule bars its non-contract claims.

## **PRAYER**

For the foregoing reasons, Defendants pray that the Court sustain their special exceptions and render judgment that Plaintiff take nothing by reason of its allegations; that this action be dismissed on its merits; and that Defendants recover their fees and costs herein expended. The Defendants seek such and other further relief, both specific and general, at law or in equity, to which the Defendants may be justly entitled.

Respectfully submitted,

**REYNOLDS FRIZZELL LLP**

By:   _/s/ Chris Reynolds_____
      Chris Reynolds
      State Bar No:  16801900
      Christopher M. Hogan
      State Bar No:  24065434

1100 Louisiana Street, Suite 3500
Houston, TX 77002
Phone: (713) 485-7200
Fax:    (713) 485-7250
creynolds@reynoldsfrizzell.com
chogan@reynoldsfrizzell.com

**ATTORNEYS FOR DEFENDANTS**
**FURIE OPERATING ALASKA, LLC and**
**CORNUCOPIA OIL & GAS COMPANY, LLC**

**DALY & BLACK, P.C.**

By:   _/s/ John Scott Black (by permission)_
      John Scott Black
      State Bar No. 24012292
      Richard D. Daly
      State Bar No. 00796429
      Melissa Waden Wray
      State Bar No. 24008614

2211 Norfolk Street, Suite 800
Houston, TX 77098
Phone: (713) 655-1405
Fax: (713) 655-1587
jblack@dalyblack.com
rdaly@dalyblack.com
mwray@dalyblack.com

**ATTORNEYS FOR DEFENDANT**
**DAMON KADE**

Certified Document Number: 74141386 - Page 4 of 5

**HILL & HILL, P.C. LAW FIRM**

By:       */s/ Marcus "Marc" Hill (by permission)*
          J. Marcus "Marc" Hill
          State Bar No. 09638150

1770 St. James Place, Suite 115
Houston, TX 77056
Phone: (713) 688-6318
Fax: (713) 688-2817
marc@hillpclaw.com

**ATTORNEY FOR DEFENDANT
LARS DEGENHARDT**

**CERTIFICATE OF SERVICE**

I certify that on this the 7th day of March 2017, a true and correct copy of the foregoing instrument has been served upon counsel of record in accordance with the requirements of the Texas Rules of Civil Procedure, addressed as follows:

Ernest W. Boyd
BUTCH BOYD LAW FIRM
2905 Sackett Street
Houston, TX 77098
Email: butchboyd@butchboydlawfirm.com
Fax: (713) 589-8563

Robert G. Taylor, III
LAW OFFICE OF ROBERT G. TAYLOR, III
4119 Montrose, Suite 550
Houston, TX 77006
Email: rt3atty@gmail.com
Fax: (713) 654-7814

      */s/ Chris Reynolds*
      Chris Reynolds



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 5, 2019


Certified Document Number:        74141386 Total Pages:  5


Marilyn Burgess, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# EXHIBIT B -12

3/7/2017 4:31:04 PM
Chris Daniel - District Clerk Harris County
Envelope No. 15723119
By: Alma Martinez
Filed: 3/7/2017 4:31:04 PM

Cause No: 2016-49928

| | | |
|---|---|---|
| ALLEN LAWRENCE BERRY 2007 TRUST | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| DAMON KADE, et al., | § § | |
| Defendant. | § | 125th JUDICIAL DISTRICT |

## DEFENDANTS' SPECIAL EXCEPTIONS TO THIRD AMENDED PETITION
## AND PLEA IN INTERVENTION

FURIE OPERATING ALASKA, LLC ("FOA"), CORNUCOPIA OIL & GAS COMPANY, LLC ("Cornucopia"), FURIE PETROLEUM COMPANY, LLC ("FPC"), DAMON KADE, TOM HORD, and, subject to his pending Special Appearance to Contest Jurisdiction, LARS DEGENHARDT (collectively, the "Defendants"), specially except to Plaintiffs' Third Amended Petition, together with the recently filed Plea in Intervention, as follows:

### Special Exceptions

1.    The Plaintiffs and the Intervenors allege that they own either "working interests" or "royalty interests" in Alaskan oil and gas leases being operated by FOA. Third Amended Petition (the "TAP") at ¶17; Plea in Intervention (the "PII") at ¶¶13-14. This case, as most recently re-pleaded, concerns claims that FOA has breached contractual obligations allegedly owed to Plaintiffs and the Intervenors, in their capacities as the owner of working or royalty interests, under two agreements, including a "Lease Assignment and Participation Agreement" and a "Joint Operating Agreement" (the "JOA"). TAP at ¶¶ 17-18; PII at ¶¶19-22. Copies of the two agreements referenced in the TAP are attached as Exhibits A and B. Only Furie Operating has any duties under either of the two agreements. It now stands in the shoes of the original operator under the JOA. TAP at ¶18. None of the other Defendants owe any duties to Plaintiffs or Intervenors under the JOA. Those other defendants include, instead, (i) Cornucopia, the owner of the lion's

Certified Document Number: 74145511 - Page 1 of 5

share of the working interest; (ii) FPC, an entity with no connection to this dispute; (iii) various individuals currently or formerly employed by affiliates of FOA; and (iv) Kay Reick, an individual who has not yet been served.  The only allegation specific to Reick is that he is the ultimate, and quite indirect, owner of Cornucopia, itself a mere working interest owner.  TAP at ¶20; PII at ¶27.

2.    None of the Defendants owe any tort-based duties to Plaintiffs or the Intervenors. Having pleaded the existence of governing agreements, neither Plaintiffs nor Intervenors has the right or ability, under Texas law or otherwise, to assert the tort claims that they purport to assert in the TAP and the PII.  Those claims include "Negligence," "Gross Negligence," "Breach of Fiduciary Duty," and "Aiding and Abetting," "Conversion," "Fraud," "Unjust Enrichment" and "Conspiracy." TAP at 7-12; PII at 9-14.  Nor has any of the claiming parties pleaded facts from which a fiduciary duty would arise, bearing in mind that the duty must trace itself not to the transaction in issue, but it "must exist prior to, and apart from, the agreement made the basis of the suit." *Meyer v. Cathey,* 167 S.W. 3d 327, 331 (Texas 2005).  Plus, it would be odd indeed if the individual defendants, each of whom is or was (allegedly) an officer of FOA, was found simultaneously to owe a fiduciary duty both to his employer and to his employer's contractual counterparties.

3.    As the Supreme Court explained in *Graff v. Beard,* 858 S.W.2d 918, 919 (Tex. 1993), "[i]t is fundamental that the existence of a legally cognizable duty is a prerequisite to all tort liability."  Neither the TAP nor the PII includes any allegations that show the existence of a "legally cognizable duty" (save and except for the contractual duties of FOA under the two, written agreements) running from one or more of the Defendants to the Plaintiff.  Accordingly, the Defendants specially except to all of Plaintiff's tort claims.

2

4.      In addition, the "economic-loss" rule bars the claims.  As the TAP and the PII make clear, the interests and rights, if any, of the Plaintiffs and the Intervenors are established and governed by the terms of two, written agreements.  The economic-loss rule provides that there exists no duty in tort when the only injury claimed is one for economic losses arising from the breach of a contractual duty. *Sterling Chems., Inc. v. Texaco, Inc.,* 259 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).  That is, the economic loss rule precludes recovery in tort if the loss is the subject matter of an existing contract. *Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.,* 29 S.W.3d 282, 285 (Tex. App.—Houston [14th Dist.] 2000, no pet.). Courts have repeatedly applied the economic-loss rule to bar claims made by working interest owners against operators, reasoning that the losses being claimed arose from alleged breaches of the underlying operating agreement.  See *Cone v. Fagadau Energy Corp.,* 68 S.W.3d 147, 161 (Tex. App.—Eastland 2001, pet. denied); *Castle Tex. Prod. L.P. v. Long Trusts*, 134 S.W.3d 267, 274-75 (Tex. App.—Tyler 2003, pet. denied).  The claims of Plaintiffs and Intervenors, if any, are based in contract and lie only against FOA; the economic loss rule bars its non-contract claims.

## **PRAYER**

For the foregoing reasons, Defendants pray that the Court sustain their special exceptions and render judgment that Plaintiff take nothing by reason of its allegations; that this action be dismissed on its merits; and that Defendants recover their fees and costs herein expended. The Defendants seek such and other further relief, both specific and general, at law or in equity, to which the Defendants may be justly entitled.

Certified Document Number: 74145511 - Page 3 of 5

Respectfully submitted,

**REYNOLDS FRIZZELL LLP**

By:  */s/ Chris Reynolds*
       Chris Reynolds
       State Bar No:  16801900
       Christopher M. Hogan
       State Bar No:  24065434

1100 Louisiana Street, Suite 3500
Houston, TX 77002
Phone: (713) 485-7200
Fax:    (713) 485-7250
creynolds@reynoldsfrizzell.com
chogan@reynoldsfrizzell.com

**ATTORNEYS FOR DEFENDANTS**
**FURIE OPERATING ALASKA, LLC and**
**CORNUCOPIA OIL & GAS COMPANY, LLC**

**DALY & BLACK, P.C.**

By:    */s/ John Scott Black (by permission)*
       John Scott Black
       State Bar No. 24012292
       Richard D. Daly
       State Bar No. 00796429
       Melissa Waden Wray
       State Bar No. 24008614

2211 Norfolk Street, Suite 800
Houston, TX 77098
Phone: (713) 655-1405
Fax: (713) 655-1587
jblack@dalyblack.com
rdaly@dalyblack.com
mwray@dalyblack.com

**ATTORNEYS FOR DEFENDANT**
**DAMON KADE**

4

Certified Document Number: 74145511 - Page 4 of 5

**HILL & HILL, P.C. LAW FIRM**

By: */s/ Marcus "Marc" Hill (by permission)*
   J. Marcus "Marc" Hill
   State Bar No. 09638150

1770 St. James Place, Suite 115
Houston, TX 77056
Phone: (713) 688-6318
Fax: (713) 688-2817
marc@hillpclaw.com

**ATTORNEY FOR DEFENDANT
LARS DEGENHARDT**


**<u>CERTIFICATE OF SERVICE</u>**


   I certify that on this the 7th day of March 2017, a true and correct copy of the foregoing instrument has been served upon counsel of record in accordance with the requirements of the Texas Rules of Civil Procedure, addressed as follows:

  Ernest W. Boyd
  BUTCH BOYD LAW FIRM
  2905 Sackett Street
  Houston, TX 77098
  Email: butchboyd@butchboydlawfirm.com
  Fax: (713) 589-8563

  Robert G. Taylor, III
  LAW OFFICE OF ROBERT G. TAYLOR, III
  4119 Montrose, Suite 550
  Houston, TX 77006
  Email: rt3atty@gmail.com
  Fax: (713) 654-7814


       */s/ Chris Reynolds*
       Chris Reynolds



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 5, 2019

Certified Document Number:      74145511 Total Pages:  5

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 5, 2019

Certified Document Number:        74145512 Total Pages:  0

Marilyn Burgess, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

# EXHIBIT B

Certified Document Number: ... Page 6 of 6

October 22, 2010

---

**LEASE ASSIGNMENT AND
PARTICIPATION AGREEMENT**

**COOK INLET BASIN, ALASKA**

---

Between

**ESCOPETA OIL CO., LLC**

And

**TAYLOR MINERALS, LLC**

**"Assignors"**

And

**ESCOPETA OIL OF ALASKA LLC**

**"Assignee"**

Certified Document Number: 88709... Page 2 of 6

# LEASE ASSIGNMENT AND PARTICIPATION AGREEMENT

### *Cook Inlet, Alaska*

**THIS AGREEMENT** ("the Agreement") is made and entered into on October 22, 2010 ("the Effective Date") by and between

(1)     **Escopeta Oil Co., LLC**, a Texas Limited Liability Company ("**Escopeta**" or the "**Company**"), whose address is 5005 Riverway, Suite 440, Houston Texas 77056 and **Taylor Minerals, LLC**, a Texas Limited Liability Company, ("**Taylor**") whose address is 500 Dallas St., Penthouse 3450, One Allen Center, Houston, Texas 77002, collectively, "**Assignors**, and

(2)     **Escopeta Oil of Alaska LLC, ("EA"),** whose address is 5005 Riverway, Suite 440, Houston, Texas 77056.

## RECITALS

1.     Escopeta and Taylor are private companies engaged in the acquisition, exploration and development of oil and gas properties, and are the owners of certain oil and gas leases and rights to acquire additional leases located in the Cook Inlet Basin, State of Alaska.

2.     The leases owned by Assignors are as described in Exhibit "B" hereto, cover a recorded total of 94,706 acres of land, and comprise two major prospects identified as the Kitchen Light Unit ("KLU") and the North Alexander Prospect ("NAP"). Additional leases were purchased by Assignors in the Cook Inlet Areawide 2010 Sale, comprising ±17,000 acres of not yet recorded lease entitlements (the "Additional Leases") as described in Exhibit "E" to this Agreement, and are also included in the lease assignments contemplated by this Agreement. The leases comprising KLU, NAP, and Additional Leases are collectively referred to as the "Leases".

3.     Taylor owns a 25% working interest in certain of the Leases (the "Taylor Interest"), and Escopeta owns a 75% working interest in those Leases. In all other Leases, Escopeta owns 100% of the working interest, the 75% and 100% working interest ownership of Escopeta being hereinafter referred to as the "Escopeta Interest".

4.     EA wishes to acquire an ownership interest in the Leases from Assignors and undertake certain financial commitments to allow operations to explore and develop the Leases to immediately commence.

5.     Assignors are willing to collectively assign 79% of the working interest in the Leases to EA in return for the Consideration and under the terms and conditions set out in this Agreement.

**NOW, THEREFORE**, in consideration of the foregoing recitals and the agreements and covenants hereinafter set forth, the parties, agreeing to be legally bound, hereby agree as follows:

Certified Document Number: 88709343 - Page 3 of 6

## I.  The Lease Assignment

1.1    On and subject to the terms and conditions of this Agreement, each of the Assignors hereby agrees to assign and transfer to EA, and EA agrees to accept assignment of, each Assignor's proportionate share of 79% of the working interest in the Leases, all according to Section 9.5 of this Agreement, meaning that Assignors agree to collectively assign and deliver to Assignee 79% of the working interest in the Leases, based on a 75% net revenue interest delivered to 100% of the working interest.

1.2    The assignments and transfer by Assignors of the Leases to EA are subject to the payment by EA of the Consideration on a timely basis in US Dollars as set forth in Paragraph 2 below.

1.3    The assignment and transfers of 79% of the Escopeta Interest and 79% of the Taylor Interest in the Leases will be through recordable assignments to EA with a special warranty of title by, through and under Escopeta and Taylor, as applicable, but not otherwise.

1.4    The State of Alaska form of assignment will be executed for assignment of all interests conveyed in accordance with this Agreement herein.  All assignments of interest of all parties will be prepared and executed to be recorded with the State of Alaska by November 5, 2010.  A copy of the State of Alaska form of assignment is attached hereto as Exhibit "B".

## II.  Consideration and Payment

2.1    The consideration payable by EA to Assignors for the transfer of the interest in the Leases set out in Section 1.1 above shall be the sum of $20,800,000.00, being the reimbursement to Escopeta and Taylor acquisition and ownership of the leases.  As additional consideration, EA shall pay to Assignors, in immediately available funds, the estimated cost for the drilling of the #1 exploratory well, including costs of rig move, set up and related expenses, including but not limited to those set out in the Authority for Expenditure (AFE) attached to this Agreement as Exhibit "C" (the "Drilling Costs" ).  The parties understand that EA has the option for drilling the #2 KLU and it will be essentially the same as the current AFE.  The total #1 well costs are $25,000,000.00.

2.2    The Total Costs of $45,800,000.00 shall be deposited in two payments into Assignors designated account by wire transfer to:

**Texas Community Bank Co., LLC**
**1131 Uptown Park Blvd #12**
**Houston, Texas 77056**
**ABA #113124598**
**For Credit to:  Escopeta Oil Co., LLC**
**Account #1803444**

2.3    As further additional consideration, EA will pay 100% of  all Lease rental payments due to the State of Alaska for each of the Leases due or payable on or before December 15, 2010 (estimated

in the amount of $350,000.00 US dollars), and 100% of all Lease rental payments accruing thereafter.

### III.  Representations and Warranties of Assignors

3.1   The Escopeta Interest and the Taylor Interest are final, binding, enforceable and non-changeable, and are properly registered and recorded in the State of Alaska, including the applicable recording districts in the State of Alaska.

3.2   Escopeta is currently the registered operator of record in the State of Alaska for the KLU.

3.3   Escopeta and Taylor are limited liability companies duly organized, validly existing, and in good standing under the laws of the State of Texas.

3.4   Escopeta and Taylor are both duly registered and authorized to transact business in the State of Alaska.

3.5   All Leases are free and clear of debts and encumbrances, and Assignors are legally competent to assign the Leases, or any portion thereof, as they may desire.

3.6   Escopeta and Taylor each have full power and authority to execute and deliver this Agreement and to perform each of their obligations hereunder.

3.7   Escopeta and Taylor represent and warrant that the information provided to EA prior to the execution of this Agreement has been prepared with reasonable diligence and in accordance with recognized industry standards and practices.  To the actual knowledge of Escopeta and Taylor, none of the information provided is materially inaccurate, incomplete or misleading.

3.8.   Neither Escopeta nor Taylor are in breach or violation of, and the execution, delivery and performance of this Agreement by Escopeta and Taylor will not result in a breach or violation of, any of the provisions of their respective articles of organization, as amended to the date of this Agreement, operating agreement, as amended to the date of this Agreement, or any other contract to which Escopeta or Taylor is a party and that is material to its business plans or prospects.

3.9   Escopeta and Taylor each has the full right, corporate power and authority to execute and deliver this Agreement and to perform the transactions contemplated by this Agreement. The execution and delivery of this Agreement by Escopeta and Taylor and the performance by Escopeta and Taylor of the transactions contemplated hereby have been duly and validly authorized by all necessary corporate action. This Agreement has been duly executed, acknowledged, and delivered by Escopeta and Taylor and is the legal, valid and binding obligation of Escopeta and Taylor, enforceable against each of them in accordance with its terms, except to the extent that the enforceability hereof may be limited by bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally or by general principles of equity.

### IV.  Representations and Warranties of Assignee

Certified Document Number: 85436785 - Page 5 of 6

4.1    EA has or can obtain the financial resources in order to pay the Consideration as set out in Article II of this Agreement.

4.2    EA is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Texas.

4.3    EA is duly registered and authorized to transact business in the State of Alaska.

4.4    EA is not in breach or violation of, and the execution, delivery and performance of this Agreement by EA will not result in a breach or violation of, any of the provisions of EA articles of organization, as amended to the date of this Agreement, operating agreement, as amended to the date of this Agreement or any other contract to which EA is a party that is material to its business plans or prospects.

4.5    EA has the full right, corporate power and authority to execute and deliver this Agreement and to perform the transactions contemplated by this Agreement. The execution and delivery of this Agreement by EA and the performance by EA of the transactions contemplated hereby have been duly and validly authorized by all necessary corporate action. This Agreement has been duly executed, acknowledged, and delivered by EA and is the legal, valid and binding obligation of EA enforceable against EA in accordance with its terms, except to the extent that the enforceability hereof may be limited by bankruptcy, insolvency, reorganization, moratorium or other laws affecting creditors' rights generally or by general principles of equity.

4.6    EA represents and warrants to Escopeta that EA or its principals are either experienced and knowledgeable in the oil and gas exploration and production business or have access to experienced and knowledgeable professionals and that they are making this investment decision based on their own due diligence and economic evaluations.

## V.  Obligations of Assignors

5.1    Escopeta and Taylor and their respective officers, directors, employees, attorneys, agents, and representatives have or will timely furnish to EA the following documents or information to the extent it is in their possession or control:

5.1.1    copies of all geological and geophysical work and proprietary information, seismic re-processing, sub-surface interpretation, and all other information and interpretation of the KLU and NAP prospects; and

5.1.2    Copies of all documents pertaining to State of Alaska permitting for the drilling of the KLU and NAP prospects.

5.2    Assignors shall cooperate, following closing, with EA in executing all necessary documents to assist EA in obtaining the necessary documents to operate in the State of Alaska;

5.3    Assignors shall cooperate, following closing, to assist EA, the State of Alaska, and all third parties in furnishing information and executing documents, completing permits, and other general matters so that drilling can be commenced in the KLU in 2010.  Escopeta agrees to provide EA with all technical assistance as reasonably requested during the development of the KLU.

5.4    Assignors shall furnish at closing lease assignments prepared in accordance with the then current form of assignment approved by the State of Alaska and in the number of original copies required for filing in all appropriate recording districts.

## VI.  Obligations of Assignee

6.1    Assignee shall pay the Consideration in a timely manner and in accordance with the terms of this agreement.

6.2    Obligations of Assignee that are clearly intended to continue after and beyond the Closing shall survive the Closing.

## THE PARTICIPATION AGREEMENT

## VII. Financing of the KLU Drilling Operations

7.1    The #1 Kitchen Lights Unit exploratory well ("#1 KLU) must be funded by EA no later than December 31, 2010 and spudded no later than May 30, 2011, or such later time as may be agreed to by all parties.

7.2    EA will pay 100% of the cost to drill the #1 exploratory well.  An updated Schedule of Operations and AFE for the #1 KLU are attached hereto as Exhibit "C".  The projected AFE in Exhibit "C" may be periodically updated prior to the spud date to reflect actual costs incurred and adjustments to projected costs that may occur between the time of AFE preparation and the spud date.  All AFE costs billed or used in preparation of updated AFE's will be directly from vendor invoice without surcharge.  EA understands that at its option the cost to drill the #2 KLU, subject to update for changed conditions or pricing, will be the same as for the #1 KLU, less an adjustment for rig movement costs.

7.3    EA, or its designated nominee, assignee or subsidiary shall provide and deliver the drilling funds as necessary to meet the requirements for the drilling of the #1 KLU exploratory well, and any subsequent KLU exploratory or development wells..

7.4    EA has an obligation under this portion of the Agreement to fund the drilling of the #1 KLU well.  In the event EA elects not to continue with the project after the drilling of the first two wells, EA shall be obligated and agrees to reassign the KLU Leases back to Escopeta and Taylor, less and except for the earned acreage granted to Escopeta, Taylor and EA by the State of Alaska.

## 8.  Drilling Operations in the KLU

Certified Document Number: 5Page 6 of 6

8.1   Escopeta will remain the unit operator of the KLU following Closing.  EA, Escopeta and Taylor shall execute a Joint Operating Agreement ("JOA") in a form substantially similar to that set out in Exhibit "D" attached hereto, which has gained previous approval from the State of Alaska. Future obligations and the rights and obligations of all parties in relation to operating arrangements within the KLU shall be governed by the JOA.   In the event of a conflict between the JOA and this Agreement, the terms of this Agreement shall prevail, to the extent permitted by applicable law.

8.2   Escopeta, as operator, will cause actual drilling operations to commence on or before May 30, 2011 for the initial Test Well on the Kitchen Lights Unit (#1 KLU) to be drilled with due diligence to a target depth of not less than 17,000 feet subsea, or commencing at some later date or to some different depth as may otherwise be subsequently agreed to by all parties to the JOA.

8.3   In carrying out its obligations, Escopeta, as operator, will be responsible for procuring all drilling rigs, personnel and other necessities to enable drilling operations to take place in accordance with and at or near the prices detailed in the AFE for the initial exploratory well to be drilled on the Kitchen Lights Unit.  EA agrees to assist Escopeta on all aspects of the drilling of the #1 KLU.

8.4   Escopeta shall charge the joint account for travel expenses, including but not limited to transportation, lodging and food expenses and outside consultants when necessary, when such travel or engagement is conducted on behalf or in support of the KLU program, as reasonably necessary or as requested by EA or the members of the JOA in concert.

8.5   On all wells drilled on the Leases, each of the KLU Prospects subsequent to the Test Well on a KLU Prospect, Escopeta and Taylor will be compensated in the same manner as set forth in Section 9.5 of this Agreement.


## IX.  Post Closing Conduct of Business


9.1   Escopeta, as operator, will notify EA to pay all rental and other liabilities due and payable under the terms of the Leases to the State of Alaska for all periods following the year 2010.  Anything to the contrary herein notwithstanding, lease rental, renewal and other liabilities arising under this Section 9.1 shall be wholly to the account of EA, who shall pay 100% of such expenses for the life of this Agreement.

9.2   By entering into this Agreement, the parties hereby establish an area of mutual interest ("AMI") surrounding the Leases.  The AMI shall be comprised of the area within two (2) miles of the borders of each of the KLU and NAP  Leases.  On future leases added to the KLU, regardless of the party acquiring the lease, Escopeta and Taylor will hold or receive a 21% and EA a 75% net revenue interest to 100% of the working interest on the new lease, as will be the division on all Leases after assignment pursuant to this Agreement.  The retained overriding royalty interest and

working interest in all Leases will apply to any new leases acquired within the KLU or NAP or in the AMI as set forth herein and to any renewals or extensions of the Leases taken within three years after expiration or release of any Lease within the AMI.  Any party acquiring a new lease within the AMI shall immediately advise the other working interest owners of such acquisition, and each working owner shall have thirty (30) in which to elect to participate proportionately to his working interest or reject the new lease.  The acquiring party shall offer any rejected portion of the new lease, or any part thereof, to the working interest owners electing to participate.  The acquiring party shall be reimbursed for lease acquisition costs by any working owner electing to participate, with the reimbursement proportionate to the ownership interest.

9.3    The parties acknowledge that under the current laws of the State of Alaska, certain expenses incurred in connection with development of the KLU Leases may qualify to be refunded or reimbursed by the State of Alaska SB 309, HB 280 and the overall ACES Program or for credits against income taxes otherwise payable to the State of Alaska.  To the extent the parties are able to qualify and receive credit for such tax credits, Escopeta and Taylor hereby agree that all tax credits shall be monetized for the benefit of EA as full and complete payment for the working interest costs of Escopeta and Taylor for the drilling of the #1 KLU and subsequent wells in which Escopeta and Taylor are working interest owners.

9.4    The parties acknowledge that under the current laws of the State of Alaska, the wells drilled on all the Leases may qualify for a production royalty or a reduction in the royalty percentage paid to the State of Alaska.  To the extent the parties are successful in obtaining this royalty relief credit, the value or interest received pursuant to any such program on all leases will belong 79% to EA and 21% to Escopeta (for itself and, as applicable, for the benefit of Taylor).

9.5    Escopeta and Taylor will contribute 100% of their share and all right, title and interest in and to all funds due from SB 309, HB 280, and the Alaska ACES Program for the development of the KLU.  For this contribution, along with prior work in developing the KLU geology and exploration program, Escopeta and Taylor will own a 21% working interest based on a 75% NRI in the KLU drilling and development program. This working interest shall be free and clear of any and all additional costs and assessments and will include all drilling, completion, platform, pipeline and facility costs to bring oil and gas into production. The 21% working interest will come into effect at the time EA has recovered 100% of its total costs of drilling, completing, building pipelines, platforms, necessary facilities and placing the Kitchen Lights Unit on production. Escopeta and Taylor will pay their share of all operating expenses, workover and recompletion costs, in accordance with their respective working interest ownership, once EA has recovered 100% of its total cost.

9.6    For so long as Escopeta remains operator of the KLU:

9.6.1    Upon reasonable notice by EA, Escopeta will use reasonable efforts to allow EA or its designated nominee, assignee or subsidiary to attend meetings, conferences and/or other similar formally scheduled events to discuss the progress of the project.

9.6.2    Upon reasonable notice by EA, Escopeta will use reasonable efforts to accommodate requests by EA for the completion of specific tasks by specifically scheduled and

Certified Document Number: 88709476 - Page 9 of 6

mutually agreed upon deadlines; provided, however that EA has funded the unit operations in accordance with the then current AFE and the terms of this Agreement.

9.7    Subject to the understandings and qualifications set forth in Section 3.7, above, EA shall be entitled to rely on the completeness, correctness and accuracy of the information provided by Escopeta and Taylor in relation to the Leases and by Escopeta as to matters to be managed on a day-to-day basis after closing by Escopeta as operator.

9.8    Escopeta, Taylor and EA each agree and acknowledge that they shall comply at all times with all applicable federal and state laws and adhere to such regulations and guidelines provided and enforced by any regulatory bodies charged with the regulation of any aspect of operating the business of oil and gas exploration and production in general, and shall each pay their respective share of any and all taxes that fall due on any operations conducted in Alaska, including, without limitation, payroll taxes.

9.9    In the event Escopeta, Taylor, or EA wishes to sell all or part of its working interest position in the KLU or NAP to a third party, the prospective seller shall procure from the proposed purchaser a bona fide written offer for cash consideration, which it is willing to accept.  The offering party shall give the other working interest owners thirty (30) days from the date the written offer is delivered to them, in which to purchase the interest for sale at the price and under the terms and conditions set out in the written offer.  In the event the other working interest owners do not match the proposed purchaser's offer, then the offering party may sell its interest to the proposed purchaser.  Parties have the right to transfer (not for sale) its interest whole or in part, to an affiliated company of the Party, in which case the right of first refusal option will not apply.

## X. Confidentiality; Return of Property and Information

10.1    "Confidential Information" of a party means and includes, but is not limited to, all information about that party, including, but not limited to, hardware, software, screens, specifications, designs, plans, drawings, data, prototypes, discoveries, research, developments, methods, processes, procedures, improvements, "know-how," trade secrets, compilations, market research, marketing techniques and plans, business plans and strategies, customer names and other information related to customers, price lists, pricing policies and financial information or other business and/or technical information and materials, in written, graphic, machine-readable form or in any other medium. Notwithstanding anything to the contrary contained in this Agreement, Confidential Information shall not include any information that: (i) is in the public domain or becomes generally known to parties outside of this Agreement on a non-confidential basis, through no wrongful act of the party to this Agreement having received such information from the disclosing party; (ii) is lawfully obtained by either party of this Agreement, as the case may be, from a party outside of this Agreement without any obligation to maintain the information as proprietary or confidential; (iii) was known to either party to this Agreement, as the case may be, prior to its disclosure by the other party to this Agreement, without any obligation to keep it confidential as evidenced by tangible records kept in the ordinary course of business; (iv) is independently developed by either party to this Agreement, as the case may be, without reference to any Confidential Information disclosed by the other party to this Agreement as evidenced by

Certified Document Number: 3Page 9 of 6

tangible records kept in the ordinary course of business; (v) is the subject of a written agreement whereby Escopeta or Taylor, or EA or its designated nominee, assignee or subsidiary, as the case may be, consents to the use or disclosure of such Confidential Information by the other party to this Agreement; or (vi) is required by applicable law to be disclosed by the party disclosing the same.

10.2    Each of Escopeta and Taylor severally agree that at all times they shall preserve as confidential all Confidential Information concerning EA and any actual or potential financial, strategic or operational participants or associates that has been disclosed to Escopeta and Taylor, and Escopeta and Taylor shall not, without the prior written consent of EA, use for Escopeta's and Taylor's own benefit or purposes, or disclose to any other party, any of the Confidential Information or participation, except as required under the terms of this Agreement or by applicable law. These obligations with respect to confidentiality shall continue for a period of one-year after the expiration or termination of this Agreement.  The terms of this Section 8.2 do not impair the right to disclose such Confidential Information by Escopeta and Taylor in order to defend Escopeta and Taylor from any claim in any court of law once Escopeta and/or Taylor has given EA notice of such intended use.

10.3    EA agrees that at all times EA or its designated nominee, assignee or subsidiary, shall preserve as confidential all confidential information concerning Escopeta, Taylor, and the KLU and NAP prospects, and EA shall not, without the prior written consent of Escopeta or Taylor, as applicable, use for EA's own benefit or purposes, or disclose to any third party, any of the Confidential Information, except:  (i) as required by the terms of this Agreement; (ii) as required by applicable law; and (iii) as may reasonably be required to be disclosed to EA lenders, potential lenders or any bona fide potential purchaser of an undivided interest of EA's interest in the Leases (subject to the terms of Section 9.9, above, and so long as such third party executes a confidentiality agreement reasonably acceptable to Escopeta).  These obligations with respect to confidentiality of the Confidential Information shall continue for a period of one (1) year after expiration or termination of this Agreement.  The terms of this Section 8.3 do not impair the right to disclose such Confidential Information by EA in order to defend EA from any claim in any court once EA gives Escopeta and Taylor notice of such intended use.

10.4    All records, business plans, financial statements, manuals, memoranda, documents, correspondence, reports, records, charts, lists and other similar data delivered to or compiled by Escopeta or by or on behalf of EA that pertain to the business of Escopeta and Taylor shall be and remain the property of Escopeta and Taylor, and shall be subject at all times their joint discretion and control. In the event of the termination of this Agreement, whether before or after Closing, all such materials pertaining to the business of Escopeta and Taylor that has been obtained by EA shall be delivered promptly to Escopeta upon written request by Escopeta, provided, however, that EA may retain copies of any such documents and materials which may be reasonably necessary to maintain business, accounting, and legal records associated with this Agreement and its obligations thereunder.

### XI.  Default; Notice and Cure

11.1   Anything contained in this Agreement to the contrary notwithstanding, neither party shall be considered to have failed to perform any material obligation or duty under this Agreement unless and until:

11.2.1   In the case of a failure to pay any monetary consideration, such failure shall not have been cured within ten (10) business days after receipt of written notice thereof from the party demanding payment.

11.2.2   In the case of any other failure to perform any obligation or duty under this Agreement, such failure shall not have been cured within thirty (30) business days after receipt of written notice from the demanding party describing in reasonable detail the obligation or duty and circumstances of the defaulting party's failure to perform.

## XII.  Miscellaneous

12.1   <u>Amendments</u>

This Agreement may be amended, supplemented or modified only in a writing signed by authorized representatives of the parties hereto.

12.2   <u>Notices</u>

All notices and other communications provided for or permitted hereunder shall be in writing and shall be delivered personally, by facsimile or by courier service providing for next day service, or sent by registered or certified mail, postage prepaid, and return receipt requested, or electronic mail, if confirmed by a subsequent written letter to the party at the address noted below:

<u>If to EA:</u>
Escopeta Oil of Alaska L.L.C.
5005 Riverway, Suite 440
Houston, Texas 77056
USA
Tel: 713-623-2219
Fax: 713-439-1205
<u>E-mail: escopeta@swbell.net</u>

<u>If to Escopeta:</u>
Escopeta Oil Co., L.L.C.
5005 Riverway, Suite 440
Houston, Texas 77056
USA
Tel: 713-623-2219
Fax: 713-439-1205
E-mail: escopeta@swbell.net

Certified Document Number: 8Page 6 of 6

If to Taylor:
One Allen Center
3400 Penthouse
500 Dallas St #3450
Houston, Texas 77002
USA
Tel: 713-654-7799
Fax: 713-654-7814
E-mail: rtaylor@rgtaylorlaw.com

## 12.3   Governing Law; Jurisdiction

This Agreement shall be governed by the laws of the State of Texas without giving effect to its conflict of laws provisions in relation to all the clauses in this Agreement save for those clauses dealing with the validity of the Leases and the drilling and exploration rights which shall be governed by the laws of the State of Alaska.  The parties agree to submit to the jurisdiction of the courts of the State of Texas for all purposes, and sole and exclusive venue for any dispute or disagreement arising under or relating to this Agreement shall rest with the applicable court sitting in Harris County, Texas.

## 12.4   Waiver

Failure or delay on the part of either party hereto to enforce any right, power, or privilege hereunder shall not be deemed to constitute a waiver thereof.  Additionally, a waiver by either party of a breach of any promise hereof by the other party shall not operate as or be construed to constitute a waiver of any subsequent waiver by such other party.

## 12.5   Binding Effect

This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

## 12.6   Attorneys' and Experts' Fees; Remedies

In any action, suit or proceeding brought to enforce any provision of this Agreement, or where any provision of this Agreement is validly asserted as a defense, the prevailing party shall be entitled to recover reasonable attorneys' and experts' fees and expenses in addition to any other available remedy. Other than the right to recover fees in the preceding sentence, in any dispute between the parties arising out of this Agreement, neither party shall be liable to the other for any indirect, special, consequential or incidental damages (including, without limitation, lost profits).

## 12.7   No Third Party Beneficiary

The terms and provisions of this Agreement are intended solely for the benefit of each party hereof and their respective successors or permitted assigns, and it is not the intention of the

Certified Document Number: 88709d4c77b22af2 - Page 6 of 6

parties to confer third-party beneficiary rights upon any other person or entity other than the participants of this Agreement or to an permitted assignee holding a valid and legally binding assignment of the benefits, rights and obligations as contained in this Agreement

12.8   Severability

Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

12.9   Section Headings, Construction

The headings of Articles and Sections in this Agreement are provided for convenience only and will not affect its construction or interpretation. All words used in this Agreement will be construed to be of such gender or number as the circumstances may require. Unless otherwise expressly provided, the word "including" does not limit the preceding words or terms.

12.10   Entire Agreement

This Agreement (including all Exhibits and Appendices) constitutes the entire agreement among the parties and supersedes any prior understandings, agreements, or representations by or among the parties, written or oral, to the extent they may be related in any way to the subject matter hereof.

12.11   Currency

All references to currency within this Agreement, unless otherwise stated, shall mean United States Dollars.

12.12   Business Day

For the purposes of this Agreement, a business day is defined as any calendar day during which the New York Stock Exchange is scheduled to be officially open for business for any period of time.

12.13   Counterparts

This Agreement may be executed in one or more counterparts by the parties hereto or any successor in interest, each of which shall be deemed to be an original and all of which together shall be deemed to constitute one and the same agreement.  The signature of any party to any counterpart shall be deemed a signature to, and may be appended to, any other counterpart.

## XIII.  Authorized Representatives

13.1    For the execution and delivery of this Agreement, EA shall be duly represented by its Manager, or such other person as designated in writing by its Manager, who is authorized to execute this Agreement and commit and legally bind EA to the terms and conditions contained herein. Taylor shall be duly represented by its President or other person designated in writing by the President of Taylor, who is authorized to commit and legally bind Taylor to the terms and conditions contained herein.  Escopeta shall be duly represented by its Manager, or such other person as designated in writing by its Manager, who is authorized to execute this Agreement and commit and legally bind Escopeta to the terms and conditions contained herein.

13.2    For all operational matters following the Closing, each party shall be represented by its then current chief executive officer, or such person designated in writing by the then current chief executive officer, who shall be authorized to (a) provide suggestions, make recommendations and take such decisions as are required of working interest owners in dealing with the operator of any active unit comprised of the Leases, and (b) to provide suggestions and recommendations to the operational manager for any of the Leases not subject to a then current unit operating agreement.

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed and delivered by their duly authorized officers or agents as set forth below.

**Escopeta Oil of Alaska LLC**

Date: _____10/22_____, 2010          By: _____
                                        Name: Danny S. Davis
                                        Title:   Manager

**Escopeta Oil Co., L.L.C.**

Date: _____10/22_____, 2010          By: _____
                                        Name: Danny S. Davis
                                        Title:   Manager

Date: _____10/22_____, 2010          By: _____
                                        Name: Lawrence Berry

Certified Document Number: 5 Page 5 of 6

Title:   Manager

**Taylor Minerals, L.L.C.**

Date: _____10/22/10_____, 2010

By: _____
Name: Robert G. Taylor II
Title:   President

Certified Document Number: 3Page 6 of 6



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 5, 2019

Certified Document Number:       74145513 Total Pages:  16

Marilyn Burgess, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

# EXHIBIT B -13

4/21/2017 2:40:34 PM
Chris Daniel - District Clerk Harris County
Envelope No. 16598045
By: Brianna Denmon
Filed: 4/21/2017 2:40:34 PM

Cause No: 2016-49928

| | | |
|---|---|---|
| ALLEN LAWRENCE BERRY 2007 TRUST | § § § | IN THE DISTRICT COURT OF |
| Plaintiff, | § § | |
| v. | § § | HARRIS COUNTY, TEXAS |
| DAMON KADE, et al., | § § | |
| Defendants. | § | 125th JUDICIAL DISTRICT |

## ANSWER AND COUNTERCLAIMS

FURIE OPERATING ALASKA, LLC, ("FOA"), Furie Petroleum Company, LLC, (FPC"), CORNUCOPIA OIL & GAS COMPANY, LLC, ("Cornucopia") (collectively, the "Furie Parties") file this Answer and Counterclaims and show as follows:

## ANSWER

1.    The Furie Parties generally deny each and every, all and singular, the allegations made in Plaintiffs' Third Amended Original Petition and the Intervenors' Petition in Intervention and demand proof thereof in accordance with the laws and constitution of the State of Texas.

## AFFIRMATIVE DEFENSES

2.    Waiver, ratification, estoppel, unclean hands and prior material breach bar the claims asserted by Plaintiffs and the Intervenors.

3.    The exculpatory clause of the Joint Operating Agreement to which the parties are bound, and under which FOA is the designated "Operator," likewise bars the claims.

Certified Document Number: 74780763 - Page 1 of 6

## COUNTERCLAIMS

4.       Now acting as Counterclaimants, the Furie Parties complain of Plaintiff, Danny Davis, and Intervenor Taylor Minerals, LLC, (collectively, the "Counterdefendants") and for cause of action show the following:

## PARTIES

5.       The Furie Parties are limited liability companies that have already appeared. Cornucopia was formerly known as Escopeta Oil of Alaska, LLC.  FOA was formerly known as Escopeta Oil Company, LLC.

6.       Danny Davis ("Davis") is an individual who resides in Harris County, Texas.  He has appeared and he will be served by service upon his attorney of record in accordance with Texas Rule of Civil Procedure 21a.

7.       Taylor Minerals, LLC, ("Taylor") is a Texas limited liability company that has appeared as an intervenor.  It will be served by service upon its attorney of record in accordance with Texas Rule of Civil Procedure21a.

## FACTUAL BACKGROUND

8.       These counterclaims arise out of the transactions and occurrences made the basis of Plaintiffs' Third Amended Original Petition and the Petition in Intervention.  None of these claims are based on, or arise out of, actions taken by Davis or Taylor in their capacities as managers or members of Cornucopia or FOA.

9.       Pursuant to a "Lease Acquisition and Participation Agreement" dated October 22, 2010, (the "LAPA"), Escopeta Oil Company, LLC (n/k/a FOA), and Taylor, purported to assign

Certified Document Number: 74780763 - Page 2 of 6

to Escopeta Oil of Alaska, LLC (n/k/a Cornucopia), a 79% interest in various oil and gas leases (the "Leases") in which they owned interests.  Pursuant to that certain letter agreement dated June 29, 2011, By, between and among Escopeta Oil Company, LLC (n/k/a FOA), Escopeta Oil of Alaska, LLC (n/k/a Cornucopia), Davis (in his individual capacity) and Lawrence Berry (in his individual capacity), both Lawrence Berry and Danny Davis agreed that they and their successors would be bound by the terms and conditions of the LAPA.  As a consequence, both of the Counterdefendants, Davis and Taylor, are bound by the terms and conditions of the LAPA.

10.     In the LAPA, Davis and Taylor claimed falsely that the $20,800,000 to be paid as consideration for the transfer of the 79% interest in the Leases represented "reimbursement" for "acquisition and ownership of the Leases."  A "reimbursement," is, by definition, repayment for expenses incurred.  Subsequent to the time that the "reimbursement" required by the LAPA was paid, the Furie Parties learned that neither Taylor nor Escopeta Oil Co., LLC, had incurred (either individually or collectively) anything close to $20,800,000 in reimbursable expenses in connection with the "acquisition and ownership of the Leases."  Moreover, the Furie Parties allege that Davis caused the money received by Escopeta Oil Co., LLC, to be paid to him.  Accordingly, both Davis and Taylor have been unjustly and unfairly enriched by virtue of their misrepresentations in the LAPA.

11.     In addition, the agreement of the Furie Parties to assume an obligation to "carry" the working interests of Taylor and Davis was made in reliance on, among other things, the claim that Taylor and Escopeta Oil Co. LLC, had reimbursable expenses of more than $20 million in the "acquisition and ownership of the Leases," a claim (among others) that proved to be both false and misleading.  Both Taylor and Davis have been unjustly enriched by virtue of the fraudulently procured agreement to carry their interests.

Certified Document Number: 74780763 - Page 3 of 6

12.     In connection with the LAPA and otherwise, Davis made false and misleading statements, and failed to disclose facts that he was under a duty to disclose, with respect to violations of the Jones Act in connection with transportation of a drilling rig to the Cook Inlet of Alaska.  The Furie Parties suffered damages, and Davis and Taylor (and others) were unjustly enriched by virtue of Davis's misrepresentations and omissions.

13.     Finally, in Section 5.1.1 of the LAPA, Davis and Taylor promised to furnish to Cornucopia copies of various technical information, including seismic data.  They have breached their obligations to do so.

14.     The Furie Parties have presented their claims in accordance with Chapter 38 of the Texas Civil Practices and Remedies Code.  In addition, they have retained the undersigned attorneys and have agreed to pay the reasonable and necessary attorneys' fees.  Thus, the Furie Parties seek to recover their reasonable attorneys' and experts' fees pursuant to Section 12.6 of the LAPA.

## CAUSES OF ACTION

15.     Real Estate Fraud: Taylor and Davis have violated section 27.01 of the Texas Business and Commerce Code by engaging in fraud in connection with a real estate transaction, and each has benefited from the false representations and omissions in connection with the transaction.  They are therefore liable in accordance with the statute for the damages suffered by the Furie Parties.

16.     Unjust Enrichment/Disgorgement: Taylor and Davis have been unjustly enriched by virtue of the sums paid in connection with the LAPA and the "carry" that each has been

Certified Document Number: 74780763 - Page 4 of 6

provided.  Thus, the Furie Parties seek disgorgement of all of their ill-gotten gains, including, but not limited to, the money paid to reimburse them and the value, to date, of the "carry."

17.     <u>Breach of Contract</u>: Davis and Taylor have breached their obligations under the LAPA by, inter alia, failing to deliver the seismic data, resulting in substantial damages to the Furie Parties.

## **Rule 47 Statement**

18.     Under Texas Rule of Civil Procedure 47, the Furie Parties seek monetary relief in excess of $1,000,000 on their counterclaims.

## **Conditions Precedent**

19.     The Furie Parties have met all conditions precedent to filing this suit, or they have otherwise been waived.

WHEREFORE, PREMISES CONSIDERED, the Furie Parties pray that Plaintiffs and Intervenors take nothing by way of their claims and that they go hence from this Court, without day.  The Furie Parties further pray that upon final trial, they have judgment against Davis and Taylor as follows:

1.     For their actual damages;

2.     For disgorgement;

3.     For reasonable and necessary attorneys' and expert witness fees;

4.     For costs;

5.     For pre- and post-judgment interest at the maximum lawful rate; and

6.     For such other and further relief to which they (or any one or more of them) show entitlement.

Certified Document Number: 74780763 - Page 5 of 6

Respectfully submitted,

**REYNOLDS FRIZZELL LLP**

By:      */s/ Chris Reynolds*
          Chris Reynolds
          State Bar No:  16801900
          Christopher M. Hogan
          State Bar No:  24065434

1100 Louisiana Street, Suite 3500
Houston, TX 77002
Phone: (713) 485-7200
Fax:   (713) 485-7250
creynolds@reynoldsfrizzell.com
chogan@reynoldsfrizzell.com

**ATTORNEYS FOR DEFENDANTS**
**FURIE OPERATING ALASKA, LLC and**
**CORNUCOPIA OIL & GAS COMPANY, LLC**

## <u>CERTIFICATE OF SERVICE</u>

      I certify that on this the 21st day of April 2017, a true and correct copy of the foregoing instrument has been served through the court's electronic filing service system upon all known counsel of record in accordance with the requirements of the Texas Rules of Civil Procedure.

                     */s/ Chris Reynolds*
                     Chris Reynolds

Certified Document Number: 74780763 - Page 6 of 6



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 5, 2019

Certified Document Number:        74780763 Total Pages:  6

Marilyn Burgess, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

# EXHIBIT B -14

4/21/2017 3:50:15 PM
Chris Daniel - District Clerk Harris County
Envelope No. 16602092
By: Alma Martinez
Filed: 4/21/2017 3:50:15 PM

Certified Document Number: 74779874 - Page 1 of 17

## CAUSE NO. 2016-49928

| | | |
|---|---|---|
| **ALLEN LAWRENCE BERRY** | § | **IN THE DISTRICT COURT OF** |
| **2007 TRUST  and DANNY DAVIS** | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, T E X A S** |
| | § | |
| **DAMON KADE, et al.** | § | **125th JUDICIAL DISTRICT** |

## PLAINTIFFS' FOURTH AMENDED PETITION

Allen Lawrence Berry, Individual Trustee of the Allen Lawrence Berry 2007 Trust and Danny Davis ("Plaintiffs") files this Fourth Amended Petition complaining of Damon Kade, Kay Rieck, Lars Degenhardt, Tom Hord, Furie Operating Alaska, LLC, Furie Petroleum Company, LLC, and Cornucopia Oil & Gas Company, LLC ("Defendants") and respectfully states as follows:

## I.
## DISCOVERY AND RELIEF SOUGHT

1.     In accordance with Rule 190 of the Texas Rules of Civil Procedure, discovery in this case is intended to be conducted under Level 3.

2.     Plaintiffs seek monetary relief over $1,000,000.  *See* Tex. R. Civ. P. 47(c).

## II.
## JURSIDICTION AND VENUE

3.     This Court has subject matter jurisdiction because the amount in controversy exceeds the jurisdictional requirement of this Court and because none of the causes of action pled fall within the exclusive jurisdiction of any court of this state.

4.     Venue is proper in Harris County, Texas because the acts and occurrences giving rise to the various causes of action occurred in part in Harris County, Texas. Furthermore, one or more of the defendants reside in Harris County, Texas.

Certified Document Number: 74779874 - Page 2 of 17

**III.**
**PARTIES AND SERVICE OF CITATION**

5.      Plaintiff is Allen Lawrence Berry, Trustee of the Allen Lawrence Berry 2007 Trust, whose address is 5005 Riverway, Suite 440, Houston, Texas 77056.

6.      Plaintiff is Danny Davis, whose address is 5005 Riverway, Suite 440, Houston, Texas 77056.

7.      Defendant, Damon Kade is an individual residing in Harris County, Texas who has made an appearance in this case.

8.      Defendant, Kay Rieck is an individual who may be served at his place of employment, Furie Operating Alaska, LLC, 100 Enterprise Avenue, League City, Texas or wherever he may be found.

9.      Defendant, Lars Degenhardt is an individual who was served by substituted service on October 24, 2016.

10.     Defendant, Tom Hord is an individual who was served by substituted service on October 24, 2016.

11.      Defendant, Furie Operating Alaska, LLC, is a Texas LLC that has made an appearance in this case.

12.     Defendant, Cornucopia Oil & Gas Company, LLC, is a Texas LLC that has made an appearance in this case.

13.     Defendant Furie Petroleum Company, LLC is a Texas LLC that may be served with process by serving its registered agent CT Corporation System at 1999 Bryan Street, Suite 900, Texas 75201.

2

# IV.
# FACTS

14.     Escopeta Oil, LLC ("Escopeta Oil") and Escopeta of Alaska, LLC, ("Escopeta Alaska") were originally owned by Allen Lawrence Berry ("Berry") and Danny Davis ("Davis").

15.     On October 22, 2010, Escopeta Oil and Taylor Minerals, LLC ("Taylor"), as Assignors, entered into a Lease Assignment and Participation Agreement ("Lease Assignment") with Escopeta Alaska, as Assignee, regarding leases in the Cook Inlet Basin ("Leases") in Alaska.  The following are the pertinent provisions of the Lease Assignment:

9.3     The parties acknowledge that under the current laws of the State of Alaska, certain expenses incurred in connection with the development of the KLU Leases may qualify to be refunded or reimbursed by the State of Alaska, HB 280 and the overall ACES Program or for credits against income taxes otherwise payable to the State of Alaska.  To the extent the parties are able to qualify for such tax credits, [Escopeta Oil] and Taylor hereby agree that all tax credits shall be monetized for the benefit of [Escopeta Alaska] as full and complete payment for the working interest costs of [Escopeta Oil] and Taylor for the drilling of the #1 KLU and subsequent wells in which [Escopeta Oil] and Taylor are working interest owners.

9.4     The parties acknowledge that under the current laws of the State of Alask, the wells drilled on all the Leases may qualify for a production royalty or a reduction in the royalty percentage paid to the State of Alaska.  To the extent the parties are successful in obtaining this royalty relief credit, the value or interest received pursuant to any such program on all leases will belong 79% to [Escopeta Alaska] and 21% to [Escopeta Oil] (for itself and, as applicable, for the benefit of Taylor).

9.5     [Escopeta Oil] and Taylor will contribute 100% of their share and all right, title and interested in and to all funds due from SB 309, HB 280, and the Alaska ACES Program for the development of the KLU.  For this contribution, along with prior work in developing the KLU geology and exploration program, [Escopeta Oil] and

3

Certified Document Number: 74779874 - Page 4 of 17

> Taylor will own a 21% working interest based on a 75% NRI in the KLU drilling and development program. This working interest shall be free and clear of any and all additional costs and assessments and will include all drilling, completion, platform, pipeline and facility costs to bring oil and gas into production. The 21% working interest will come into effect at the time [Escopeta Alaska] has recovered 100% of its total costs of drilling, completing, building pipelines, platforms, necessary facilities and placing the Kitchen Lights Unit on production. [Escopeta Oil] and Taylor will pay their share of all operating expenses, workover and recompletion costs, in accordance with their respective working interest ownership, once [Escopeta Alaska] has recovered 100% of its total cost.

Under the Lease Agreement, Escopeta Oil was responsible for the administration and operation of the Leases.

16.     Pursuant to the Joint Operating Agreement entered into on October 21, 2010 between Escopeta Oil and Escopeta Alaska, Escopeta Oil was the operator and Escopeta Alaska and Taylor were non-operating working interest owners. Pursuant to the terms of the Lease Agreement, Escopeta Alaska and Taylor assigned certain rights to Escopeta Oil and retained certain royalty interests and 21% of the working interest. Escopeta Alaska, among other duties, agreed to fund 100% of the costs of drilling and development of the leases and in return, received assignment of 79% of the working interest. The Lease Assignment and Joint Operating Agreement expressly state that each Agreement is binding upon and inures to the benefit of the successors and assigns of each party.

17.     After the Lease Assignment was entered, Davis and Berry assigned 100% interest of Escopeta Oil and Escopeta Alaska to Furie Operating Alaska, LLC. However, Davis retained his interest in the Leases individually, and Berry transferred his interest in the Leases to the Allen Lawrence Berry 2007 Trust. On August 19, 2011, Escopeta

Alaska changed its name to become Defendant Cornucopia.   On September 21, 2011, Escopeta Oil changed its name became Defendant Furie.

18.     Pursuant to the Lease Assignment and a subsequent transfer of an additional 1% to Cornucopia from Escopeta Oil, the current working interest in the Leases is divided as follows:

| | |
|---|---|
| 80% | Cornucopia |
| 6.875% | Davis |
| 7.875% | Berry Trust |
| 5.25% | Taylor |

19.     Upon information and belief, Furie Operating is owned 100% by Furie Petroleum Company, LLC ("Furie Petroleum"), and Furie Petroleum is owned 88% by Cornucopia.   Additionally, upon information and belief, Cornucopia is also owned wholly or partially by Deutsche Oel & Gas, AG ("Deutsche"), Deutsche is owned 100% by Alecto, Ltd. ("Alecto"), and Alecto is owned 100% by Defendant Kay Rieck. Deutsche is also a member of Furie Petroleum's management and owns 12% of Cornucopia.

20.     Defendant Lars Degenhardt is President of Furie Operating and is an officer or member of the board of directors of Deutsche, also known as German Oil & Gas.  Defendant Damon Kade is the former President and Director of Furie Operating, the former President of Furie Petroleum, and was involved with other companies which were subsidiaries of Furie Operating, Furie Petroleum, and Cornucopia.  Defendant Tom Hord is the Chief Operating Officer of Furie Petroleum and a Director of Furie Operating.

Certified Document Number: 74779874 - Page 5 of 17

21.     Pursuant to a Joint Operating Agreement between Escopeta Oil (later Furie Operating) and Escopeta Alaska (later Cornucopia) entered into on October 21, 2010, Furie Operating, through itself and the relationships with the other Defendants, was responsible for the administration and operation of the Leases.  Defendants, in operating said interests, failed to properly administer said interest, failed to keep Plaintiffs properly advised of his interests, and failed to properly account for his interests.

22.     Specifically, Defendants (1) failed to properly account for tax credits received by the state of Alaska under Section 9.3 of the Lease Assignment; (2) failed to properly account for discovery royalties under Section 9.4 of the Lease Assignment; and (3) charged improper and excessive operating costs for the Leases at issue. Further, Defendants improperly engaged in self-dealing, as shown from the intertwined business relationship between the majority interest owner of the lease assignment, Cornucopia, and the operator, Furie Operating, and the further ownership structure of the entities described herein.

23.     After the dates of the agreements, Defendants applied for and received tax credits from the State of Alaska through programs, such as ACES Program and State of Alaska HB 280, and, further, Defendants received an increase in the net revenue interest as a result of a reduction in the royalty percentage payable to the State of Alaska, as lessor.  Defendants have failed and refused to properly account for any tax credits received from the State of Alaska under Section 9.3 of the Lease Assignment.  Further, Defendants failed to properly account for discovery or production royalty or reduction of same under Section 9.4 of the Lease Assignment; and Defendants have charged improper and excessive operating costs for the Leases at issue.

Certified Document Number: 74779874 - Page 6 of 17

24.     Further, Defendants received a discovery royalty, production royalty or reduction in royalty pursuant to incentive plans adopted by the State of Alaska to encourage drilling and development of oil and gas properties on State owned lands. Defendants have failed to pay or account for this amount.

25.     Defendants, in operating said interests, failed to properly administer the working interest owners' interests in the Oil and Gas Lease and the Kitchen Lights Unit interest, failed to keep the parties properly advised as to financial and operational matters relating to the parties' interests and failed to properly account for all interests.

26.     Further, Defendants made misrepresentations to Plaintiffs regarding Plaintiffs' forthcoming receipt of the discovery royalties and full amount due from the tax benefits.

<div align="center">

**V.**
**CAUSES OF ACTION**

**NEGLIGENCE / GROSS NEGLIGENCE**

</div>

27.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

28.     Defendants owed a duty to Plaintiffs to conduct operations in a reasonably prudent manner.  Defendants further had a duty to use proper accounting procedures and methods.  Defendants breached their duties.

29.     Defendants knew or should have known and had actual and/or constructive notice that their improper actions reasonably caused Plaintiffs to suffer injury.  Defendants knew or should have known that they were not acting as a reasonably prudent operator.  Defendants continued to act, individually and in concert, which proximately caused the damage to and destruction of Plaintiffs' lawful contractual and equitable rights.  Further, Defendants' interference and negligent actions resulted in

Certified Document Number: 74779874 - Page 7 of 17

Plaintiffs being denied possession of, use of and access to its interests in the assigned rights and property interests. Defendants' actions constitute negligence and/or gross negligence which proximately caused the injuries described by Plaintiffs herein.

30.     Defendants' negligent acts include, but are not limited to:

a)      Negligently and grossly negligently failed to provide accurate information regarding Plaintiffs' rights under the Lease Agreement and Joint Operating Agreement;

b)      Negligently and grossly negligently failed to make payment of amounts due to Plaintiffs and using same for Defendants' purposes;

c)      Negligently and grossly negligently failing to make and keep proper accounting of all amounts received and expended subject to the Lease Agreement and Joint Operating Agreement;

d)      Negligently and grossly negligently failing to pay to Plaintiffs all amounts properly due to them subject to the Lease Agreement and Joint Operating Agreement;

e)      Negligently and grossly negligently failing to maintain records of all amounts which would offset any payment toward Plaintiffs' interests, such as, their "Back-in right" subject to the Lease Agreement and Joint Operating Agreement;

f)      Failing to properly investigate each other Defendant's improper actions which harmed Plaintiffs and failure to advise Plaintiffs of said actions;

g)      Negligently and grossly negligently receiving and retaining monies properly belonging to Plaintiffs; and

h)      Negligently and grossly negligently failing to cease and desist in all improper activity in violation of Plaintiffs' rights.

31.     Further, the negligent, tortious and improper actions by Defendants by continuing to violate Plaintiffs' contracted and assigned rights are reckless, willful, and wanton disregard for Plaintiffs' known rights.

Certified Document Number: 74779874 - Page 8 of 17

32.     Defendants consciously and/or deliberately engaged in recklessness, oppression, fraud, willfulness, wantonness and will malice through their operations and administration of Plaintiffs' interests, which proximately caused Plaintiffs' damages in the past and ongoing described herein.

### BREACH OF CONTRACT

33.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

34.     Plaintiffs entered into or have rights derived from the Lease Agreement and Joint Operating Agreement.

35.     Defendants failed to abide by the terms and conditions of the Lease Assignment and Joint Operating Agreement.

36.     Plaintiffs have peformed their contractual obligations, and all conditions precedent have been met.

37.     Defendants have breach the Lease Assignment and Joint Operating Agreement by failing to abide by one or more of the terms and conditions.

38.     This breach has cause injury to Plaintiffs.

### BREACH OF FIDUCIARY DUTY/AIDING AND ABETTING

39.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

40.     Defendants acted as a fiduciary to Plaintiffs, owing Plaintiffs the duty of good faith and fair dealing and the duty to make full disclosure to Plaintiffs concerning matters affecting the Leases.

41.     Defendants have breached and/or aided and abetted the breach of fiduciary duties owed to Plaintiffs by knowingly and intentionally failing to fully disclose and account for material facts concerning the Leases.

Certified Document Number: 74779874 - Page 9 of 17

42.      The breaches resulted in damages to Plaintiffs greatly exceeding the minimum jurisdictional limits of this Court.

43.      Defendant Cornucopia further has received funds beneficially owned by and payable to Plaintiffs and breached its legal, equitable and fiduciary duty to Plaintiffs as it received, but failed to account for and pay to Plaintiffs, production royalty or reduction of the production royalty percentage paid to the State of Alaska.

44.      Further, Defendants, acting in concert, sought and received "royalty relief credits" and have failed and refused to account for or pay Plaintiffs these amounts.

**IMPROPER ADMINISTRATION AND ACCOUNTING**

45.      Plaintiffs incorporate all previous paragraphs as if fully restated herein.

46.      Defendants have breached their duties to Plaintiffs through improper administration.  Defendants have a duty to properly account, bill, and pay the appropriate amounts based on Plaintiffs' interest.

47.      Defendants have failed in this duty causing Plaintiffs damages greatly exceeding the minimum jurisdictional limits of this Court.

48.      Plaintiffs sue for an equitable accounting related to all joint interest billings, and monies owed to plaintiff.

**CONVERSION**

49.      Plaintiffs incorporate all previous paragraphs as if fully restated herein.

50.      Pursuant to the Lease Agreement and and Joint Operating Agreement, Plaitiffs are entitled to a percentage of royalties and working interest based upon oil and gas removed from the property subject to the Leases at issue.

Certified Document Number: 74779874 - Page 10 of 17

51.     Defendants have established commercial production and sold substantial quantities of oil and gas from the Leases but have failed to pay to Plaintiffs their share of such proceeds.   Accordingly, Defendants have improperly converted those rights and monies and have refused to return same to Plaintiffs.   Further, due to Defendants' knowledge of Plaintiffs' rights and their intentional disregard, malice, and gross negligence for Plaintiffs' rights, Plaintiffs' property and the injury which would result, Plaintiffs seek exemplary damages from Defendants.

## CONSPIRACY

52.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

53.     Defendants, with knowledge of Plaintiffs' rights, conspired with concerted action and/or aided and abetted each other in the breaches of contract and fiduciary duties owed to Plaintiffs.   Plaintiffs by knowingly and intentionally failing to fully disclose and account for material facts concerning the Leases. The breaches caused and resulted in damages to Plaintiffs.

54.     Defendants, wrongfully breached, intentionally, negligently and grossly negligently acted in concert to prevent Plaintiffs from receiving the benefits of their bargain and their rights set forth under the Lease Agreement and Joint Operating Agreement.   Each of these actions intentionally, negligently and grossly negligently succeeded in breach of the Lease Agreement and and Joint Operating Agreement and cause the property interests and rights owned by Plaintiffs to be impaired and damaged.

55.     Defendants caused injury to Plaintiffs as set forth herein.

56.     Further, Defendants operated in concert throughout this matter and have advanced a common scheme to engage in self-dealing through a myriad of interlocking

Certified Document Number: 74779874 - Page 11 of 17

domestic and foreign entities and to deceive Plaintiffs as to the disposition of property, to conceal amounts received by Defendants, to prevent Plaintiffs from becoming aware of the amounts Defendants received, to conceal and convert amounts expended through self-dealing and other actions set forth herein.

### UNJUST ENRICHMENT

57.     Defendants, through their improper actions, have retained property and property interests which rightfully belong to Plaintiffs.   Retention of such property is unconscionable.

### FRAUD

58.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

59.     Defendants fraudulently represented to Plaintiffs that receipt of the discovery royalties and full amount due from the tax benefits was forthcoming.   These representations were material.

60.     Defendants representations were false, and Defendants knew the representations were false when they were made.

61.     Defendants had no intention of following through on these misrepresentations.

62.     Defendants fraudulent conduct was willful, wanton, and malicious.

63.     Defendants intended Plaintiffs to rely on their representations and conduct, and Plaintiffs did in fact rely on the representations.

64.     Plaintiffs have been injured by Defendants' fraudulent conduct and are entitled to recover damages for that injury.

# VI.
## DAMAGES

65.     As a direct and proximate result of the incidents made the basis of this lawsuit and improper actions and failures to act by Defendants, Plaintiffs suffered serious damage.  Each action complained of herein is a direct and proximate cause of Plaintiffs' damages set forth herein.

66.     Plaintiffs incurred the following damages, which are of a continuing nature, due to Defendants' actions:

a)  Any and all amounts not paid to Plaintiffs pursuant to their rights under the Lease Assignment and Joint Operating Agreement.

b)  All property rights sold and assigned by Defendants, monies paid to Defendants, and the losses incurred by Plaintiffs as a result of same.

c)  Interest, prejudgment and post judgment; and

d)  Any and all other damages available via statute, common law and equity.

67.     Because of these injuries and damages, Plaintiffs are entitled to recover compensatory damages of an amount which is within the jurisdictional requirements of this Honorable Court.   Plaintiffs also seek punitive and/or exemplary damages to the extent allowed by law.

68.     Because of the conduct of Defendants, including breach of the agreements between the parties, Plaintiffs have been compelled to engage the services of an attorney to prosecute this action.   Plaintiffs are entitled to recover a reasonable sum for the necessary services to the maximum extent allowed by law, including all expenses and court costs, of the attorney in the preparation and trial of this action and for appeals to the Court of Appeals or the Texas Supreme Court.

Certified Document Number: 74779874 - Page 13 of 17

## VII.
## CONDITIONS PRECEDENT

69.     All conditions precedent to bringing the above causes of action have been met or occurred.

## VIII.
## NO ELECTION OF REMEDIES

70.     The foregoing facts and theories are pled cumulatively and alternatively, with no election or waiver of rights or remedies.

## IX.
## TRIAL BY JURY

71.     Plaintiffs request trial by jury and submits appropriate jury fee.

## X.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Allen Lawrence Berry, Individual Trustee of the Allen Lawrence Berry 2007 Trust prays that it take judgment against Defendant and recover:

a.     All the actual damages and special damages caused by the wrongful conduct complained of herein;

b.     Just and reasonable attorney's fees;

c.     Pre- and post-judgment interest;

d.     Costs of suit; and

e.     Other such relief at law and equity for which it may be justly entitled.

Certified Document Number: 74779874 - Page 14 of 17

Respectfully submitted,

**BUTCH BOYD LAW FIRM**

_____
ERNEST W. BOYD
State Bar No. 00783694
butchboyd@butchboydlawfirm.com
CHERYL L. TURNER
State Bar No. 24076279
cherylturner@butchboydlawfirm.com
2905 Sackett Street
Houston, TX 77098
Phone:  (713) 589-8477
Fax:  (713) 589-8563

**ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

This is to certify that a true and complete copy of this document was served on all

counsel of record by method indicated below on the 21st day of April, 2017:

Mr. J. Marcus "Marc" Hill
Hill & Hill, P.C. Law Firm
1770 St. James Place, Ste. 115
Houston, TX 77056
marc@hillpclaw.com
Facsimile (713) 688-2817
***Attorney for Defendant, Lars Degenhardt***

Mr. John Scott Black
Mr. Richard D. Daly
Ms. Melissa Waden Wray
Daly & Black, P.C.
2211 Norfolk Street, Ste. 800
Houston, TX 77098
jblack@dalyblack.com
rdaly@dalyblack.com
mwray@dalyblack.com
Facsimile: (713) 655-1587
***Attorneys for Defendant Damon Kade***

Mr. Chris Reynolds
Mr. Christopher M. Hogan
1100 Louisiana Street, Ste. 3500
Houston, TX 77002
creynolds@reynoldsfrizzell.com
chogan@reynoldsfrizzell.com
Facsimile: (713) 785-7250
***Attorneys for Defendants, Furie Operating Alaska, LLC and***
***Cornucopia Oil & Gas Company, LLC***

Robert G. Taylor, III
Law Office of Robert G. Taylor, III
Texas Bar Number 19721100
4119 Montrose, Suite 550
Houston, Texas 77006
Rt3atty@gmail.com
Tel. No. (713) 654-7799
Facsimile: (713) 654-7814
***Attorney for Intervenors Taylor Minerals, LLC and GIZA HOLDINGS, LLC***

_____
ERNEST ("BUTCH") BOYD

Certified Document Number: 74779874 - Page 17 of 17



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 5, 2019

Certified Document Number:        74779874 Total Pages:  17

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

# EXHIBIT B -15

5/26/2017 2:56:41 PM
Chris Daniel - District Clerk Harris County
Envelope No. 17284690
By: Wanda Chambers
Filed: 5/26/2017 2:56:41 PM

<div style="text-align:center">

**CAUSE NO. 2016-49928**

</div>

| | | |
|---|---|---|
| **ALLEN LAWRENCE BERRY** | § | **IN THE DISTRICT COURT OF** |
| **2007 TRUST** | § | |
| | § | |
| **V.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **DAMON KADE, ET AL** | § | **125TH JUDICIAL DISTRICT** |

<div style="text-align:center">

**<u>COUNTERANSWER</u>**

</div>

**COME NOW, TAYLOR MINERALS, LLC and GIZA HOLDINGS LLC**, hereinafter referred to as CounterDefendants, and file this   CounterAnswer and respectfully show the following:

<div style="text-align:center">

**I.**

*General Denial*

</div>

1.     Pursuant to Rule 92 of the Texas Rules of Civil Procedure, CounterDefendants generally deny each and every claim, charge and allegation asserted by CounterPlaintiffs FURIE OPERATING ALASKA, LLC, FURIE PETROLEUM COMPANY, LLC and CORNUCOPIA OIL & GAS COMPANY, LLC.  CounterDefendants demand that CounterPlaintiff prove its claims by a preponderance of credible evidence as required by the laws and the Constitution of the United States of America and the State of Texas.

Certified Document Number: 75273644 - Page 1 of 7

## II.

### *Affirmative Defenses*

2.      CounterDefendants assert the following affirmative defenses which bar CounterPlaintiff's claims in whole or in part.  The defenses are pled in addition to one another and/or in the alternative to one another.

3.      Additionally and/or in the alternative, CounterDefendants assert that the allegations and facts pled in CounterPlaintiff's *Answer and CounterClaims* are inaccurate and incorrect in whole or in part.

4.      Additionally, and/or in the alternative, CounterDefendants deny it breached any contract or agreement with CounterPlaintiff.  CounterDefendants deny they owes anything on any contract or agreement with CounterPlaintiff.

5.      CounterPlaintiff's claims are barred in whole or in part by the following affirmative defenses:

- Additionally and/or in the alternative CounterDefendants plead ambiguity;

- Additionally and/or in the alternative CounterDefendants plead deceit by CounterPlaintiff;

- Additionally and/or in the alternative CounterDefendants plead estoppel;

- Additionally and/or in the alternative CounterDefendants plead excuse;

- Additionally and/or in the alternative CounterDefendants plead failure of consideration;

- Additionally and/or in the alternative CounterDefendants plead failure to meet the prerequisites for filing suit;

2

Certified Document Number: 75273644 - Page 2 of 7

- Additionally and/or in the alternative CounterDefendants plead failure to mitigate damages;

- Additionally and/or in the alternative CounterDefendants pleads failure to prove each element its causes of action;

- Additionally and/or in the alternative CounterDefendants plead failure to state a cause of action upon which relief may be granted;

- Additionally and/or in the alternative CounterDefendants plead failure to satisfy conditions precedent for filing suit;

- Additionally and/or in the alternative CounterDefendants plead fraud;

- Additionally and/or in the alternative CounterDefendants plead frustration of purpose;

- Additionally and/or in the alternative CounterDefendants plead impossibility;

- Additionally and/or in the alternative CounterDefendants plead insufficient consideration;

- Additionally and/or in the alternative CounterDefendants plead justification;

- Additionally and/or in the alternative CounterDefendants plead laches;

- Additionally and/or in the alternative CounterDefendants plead lack of consideration;

- Additionally and/or in the alternative CounterDefendants plead misrepresentation;

- Additionally and/or in the alternative CounterDefendants plead mistake;

Certified Document Number: 75273644 - Page 3 of 7

Certified Document Number: 75273644 - Page 4 of 7

- Additionally and/or in the alternative CounterDefendants plead no meeting of the minds;

- Additionally and/or in the alternative CounterDefendants plead prior material breach;

- Additionally and/or in the alternative CounterDefendants plead rescission;

- Additionally and/or in the alternative CounterDefendants plead statute of limitations;

- Additionally and/or in the alternative CounterDefendants plead unclean hands;

- Additionally and/or in the alternative CounterDefendants plead unconscionability;

- Additionally and/or in the alternative CounterDefendants plead Statute of Frauds, including Tex. Bus. & Com. Code Ann, sec 26.01;

- Additionally and/or in the alternative CounterDefendants plead unjust enrichment and/or

- Additionally and/or in the alternative CounterDefendants plead waiver.

6.      Additionally and/or in the alternative CounterDefendants plead the attorney's fees and costs alleged and claimed by CounterPlaintiffs are not reasonable or necessary, and have been waived and/or are subject to collateral estoppel and/or *res judicata*.

7.      Additionally and/or in the alternative CounterDefendants plead: the occurrence in question was solely caused by persons, entities, instrumentalities or factors other than CounterDefendants.

4

8.      Additionally and/or in the alternative CounterDefendants plead: CounterPlaintiffs and CounterPlaintiffs' agents' conduct caused or contributed to the damages asserted by CounterPlaintiffs and include CounterPlaintiff's agents, attorneys and law firms.

9.      Additionally and/or in the alternative CounterDefendants plead: Any complaint which CounterPlaintiff makes in its pleadings should be directed at parties other than CounterDefendants.  Accordingly, CounterDefendants invoke the legal doctrine allowing a credit against any judgment ultimately rendered in this matter for that degree of fault attributed by the jury to parties other than CounterDefendants.

10.      Additionally    and/or    in    the    alternative    CounterDefendants    plead: CounterDefendants hereby asserts  the right to indemnity and/or contribution.  In the event any money is paid in settlement, CounterDefendants hereby asserts the right to obtain an appropriate credit under Chapter 33.  CounterDefendants reserves the right to introduce such evidence which may come to light establishing any responsibility, cause, fault or negligence against any and all former, current and future claimants, CounterDefendants, settling parties, CounterPlaintiffs' agents, or others to support the submission of those parties in the liability questions to the jury.

## III.

## JURY DEMAND

11.      A jury trial is demanded.

Certified Document Number: 75273644 - Page 5 of 7

**WHEREFORE, PREMISES CONSIDERED, COUNTERDEFENDANTS** request and pray that the Honorable Court enter a judgment that CounterPlaintiffs takes nothing by this suit; enter judgment in CounterDefendant's favor against CounterPlaintiffs; award CounterDefendants reasonable attorneys' fees, costs and expense incurred in this case, costs of court, grant all relief sought by CounterDefendants against CounterPlaintiffs; and grant all other relief in law and equity, pled or unpled, to which CounterDefendants may show themselves justly entitled.

**BY***: /s/ Robert G. Taylor, III*_____
**Robert G. Taylor, III**
**ATTORNEY FOR INTERVENORS**

**Robert G. Taylor, III**
**Law Office of Robert G. Taylor, III**
**Texas Bar Number 19721100**
**4119 Montrose, Suite 550**
**Houston, Texas 77006**
**(713) 654-7799**
**(713) 654-7814 facsimile**
**rt3atty@gmail.com**

Certified Document Number: 75273644 - Page 6 of 7

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document was forwarded via electronic service, facsimile and/or U. S. Mail on this the 26th day of May, 2017 to:

Ernest W. Boyd
butchboyd@butchboydlawfirm.com
Cheryl L. Turner
cherylturner@butchboydlawfirm.com
Butch Boyd Law Firm
2905 Sackett Street
Houston, Texas 77098
Facsimile (713) 589-8563

Chris Reynolds
creybolds@reynoldsfrizzell.com
Christopher Hogan
chogan@reynoldsfrizzell.com
Reynolds Frizzell, LP
1100 Loiusiana Street, Suite 3500
Houston, Texas 77002
Facsimile (713) 485-7250

John Scott Black
jblack@dalyblack.com
Richard D. Daly
rdaly@dalyblack.com
Melissa Waden Wray
mwray@dalyblack.com
Daly & Black, P.C.
211 Norfolk Street, Suite 800
Houston, Texas. 77098
Facsimile (713) 655-1587

J. Marcus "Marc" Hill
marc@hillpclaw.com
Hill & Hill, P.C. Law Firm
1770 St. James Place, Suite 115
Houston, Texas 77056
Facsimile (713) 688-2817

*/s/ Robert G. Taylor, III*
**Robert G. Taylor, III**

7



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 5, 2019

Certified Document Number:        75273644 Total Pages:  7

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# EXHIBIT B -16

7/13/2017 2:34 PM
Chris Daniel - District Clerk Harris County
Envelope No. 18180665
By: Alma Martinez
Filed: 7/13/2017 2:34 PM

Certified Document Number: 75910082 - Page 1 of 5

## CAUSE NO. 2016-49928

| | | |
|---|---|---|
| **ALLEN LAWRENCE BERRY** | § | **IN THE DISTRICT COURT OF** |
| **2007 TRUST and DANNY DAVIS** | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **DAMON KADE, et al.** | § | **125ᵗʰ JUDICIAL DISTRICT** |

### DANNY DAVIS'S ORIGINAL ANSWER TO COUNTERCLAIMS

Danny Davis files this Original Answer to Counterclaims filed by Furie Operating Alaska, LLC, Furie Petroleum Company, LLC, and Cornucopia Oil & Gas Company, LLC (collectively, the "Furie Parties").

### GENERAL DENIAL

1.      Danny Davis generally denies the allegations of the Furie Parties.

### AFFIRMATIVE DEFENSES

2.      The Furie Parties' claims are barred by the Furie Parties' fraud and deceit;

3.      The Furie Parties' claims are barred because they materially breached the contract.

4.      The Furie Parties' claims are barred by estoppel, collateral estoppel and judicial estoppel.

5.      Danny Davis pleads excuse.

6.      The Furie Parties' claims are barred due to a failure or lack of consideration.

7.      The Furie Parties' claims are barred due to a failure to meet the prerequisites for filing suit.

8.      The Furie Parties have failed to mitigate damages.

9.      The Furie Parties' claims are barred due to a failure to satisfy conditions precedent, including but not limited to providing notice or presenting the Furie Parties' claims

to Danny Davis.

10.     Danny Davis pleads frustration of purpose.

11.     Danny Davis pleads impossibility or inability to perform.

12.     Danny Davis pleads justification.

13.     Danny Davis pleads mistake.

14.     Danny Davis pleads no meeting of the minds.

15.     Danny Davis pleads recession.

16.     The Furie Parties' claims are barred by the applicable statute of limitations.

17.     The Furie Parties' claims are barred because they have unclean hands.

18.     Danny Davis pleads unconscionability.

19.     The Furie Parties' claims are barred by the statute of frauds.

20.     The Furie Parties' claims are barred by waiver.

21.     The Furie Parties' claims are barred by ratification.

22.     The Furie Parties' claims are barred by laches.

23.     Danny Davis pleads contributory negligence, proportionate responsibility and contribution as affirmative defenses.

24.     Danny Davis is entitled to offset and/or credit.

25.     Any claim for exemplary damages are limited or capped pursuant to applicable law, including but not limited to the Texas Damages Act, Tex. Civ. Prac. & Rem. Code ch. 41, the Due Process Clauses of the United States and Texas Constitutions.

**JURY DEMAND**

26.     A jury trial is hereby demanded.

**PRAYER**

Danny Davis respectfully requests that the Furie Parties take nothing on their claims,

Certified Document Number: 75910082 - Page 2 of 5

that judgment be rendered in favor of Danny Davis and that Danny Davis recover his reasonable and necessary attorneys' fees and costs. Danny Davis requests all other relief to which he may be justly entitled.

Respectfully submitted,

BUTCH BOYD LAW FIRM

_____

ERNEST W. ("BUTCH") BOYD
State Bar No. 00783694
butchboyd@butchboydlawfirm.com
JEREMY R. STONE
State Bar No. 24013577
jeremystone@butchboydlawfirm.com
CHERYL L. TURNER
State Bar No. 24076279
cherylturner@butchboydlawfirm.com
2905 Sackett Street
Houston, Texas 77098
Phone: (713) 589-8477
Fax: (713) 589-8563

**ATTORNEYS FOR COUNTER-DEFENDANT**

## **CERTIFICATE OF SERVICE**

This is to certify that a true and complete copy of this document was served on all counsel of record by method indicated below on the 13th day of July, 2017:

Mr. J. Marcus "Marc" Hill
Hill & Hill, P.C. Law Firm
1770 St. James Place, Ste. 115
Houston, TX 77056
marc@hillpclaw.com
Facsimile (713) 688-2817
***Attorney for Defendant, Lars Degenhardt***

Mr. John Scott Black
Mr. Richard D. Daly
Ms. Melissa Waden Wray
Daly & Black, P.C.
2211 Norfolk Street, Ste. 800
Houston, TX 77098
jblack@dalyblack.com
rdaly@dalyblack.com
mwray@dalyblack.com
Facsimile: (713) 655-1587
***Attorneys for Defendant Damon Kade***

Mr. Chris Reynolds
Mr. Christopher M. Hogan
1100 Louisiana Street, Ste. 3500
Houston, TX 77002
creynolds@reynoldsfrizzell.com
chogan@reynoldsfrizzell.com
Facsimile: (713) 785-7250
***Attorneys for Defendants, Furie Operating Alaska, LLC, Furie Petroleum Company, LLC and Cornucopia Oil & Gas Company, LLC***

Robert G. ("Trey") Taylor, III
Law Office of Robert G. Taylor, III
Texas Bar Number 19721100
4119 Montrose, Suite 550
Houston, Texas 77006
(713) 654-7799
(713) 654-7814 facsimile
rt3atty@gmail.com
***Attorney for Intervenors, Taylor Minerals, LLC and Giza Holdings, LLC***

_____

ERNEST W. BOYD

Certified Document Number: 75910082 - Page 5 of 5



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 5, 2019

Certified Document Number:        75910082 Total Pages:  5

Marilyn Burgess, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# EXHIBIT B -17

9/1/2017 4:09 PM
Chris Daniel - District Clerk Harris County
Envelope No. 19211335
By: SASHA PRINCE
Filed: 9/1/2017 4:09 PM

Certified Document Number: 76535337 - Page 1 of 17

## CAUSE NO. 2016-49928

| | | |
|---|---|---|
| **ALLEN LAWRENCE BERRY,** | § | **IN THE DISTRICT COURT OF** |
| **INDIVIDUALLY AND AS TRUSTEE** | § | |
| **OF THE ALLEN LAWRENCE** | § | **HARRIS COUNTY, T E X A S** |
| **BERRY TRUST, and DANNY DAVIS** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **DAMON KADE, et al.** | § | **125th JUDICIAL DISTRICT** |

## PLAINTIFFS' FIFTH AMENDED PETITION

Allen Lawrence Berry, Individually and as Trustee of the Allen Lawrence Berry 2007 Trust, and Danny Davis ("Plaintiffs") file this Fifth Amended Petition complaining of Damon Kade, Kay Rieck, Lars Degenhardt, Tom Hord, Furie Operating Alaska, LLC, Furie Petroleum Company, LLC, and Cornucopia Oil & Gas Company, LLC ("Defendants") and respectfully states as follows:

## I.
## DISCOVERY AND RELIEF SOUGHT

1.      In accordance with Rule 190 of the Texas Rules of Civil Procedure, discovery in this case is intended to be conducted under Level 3.

2.      Plaintiffs seek monetary relief over $1,000,000. *See* Tex. R. Civ. P. 47(c).

## II.
## JURSIDICTION AND VENUE

3.      This Court has subject matter jurisdiction because the amount in controversy exceeds the jurisdictional requirement of this Court and because none of the causes of action pled fall within the exclusive jurisdiction of any court of this state.

4.      Venue is proper in Harris County, Texas because the acts and occurrences giving rise to the various causes of action occurred in part in Harris County, Texas. Furthermore, one or more of the defendants reside in Harris County, Texas.

### III.
### PARTIES AND SERVICE OF CITATION

5.      Plaintiff Allen Lawrence Berry, Trustee of the Allen Lawrence Berry 2007 Trust's address is 5005 Riverway, Suite 440, Houston, Texas 77056.

6.      Plaintiff Allen Lawrence Berry is an individual whose business address is 5005 Riverway, Suite 440, Houston, Texas 77056.

7.      Plaintiff  Danny Davis's business address is 5005 Riverway, Suite 440, Houston, Texas 77056.

8.      Defendant, Damon Kade is an individual residing in Harris County, Texas who has made an appearance in this case.

9.      Defendant, Kay Rieck is an individual who may be served at his place of employment, Furie Operating Alaska, LLC, 100 Enterprise Avenue, League City, Texas or wherever he may be found.

10.      Defendant, Lars Degenhardt is an individual who was served by substituted service on October 24, 2016.

11.      Defendant, Tom Hord is an individual who was served by substituted service on October 24, 2016, and who has made an appearance.

12.       Defendant, Furie Operating Alaska, LLC, is a Texas LLC that has made an appearance in this case.

13.      Defendant, Cornucopia Oil & Gas Company, LLC, is a Texas LLC that has made an appearance in this case.

Certified Document Number: 76535337 - Page 2 of 17

14.     Defendant Furie Petroleum Company, LLC is a Texas LLC that may be served with process by serving its registered agent CT Corporation System at 1999 Bryan Street, Suite 900, Texas 75201. Furie Petroleum Company, LLC has made an appearance in this case.

## IV.
## FACTS

15.     Escopeta Oil, LLC ("Escopeta Oil") and Escopeta of Alaska, LLC, ("Escopeta Alaska") were originally owned by Allen Lawrence Berry ("Berry") and Danny Davis ("Davis").

16.     On October 22, 2010, Escopeta Oil and Taylor Minerals, LLC ("Taylor"), as Assignors, entered into a Lease Assignment and Participation Agreement ("Lease Assignment") with Escopeta Alaska, as Assignee, regarding leases in the Cook Inlet Basin ("Leases") in Alaska.  The following are the pertinent provisions of the Lease Assignment:

> 9.3     The parties acknowledge that under the current laws of the State of Alaska, certain expenses incurred in connection with the development of the KLU Leases may qualify to be refunded or reimbursed by the State of Alaska, HB 280 and the overall ACES Program or for credits against income taxes otherwise payable to the State of Alaska.  To the extent the parties are able to qualify for such tax credits, [Escopeta Oil] and Taylor hereby agree that all tax credits shall be monetized for the benefit of [Escopeta Alaska] as full and complete payment for the working interest costs of [Escopeta Oil] and Taylor for the drilling of the #1 KLU and subsequent wells in which [Escopeta Oil] and Taylor are working interest owners.

> 9.4     The parties acknowledge that under the current laws of the State of Alask, the wells drilled on all the Leases may qualify for a production royalty or a reduction in the royalty percentage paid to the State of Alaska.  To the extent the parties are successful in obtaining this royalty relief credit, the value or interest received pursuant to any such program on all leases will belong 79% to

[Escopeta Alaska] and 21% to [Escopeta Oil] (for itself and, as applicable, for the benefit of Taylor).

9.5 [Escopeta Oil] and Taylor will contribute 100% of their share and all right, title and interested in and to all funds due from SB 309, HB 280, and the Alaska ACES Program for the development of the KLU.  For this contribution, along with prior work in developing the KLU geology and exploration program, [Escopeta Oil] and Taylor will own a 21% working interest based on a 75% NRI in the KLU drilling and development program.  This working interest shall be free and clear of any and all additional costs and assessments and will include all drilling, completion, platform, pipeline and facility costs to bring oil and gas into production.  The 21% working interest will come into effect at the time [Escopeta Alaska] has recovered 100% of its total costs of drilling, completing, building pipelines, platforms, necessary facilities and placing the Kitchen Lights Unit on production.  [Escopeta Oil] and Taylor will pay their share of all operating expenses, workover and recompletion costs, in accordance with their respective working interest ownership, once [Escopeta Alaska] has recovered 100% of its total cost.

Under the Lease Agreement, Escopeta Oil was responsible for the administration and operation of the Leases.

17.     Pursuant to the Joint Operating Agreement entered into on October 21, 2010 between Escopeta Oil and Escopeta Alaska, Escopeta Oil was the operator and Escopeta Alaska and Taylor were non-operating working interest owners.  Pursuant to the terms of the Lease Agreement, Escopeta Alaska and Taylor assigned certain rights to Escopeta Oil and retained certain royalty interests and 25% of the working interest.  Escopeta Alaska, among other duties, agreed to fund 100% of the costs of drilling and development of the leases and in return, received assignment of 75% of the working interest.  The Lease Assignment and Joint Operating Agreement expressly states that each Agreement is binding upon and inures to the benefit of the successors and assigns of each party.

18.     After the Lease Assignment was entered, Davis and Berry assigned 100%
interest of Escopeta Oil and Escopeta Alaska to Furie Operating Alaska, LLC.  However,
Davis retained his interest in the Leases individually, and Berry attempted to transfer his
interest in the Leases to the Allen Lawrence Berry 2007 Trust.  On August 19, 2011,
Escopeta Alaska changed its name to become Defendant Cornucopia.   On September 21,
2011, Escopeta Oil changed its name became Defendant Furie.

19.     Pursuant to the Lease Assignment and a subsequent transfer of an
additional 1% to Cornucopia from Escopeta Oil, the current working interest in the
Leases is divided as follows:

| | |
|---|---|
| 80% | Cornucopia |
| 6.875% | Davis |
| 7.875% | Berry Trust |
| 5.25% | Taylor |

20.     Upon information and belief, Furie Operating is owned 100% by Furie
Petroleum Company, LLC ("Furie Petroleum"), and Furie Petroleum is owned 88% by
Cornucopia.   Additionally, upon information and belief, Cornucopia is also owned
wholly or partially by Deutsche Oel & Gas, AG ("Deutsche"), Deutsche is owned 100%
by Alecto, Ltd. ("Alecto"), and Alecto is owned 100% by Defendant Kay Rieck.
Deutsche is also a member of Furie Petroleum's management and owns 12% of
Cornucopia.

21.     Defendant Lars Degenhardt is President of Furie Operating and is an
officer or member of the board of directors of Deutsche, also known as German Oil &
Gas.  Defendant Damon Kade is the former President and Director of Furie Operating,

Certified Document Number: 76535337 - Page 5 of 17

the former President of Furie Petroleum, and was involved with other companies which were subsidiaries of Furie Operating, Furie Petroleum, and Cornucopia. Defendant Tom Hord is the Chief Operating Officer of Furie Petroleum and a Director of Furie Operating.

22.    Pursuant to a Joint Operating Agreement between Escopeta Oil (later Furie Operating) and Escopeta Alaska (later Cornucopia) executed on October 21, 2010, Furie Operating, through itself and the relationships with the other Defendants, was responsible for the administration and operation of the Leases. Defendants, in operating said interests, failed to properly administer said interests, failed to keep Plaintiffs properly advised of their interests, and failed to properly account for their interests.

23.    Without limitation, Defendants (1) failed to properly account for tax credits received by the state of Alaska under Section 9.3 of the Lease Assignment; (2) failed to properly account for discovery royalties under Section 9.4 of the Lease Assignment; and (3) charged improper and excessive operating costs for the Leases at issue. Further, Defendants improperly engaged in self-dealing, as shown from the intertwined business relationships between the majority interest owner of the lease assignment, Cornucopia, and the operator, Furie Operating, and the further ownership structure of the entities described herein.

24.    After the dates of the agreements, Defendants applied for and received tax credits from the State of Alaska through programs, such as ACES Program and State of Alaska HB 280, and, further, Defendants received an increase in the net revenue interest as a result of a reduction in the royalty percentage payable to the State of Alaska, as lessor. Defendants have failed and refused to properly account for any tax credits

received from the State of Alaska under Section 9.3 of the Lease Assignment. Further, Defendants failed to properly account for discovery or production royalty or reduction of same under Section 9.4 of the Lease Assignment; and Defendants have charged improper and excessive operating costs for the Leases at issue.

25.     Further, Defendants received a discovery royalty, production royalty or reduction in royalty pursuant to incentive plans adopted by the State of Alaska to encourage drilling and development of oil and gas properties on State owned lands. Defendants have failed to pay or account for this amount.

26.     Defendants, in operating said interests, failed to properly administer the working interest owners' interests in the Oil and Gas Lease and the Kitchen Lights Unit interest, failed to keep the parties properly advised as to financial and operational matters relating to the parties' interests and failed to properly account for all interests.

27.     Further, Defendants made misrepresentations to Plaintiffs regarding Plaintiffs' forthcoming receipt of the discovery royalties and full amount due from the tax benefits.

## V.
## CAUSES OF ACTION

### NEGLIGENCE / GROSS NEGLIGENCE

28.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

29.     Defendants owed a duty to Plaintiffs to conduct operations in a reasonably prudent manner. Defendants further had a duty to use proper accounting procedures and methods. Defendants breached their duties.

30.     Defendants knew or should have known and had actual and/or constructive notice that their improper actions reasonably caused Plaintiffs to suffer

Certified Document Number: 76535337 - Page 7 of 17

injury.  Defendants knew or should have known that they were not acting as a reasonably prudent operator.   Defendants continued to act, individually and in concert, which proximately caused the damage to and destruction of Plaintiffs' lawful contractual and equitable rights.   Further, Defendants' interference and negligent actions resulted in Plaintiffs being denied possession of, use of and access to its interests in the assigned rights and property interests.   Defendants' actions constitute negligence and/or gross negligence which proximately caused the injuries described by Plaintiffs herein.

31.   Defendants' negligent acts include, but are not limited to:

a)   Negligently and grossly negligently failed to provide accurate information regarding Plaintiffs' rights under the Lease Agreement and Joint Operating Agreement;

b)   Negligently and grossly negligently failed to make payment of amounts due to Plaintiffs and using same for Defendants' purposes;

c)   Negligently and grossly negligently failing to make and keep proper accounting of all amounts received and expended subject to the Lease Agreement and Joint Operating Agreement;

d)   Negligently and grossly negligently failing to pay to Plaintiffs all amounts properly due to them subject to the Lease Agreement and Joint Operating Agreement;

e)   Negligently and grossly negligently failing to maintain records of all amounts which would offset any payment toward Plaintiffs' interests, such as, their "Back-in right" subject to the Lease Agreement and Joint Operating Agreement;

f)   Failing to properly investigate each other Defendant's improper actions which harmed Plaintiffs and failure to advise Plaintiffs of said actions;

g)   Negligently and grossly negligently receiving and retaining monies properly belonging to Plaintiffs; and

h)   Negligently and grossly negligently failing to cease and desist in all improper activity in violation of Plaintiffs' rights.

Certified Document Number: 76535337 - Page 8 of 17

Certified Document Number: 76535337 - Page 9 of 17

32.     Further, the negligent, tortious and improper actions by Defendants by continuing to violate Plaintiffs' contracted and assigned rights are reckless, willful, and wanton disregard for Plaintiffs' known rights.

33.     Defendants consciously and/or deliberately engaged in recklessness, oppression, fraud, willfulness, wantonness and will malice through their operations and administration of Plaintiffs' interests, which proximately caused Plaintiffs' damages in the past and ongoing described herein.

## BREACH OF CONTRACT

34.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

35.     Plaintiffs entered into or have rights derived from the Lease Agreement and Joint Operating Agreement.

36.     Defendants failed to abide by the terms and conditions of the Lease Assignment and Joint Operating Agreement.

37.     Plaintiffs have performed their contractual obligations, and all conditions precedent have been met.

38.     Defendants have breach the Lease Assignment and Joint Operating Agreement by failing to abide by one or more of the terms and conditions.

39.     This breach has cause injury to Plaintiffs.

## BREACH OF FIDUCIARY DUTY/AIDING AND ABETTING

40.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

41.     Defendants acted as a fiduciary to Plaintiffs, owing Plaintiffs the duty of good faith and fair dealing and the duty to make full disclosure to Plaintiffs concerning matters affecting the Leases.

42.     Defendants have breached and/or aided and abetted the breach of fiduciary duties owed to Plaintiffs by knowingly and intentionally failing to fully disclose and account for material facts concerning the Leases.

43.     The breaches resulted in damages to Plaintiffs greatly exceeding the minimum jurisdictional limits of this Court.

44.     Defendant Cornucopia further has received funds beneficially owned by and payable to Plaintiffs and breached its legal, equitable and fiduciary duty to Plaintiffs as it received, but failed to account for and pay to Plaintiffs, production royalty or reduction of the production royalty percentage paid to the State of Alaska.

45.     Further, Defendants, acting in concert, sought and received "royalty relief credits" and have failed and refused to account for or pay Plaintiffs these amounts.

<div align="center"><strong>IMPROPER ADMINISTRATION AND ACCOUNTING</strong></div>

46.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

47.     Defendants have breached their duties to Plaintiffs through improper administration.  Defendants have a duty to properly account, bill, and pay the appropriate amounts based on Plaintiffs' interest.

48.     Defendants have failed in this duty causing Plaintiffs' damages greatly exceeding the minimum jurisdictional limits of this Court.

49.     Plaintiffs sue for an equitable accounting related to all joint interest billings, and monies owed to plaintiff.

<div align="center"><strong>CONVERSION</strong></div>

50.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

Certified Document Number: 76535337 - Page 10 of 17

51.     Pursuant to the Lease Agreement and Joint Operating Agreement, Plaintiffs are entitled to a percentage of royalties and working interest based upon oil and gas removed from the property subject to the Leases at issue.

52.     Defendants have established commercial production and sold substantial quantities of oil and gas from the Leases but have failed to pay to Plaintiffs their share of such proceeds.   Accordingly, Defendants have improperly converted those rights and monies and have refused to return same to Plaintiffs.   Further, due to Defendants' knowledge of Plaintiffs' rights and their intentional disregard, malice, and gross negligence for Plaintiffs' rights, Plaintiffs' property and the injury which would result, Plaintiffs seek exemplary damages from Defendants.

<div align="center">CONSPIRACY</div>

53.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

54.     Defendants, with knowledge of Plaintiffs' rights, conspired with concerted action and/or aided and abetted each other in the breaches of contract and fiduciary duties owed to Plaintiffs.   Plaintiffs by knowingly and intentionally failing to fully disclose and account for material facts concerning the Leases. The breaches caused and resulted in damages to Plaintiffs.

55.     Defendants, wrongfully breached, intentionally, negligently and grossly negligently acted in concert to prevent Plaintiffs from receiving the benefits of their bargain and their rights set forth under the Lease Agreement and Joint Operating Agreement.   Each of these actions intentionally, negligently and grossly negligently succeeded in breach of the Lease Agreement and Joint Operating Agreement and caused the property interests and rights owned by Plaintiffs to be impaired and damaged.

Certified Document Number: 76535337 - Page 11 of 17

56.     Defendants caused injury to Plaintiffs as set forth herein.

57.     Further, Defendants operated in concert throughout this matter and have advanced a common scheme to engage in self-dealing through a myriad of interlocking domestic and foreign entities and to deceive Plaintiffs as to the disposition of property, to conceal amounts received by Defendants, to prevent Plaintiffs from becoming aware of the amounts Defendants received, to conceal and convert amounts expended through self-dealing and other actions set forth herein.

### UNJUST ENRICHMENT

58.     Defendants, through their improper actions, have retained property and property interests which rightfully belong to Plaintiffs.  Retention of such property is unconscionable.

### FRAUD

59.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

60.     Defendants fraudulently represented to Plaintiffs that receipt of the discovery royalties and full amount due from the tax benefits was forthcoming.  These representations were material.

61.     Defendants representations were false, and Defendants knew the representations were false when they were made.

62.     Defendants had no intention of following through on these misrepresentations.

63.     Defendants fraudulent conduct was willful, wanton, and malicious.

64.     Defendants intended Plaintiffs to rely on their representations and conduct, and Plaintiffs did in fact rely on the representations.

65.     Plaintiffs have been injured by Defendants' fraudulent conduct and are entitled to recover damages for that injury.

## VI.
## DAMAGES

66.     As a direct and proximate result of the incidents made the basis of this lawsuit and improper actions and failures to act by Defendants, Plaintiffs suffered serious damage.  Each action complained of herein is a direct and proximate cause of Plaintiffs' damages set forth herein.

67.     Plaintiffs incurred the following damages, which are of a continuing nature, due to Defendants' actions:

    a) Any and all amounts not paid to Plaintiffs pursuant to their rights under the Lease Assignment and Joint Operating Agreement.

    b) All property rights sold and assigned by Defendants, monies paid to Defendants, and the losses incurred by Plaintiffs as a result of same.

    c) Interest, prejudgment and post judgment; and

    d) Any and all other damages available via statute, common law and equity.

68.     Because of these injuries and damages, Plaintiffs are entitled to recover compensatory damages of an amount which is within the jurisdictional requirements of this Honorable Court.   Plaintiffs also seek punitive and/or exemplary damages to the extent allowed by law.

69.     Because of the conduct of Defendants, including breach of the agreements between the parties, Plaintiffs have been compelled to engage the services of an attorney to prosecute this action.   Plaintiffs are entitled to recover a reasonable sum for the necessary services to the maximum extent allowed by law, including all expenses and

Certified Document Number: 76535337 - Page 13 of 17

court costs, of the attorney in the preparation and trial of this action and for appeals to the Court of Appeals or the Texas Supreme Court.

## VII.
## CONDITIONS PRECEDENT

70.     All conditions precedent to bringing the above causes of action have been met or occurred.

## VIII.
## NO ELECTION OF REMEDIES

71.     The foregoing facts and theories are pled cumulatively and alternatively, with no election or waiver of rights or remedies.

## IX.
## TRIAL BY JURY

72.     Plaintiffs request trial by jury and have submitted the appropriate jury fee.

## X.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Allen Lawrence Berry, Individually and as Trustee of the Allen Lawrence Berry 2007 Trust, and Danny Davis pray that they take judgment against Defendants and recover:

a.     All the actual damages and special damages caused by the wrongful conduct complained of herein;

b.     Just and reasonable attorney's fees;

c.     Pre- and post-judgment interest;

d.     Costs of suit; and

e.     Other such relief at law and equity for which it may be justly entitled.

Certified Document Number: 76535337 - Page 14 of 17

Respectfully submitted,

**BUTCH BOYD LAW FIRM**

_____
ERNEST W. BOYD
State Bar No. 00783694
butchboyd@butchboydlawfirm.com
JEREMY R. STONE
State Bar No. 24013577
jeremystone@butchboydlawfirm.com
CHERYL L. TURNER
State Bar No. 24076279
cherylturner@butchboydlawfirm.com
2905 Sackett Street
Houston, TX 77098
Phone:  (713) 589-8477
Fax:  (713) 589-8563

**ATTORNEYS FOR PLAINTIFFS**

Certified Document Number: 76535337 - Page 15 of 17

## <u>CERTIFICATE OF SERVICE</u>

  This is to certify that a true and complete copy of this document was served on all

counsel of record by method indicated below on the 1st day of September, 2017:

Mr. J. Marcus "Marc" Hill
Hill & Hill, P.C. Law Firm
1770 St. James Place, Ste. 115
Houston, TX 77056
marc@hillpclaw.com
Facsimile (713) 688-2817
***Attorney for Defendant, Lars Degenhardt***

Mr. John Scott Black
Mr. Richard D. Daly
Ms. Melissa Waden Wray
Daly & Black, P.C.
2211 Norfolk Street, Ste. 800
Houston, TX 77098
jblack@dalyblack.com
rdaly@dalyblack.com
mwray@dalyblack.com
Facsimile: (713) 655-1587
***Attorneys for Defendant Damon Kade***

Mr. Chris Reynolds
Mr. Christopher M. Hogan
1100 Louisiana Street, Ste. 3500
Houston, TX 77002
creynolds@reynoldsfrizzell.com
chogan@reynoldsfrizzell.com
Facsimile: (713) 785-7250
***Attorneys for Defendants, Furie Operating Alaska, LLC and
Cornucopia Oil & Gas Company, LLC***

Robert G. Taylor, III
Law Office of Robert G. Taylor, III
Texas Bar Number 19721100
4119 Montrose, Suite 550
Houston, Texas 77006
Rt3atty@gmail.com
Tel. No. (713) 654-7799
Facsimile: (713) 654-7814
***Attorney for Intervenors Taylor Minerals, LLC and GIZA HOLDINGS, LLC***

_____
ERNEST ("BUTCH") BOYD

Certified Document Number: 76535337 - Page 17 of 17



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 5, 2019

Certified Document Number:       76535337 Total Pages:  17

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

# EXHIBIT B -18

10/13/2017 3:19 PM
Chris Daniel - District Clerk Harris County
Envelope No. 20062327
By: JIMMY RODRIGUEZ
Filed: 10/13/2017 3:19 PM

Cause No: 2016-49928

| | | |
|---|---|---|
| ALLEN LAWRENCE BERRY, | § | IN THE DISTRICT COURT OF |
| INDIVIDUALLY AND AS TRUSTEE | § | |
| OF THE ALLEN LAWRENCE BERRY | § | |
| TRUST, AND DANNY DAVIS | § | |
| | § | HARRIS COUNTY, TEXAS |
| Plaintiffs, | § | |
| v. | § | |
| | § | |
| DAMON KADE, et al., | § | 125th JUDICIAL DISTRICT |
| | § | |
| Defendants. | § | |

## SECOND AMENDED ANSWER AND COUNTERCLAIMS

Defendants/Counter-Plaintiffs FURIE OPERATING ALASKA, LLC, ("FOA"), FURIE

PETROLEUM COMPANY, LLC, (FPC"), CORNUCOPIA OIL & GAS COMPANY, LLC,

("Cornucopia") (collectively, the "Furie Parties") file this Second Amended Answer and

Counterclaims and show as follows:

## ANSWER

1.    The Furie Parties generally deny each and every, all and singular, the allegations

made in Plaintiffs' Fifth Amended Original Petition and the Intervenors' Petition in Intervention

and demand proof thereof in accordance with the laws and constitution of the State of Texas.

## AFFIRMATIVE DEFENSES

2.    Waiver, ratification, estoppel, unclean hands and prior material breach bar the

claims asserted by Plaintiffs and the Intervenors.

3.    The exculpatory clause of the Joint Operating Agreement to which the parties are

bound, and under which FOA is the designated "Operator," likewise bars the claims.

## COUNTERCLAIMS

4.     Now acting as Counter-Plaintiffs, the Furie Parties complain of Plaintiffs Danny Davis and Allen Lawrence Berry, and Intervenor Taylor Minerals, LLC, (collectively, the "Counter-Defendants") and for cause of action show the following:

## PARTIES

5.     The Furie Parties are limited liability companies that have already appeared. Cornucopia was formerly known as Escopeta Oil of Alaska, LLC.  FOA was formerly known as Escopeta Oil Company, LLC.

6.     Danny Davis ("Davis") is an individual who resides in Harris County, Texas.  He has appeared and he will be served by service upon his attorney of record in accordance with Texas Rule of Civil Procedure 21a.

7.     Allen Lawrence Berry ("Berry") is an individual who resides in Harris County, Texas.  He has appeared and he will be served by service upon his attorney of record in accordance with Texas Rule of Civil Procedure 21a.

8.     Taylor Minerals, LLC, ("Taylor") is a Texas limited liability company that has appeared as an intervenor.  It will be served by service upon its attorney of record in accordance with Texas Rule of Civil Procedure21a.

## FACTUAL BACKGROUND

9.     These counterclaims arise out of the transactions and occurrences made the basis of Plaintiffs' Fifth Amended Original Petition and the Petition in Intervention.  None of these

Certified Document Number: 77011926 - Page 2 of 7

claims are based on, or arise out of, actions taken by Berry, Davis, or Taylor in their capacities as managers or members of Cornucopia or FOA.

10.     Pursuant to a "Lease Acquisition and Participation Agreement" dated October 22, 2010, (the "LAPA"), Escopeta Oil Company, LLC (n/k/a FOA), and Taylor, purported to assign to Escopeta Oil of Alaska, LLC (n/k/a Cornucopia), a 79% interest in various oil and gas leases (the "Leases") in which they owned interests.  Pursuant to that certain letter agreement dated June 29, 2011, By, between and among Escopeta Oil Company, LLC (n/k/a FOA), Escopeta Oil of Alaska, LLC (n/k/a Cornucopia), Davis (in his individual capacity) and Berry (in his individual capacity), both Berry and Davis agreed that they and their successors would be bound by the terms and conditions of the LAPA.  As a consequence, all of the Counter-Defendants – Berry, Davis, and Taylor – are bound by the terms and conditions of the LAPA.

11.     In the LAPA, Berry, Davis, and Taylor claimed falsely that the $20,800,000 to be paid as consideration for the transfer of the 79% interest in the Leases represented "reimbursement" for "acquisition and ownership of the Leases."   A "reimbursement," is, by definition, repayment for expenses incurred.  Subsequent to the time that the "reimbursement" required by the LAPA was paid, the Furie Parties learned that Berry, Davis, Taylor, and Escopeta Oil Co., LLC, had not incurred (either individually or collectively) anything close to $20,800,000 in reimbursable expenses in connection with the "acquisition and ownership of the Leases." Moreover, the Furie Parties allege that Berry, Taylor, and Davis caused the money received by Escopeta Oil Co., LLC, to be paid to themselves.  Accordingly, Davis, Berry, and Taylor have been unjustly and unfairly enriched by virtue of their misrepresentations in the LAPA.

12.     In addition, the agreement of the Furie Parties to assume an obligation to "carry" the working interests of Berry, Taylor, and Davis was made in reliance on, among other things,

Certified Document Number: 77011926 - Page 3 of 7

the claim that Taylor and Escopeta Oil Co. LLC, had reimbursable expenses of more than $20 million in the "acquisition and ownership of the Leases," a claim (among others) that proved to be both false and misleading.  Berry, Taylor, and Davis have been unjustly enriched by virtue of the fraudulently procured agreement to carry their interests.

13.     In connection with the LAPA and otherwise, Davis made false and misleading statements, and failed to disclose facts that they were under a duty to disclose, with respect to violations of the Jones Act in connection with transportation of a drilling rig to the Cook Inlet of Alaska.  The Furie Parties suffered damages, and Berry, Davis, and Taylor were unjustly enriched by virtue of Davis's misrepresentations and omissions.

14.     Finally, in Section 5.1.1 of the LAPA, Berry, Davis, and Taylor promised to furnish to Cornucopia copies of various technical information, including seismic data.  They have breached their obligations to do so.

15.     The Furie Parties have presented their claims in accordance with Chapter 38 of the Texas Civil Practices and Remedies Code.  In addition, they have retained the undersigned attorneys and have agreed to pay the reasonable and necessary attorneys' fees.  Thus, the Furie Parties seek to recover their reasonable attorneys' and experts' fees pursuant to Section 12.6 of the LAPA.

## CAUSES OF ACTION

16.     <u>Real Estate Fraud</u>: Berry, Taylor, and Davis, with actual awareness of the falsity of their false representations, violated section 27.01 of the Texas Business and Commerce Code by engaging in fraud in connection with a real estate transaction, and each has benefited from the false

4

representations and omissions in connection with the transaction.  They are therefore liable in accordance with the statute for the damages suffered by the Furie Parties.

17.  <u>Unjust Enrichment/Disgorgement</u>: Berry, Taylor, and Davis have been unjustly enriched by virtue of the sums paid in connection with the LAPA and the "carry" that each has been provided.  Thus, the Furie Parties seek disgorgement of all of their ill-gotten gains, including, but not limited to, the money paid to reimburse them and the value, to date, of the "carry."

18.  <u>Breach of Contract</u>: Berry, Davis, and Taylor have breached their obligations under the LAPA by, *inter alia*, failing to deliver the seismic data, resulting in substantial damages to the Furie Parties.

## **Rule 47 Statement**

19.  Under Texas Rule of Civil Procedure 47, the Furie Parties seek monetary relief in excess of $1,000,000 on their counterclaims.

## **Request for Disclosure**

20.  Under Texas Rule of Civil Procedure 194, the Furie Parties requests that Counter-Defendants disclose, within 30 days after service of this Request, the information or material described in Texas Rule of Civil Procedure 194.2(a)-(i)

## **Conditions Precedent**

21.  The Furie Parties have met all conditions precedent to filing this suit, or they have otherwise been waived.

WHEREFORE, PREMISES CONSIDERED, the Furie Parties pray that Plaintiffs and Intervenors take nothing by way of their claims and that they go hence from this Court, without

day.  The Furie Parties further pray that upon final trial, they have judgment against Berry, Davis, and Taylor as follows:

1.    For their actual damages;

2.    For exemplary damages;

3.    For disgorgement;

4.    For reasonable and necessary attorneys' and expert witness fees;

5.    For costs;

6.    For pre- and post-judgment interest at the maximum lawful rate; and

7.    For such other and further relief to which they (or any one or more of them) show entitlement.

Respectfully submitted,

**REYNOLDS FRIZZELL LLP**

By:    _/s/ Chris Reynolds_____
        Chris Reynolds
        State Bar No:  16801900
        Christopher M. Hogan
        State Bar No:  24065434

1100 Louisiana Street, Suite 3500
Houston, TX 77002
Phone: (713) 485-7200
Fax:    (713) 485-7250
creynolds@reynoldsfrizzell.com
chogan@reynoldsfrizzell.com

**ATTORNEYS FOR DEFENDANTS/ COUNTER-PLAINTIFFS FURIE OPERATING ALASKA, LLC, FURIE PETROLEUM COMPANY, LLC, AND CORNUCOPIA OIL & GAS COMPANY, LLC**

Certified Document Number: 77011926 - Page 6 of 7

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this the 13th day of October 2017, a true and correct copy of the foregoing instrument has been served through the court's electronic filing service system upon all known counsel of record in accordance with the requirements of the Texas Rules of Civil Procedure.

_/s/ Chris Reynolds_____
Chris Reynolds



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   November 5, 2019


Certified Document Number:        77011926 Total Pages:  7


Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS


**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**

# EXHIBIT B -19

10/31/2017 3:52 PM
Chris Daniel - District Clerk Harris County
Envelope No. 20423458
By: Falon Boehm
Filed: 10/31/2017 3:52 PM

Certified Document Number: 77246890 - Page 1 of 17

**CAUSE NO. 2016-49928**

| | | |
|---|---|---|
| **ALLEN LAWRENCE BERRY** | § | **IN THE DISTRICT COURT OF** |
| **and DANNY DAVIS** | § | |
| | § | |
| **v.** | § | **HARRIS COUNTY, T E X A S** |
| | § | |
| **DAMON KADE, et al.** | § | **125th JUDICIAL DISTRICT** |

## PLAINTIFFS' SIXTH AMENDED PETITION

Allen Lawrence Berry and Danny Davis ("Plaintiffs") file this Sixth Amended Petition complaining of Damon Kade, Kay Rieck, Lars Degenhardt, Tom Hord, Furie Operating Alaska, LLC, Furie Petroleum Company, LLC, and Cornucopia Oil & Gas Company, LLC ("Defendants") and respectfully states as follows:

## I.
## DISCOVERY AND RELIEF SOUGHT

1.     In accordance with Rule 190 of the Texas Rules of Civil Procedure, discovery in this case is intended to be conducted under Level 3.

2.     Plaintiffs seek monetary relief over $1,000,000.  *See* Tex. R. Civ. P. 47(c).

## II.
## JURSIDICTION AND VENUE

3.     This Court has subject matter jurisdiction because the amount in controversy exceeds the jurisdictional requirement of this Court and because none of the causes of action pled fall within the exclusive jurisdiction of any court of this state.

4.     Venue is proper in Harris County, Texas because the acts and occurrences giving rise to the various causes of action occurred in part in Harris County, Texas. Furthermore, one or more of the defendants reside in Harris County, Texas.

**III.**
**PARTIES AND SERVICE OF CITATION**

5.      Plaintiff is Allen Lawrence Berry, whose address is 5005 Riverway, Suite 440, Houston, Texas 77056.

6.      Plaintiff is Danny Davis, whose address is 5005 Riverway, Suite 440, Houston, Texas 77056.

7.      Defendant, Damon Kade is an individual residing in Harris County, Texas who has made an appearance in this case.

8.      Defendant, Kay Rieck is an individual who may be served at his place of employment, Furie Operating Alaska, LLC, 100 Enterprise Avenue, League City, Texas or wherever he may be found.

9.      Defendant, Lars Degenhardt is an individual who was served by substituted service on October 24, 2016.

10.     Defendant, Tom Hord is an individual who was served by substituted service on October 24, 2016, and who has made an appearance.

11.      Defendant, Furie Operating Alaska, LLC, is a Texas LLC that has made an appearance in this case.

12.     Defendant, Cornucopia Oil & Gas Company, LLC, is a Texas LLC that has made an appearance in this case.

13.     Defendant Furie Petroleum Company, LLC is a Texas LLC that may be served with process by serving its registered agent CT Corporation System at 1999 Bryan Street, Suite 900, Texas 75201. Furie Petroleum Company, LLC has made an appearance in this case.

Certified Document Number: 77246890 - Page 2 of 17

# IV.
# FACTS

14.     Escopeta Oil, LLC ("Escopeta Oil") and Escopeta of Alaska, LLC, ("Escopeta Alaska") were originally owned by Allen Lawrence Berry ("Berry") and Danny Davis ("Davis").

15.     On October 22, 2010, Escopeta Oil and Taylor Minerals, LLC ("Taylor"), as Assignors, entered into a Lease Assignment and Participation Agreement ("Lease Assignment") with Escopeta Alaska, as Assignee, regarding leases in the Cook Inlet Basin ("Leases") in Alaska.  The following are the pertinent provisions of the Lease Assignment:

9.3     The parties acknowledge that under the current laws of the State of Alaska, certain expenses incurred in connection with the development of the KLU Leases may qualify to be refunded or reimbursed by the State of Alaska, HB 280 and the overall ACES Program or for credits against income taxes otherwise payable to the State of Alaska.  To the extent the parties are able to qualify for such tax credits, [Escopeta Oil] and Taylor hereby agree that all tax credits shall be monetized for the benefit of [Escopeta Alaska] as full and complete payment for the working interest costs of [Escopeta Oil] and Taylor for the drilling of the #1 KLU and subsequent wells in which [Escopeta Oil] and Taylor are working interest owners.

9.4     The parties acknowledge that under the current laws of the State of Alask, the wells drilled on all the Leases may qualify for a production royalty or a reduction in the royalty percentage paid to the State of Alaska.  To the extent the parties are successful in obtaining this royalty relief credit, the value or interest received pursuant to any such program on all leases will belong 79% to [Escopeta Alaska] and 21% to [Escopeta Oil] (for itself and, as applicable, for the benefit of Taylor).

9.5     [Escopeta Oil] and Taylor will contribute 100% of their share and all right, title and interested in and to all funds due from SB 309, HB 280, and the Alaska ACES Program for the development of the KLU.  For this contribution, along with prior work in developing the KLU geology and exploration program, [Escopeta Oil] and

Certified Document Number: 77246890 - Page 3 of 17

3

> Taylor will own a 21% working interest based on a 75% NRI in the KLU drilling and development program. This working interest shall be free and clear of any and all additional costs and assessments and will include all drilling, completion, platform, pipeline and facility costs to bring oil and gas into production. The 21% working interest will come into effect at the time [Escopeta Alaska] has recovered 100% of its total costs of drilling, completing, building pipelines, platforms, necessary facilities and placing the Kitchen Lights Unit on production. [Escopeta Oil] and Taylor will pay their share of all operating expenses, workover and recompletion costs, in accordance with their respective working interest ownership, once [Escopeta Alaska] has recovered 100% of its total cost.

Under the Lease Agreement, Escopeta Oil was responsible for the administration and operation of the Leases.

16.    Pursuant to the Joint Operating Agreement entered into on October 21, 2010 between Escopeta Oil and Escopeta Alaska, Escopeta Oil was the operator and Escopeta Alaska and Taylor were non-operating working interest owners. Pursuant to the terms of the Lease Agreement, Escopeta Alaska and Taylor assigned certain rights to Escopeta Oil and retained certain royalty interests and 25% of the working interest. Escopeta Alaska, among other duties, agreed to fund 100% of the costs of drilling and development of the leases and in return, received assignment of 75% of the working interest. The Lease Assignment and Joint Operating Agreement expressly states that each Agreement is binding upon and inures to the benefit of the successors and assigns of each party.

17.    After the Lease Assignment was entered, Davis and Berry assigned 100% interest of Escopeta Oil and Escopeta Alaska to Furie Operating Alaska, LLC. However, both Davis and Berry retained their interests in the Leases individually. On August 19,

2011, Escopeta Alaska changed its name to become Defendant Cornucopia.    On September 21, 2011, Escopeta Oil changed its name became Defendant Furie.

18.    Pursuant to the Lease Assignment and a subsequent transfer of an additional 1% to Cornucopia from Escopeta Oil, the current working interest in the Leases is divided as follows:

| | |
|---|---|
| 80% | Cornucopia |
| 6.875% | Davis |
| 7.875% | Berry |
| 5.25% | Taylor |

19.    Upon information and belief, Furie Operating is owned 100% by Furie Petroleum Company, LLC ("Furie Petroleum"), and Furie Petroleum is owned 88% by Cornucopia.    Additionally, upon information and belief, Cornucopia is also owned wholly or partially by Deutsche Oel & Gas, AG ("Deutsche"), Deutsche is owned 100% by Alecto, Ltd. ("Alecto"), and Alecto is owned 100% by Defendant Kay Rieck. Deutsche is also a member of Furie Petroleum's management and owns 12% of Cornucopia.

20.    Defendant Lars Degenhardt is President of Furie Operating and is an officer or member of the board of directors of Deutsche, also known as German Oil & Gas.  Defendant Damon Kade is the former President and Director of Furie Operating, the former President of Furie Petroleum, and was involved with other companies which were subsidiaries of Furie Operating, Furie Petroleum, and Cornucopia.  Defendant Tom Hord is the Chief Operating Officer of Furie Petroleum and a Director of Furie Operating.

Certified Document Number: 77246890 - Page 5 of 17

21.     Pursuant to a Joint Operating Agreement between Escopeta Oil (later Furie Operating) and Escopeta Alaska (later Cornucopia) executed on October 21, 2010, Furie Operating, through itself and the relationships with the other Defendants, was responsible for the administration and operation of the Leases.  Defendants, in operating said interests, failed to properly administer said interests, failed to keep Plaintiffs properly advised of their interests, and failed to properly account for their interests.

22.     Without limitation, Defendants (1) failed to properly account for tax credits received by the state of Alaska under Section 9.3 of the Lease Assignment; (2) failed to properly account for discovery royalties under Section 9.4 of the Lease Assignment; and (3) charged improper and excessive operating costs for the Leases at issue. Further, Defendants improperly engaged in self-dealing, as shown from the intertwined business relationships between the majority interest owner of the lease assignment, Cornucopia, and the operator, Furie Operating, and the further ownership structure of the entities described herein.

23.     After the dates of the agreements, Defendants applied for and received tax credits from the State of Alaska through programs, such as ACES Program and State of Alaska HB 280, and, further, Defendants received an increase in the net revenue interest as a result of a reduction in the royalty percentage payable to the State of Alaska, as lessor.  Defendants have failed and refused to properly account for any tax credits received from the State of Alaska under Section 9.3 of the Lease Assignment.  Further, Defendants failed to properly account for discovery or production royalty or reduction of same under Section 9.4 of the Lease Assignment; and Defendants have charged improper and excessive operating costs for the Leases at issue.

Certified Document Number: 77246890 - Page 6 of 17

24.     Further, Defendants received a discovery royalty, production royalty or reduction in royalty pursuant to incentive plans adopted by the State of Alaska to encourage drilling and development of oil and gas properties on State owned lands. Defendants have failed to pay or account for this amount.

25.     Defendants, in operating said interests, failed to properly administer the working interest owners' interests in the Oil and Gas Lease and the Kitchen Lights Unit interest, failed to keep the parties properly advised as to financial and operational matters relating to the parties' interests and failed to properly account for all interests.

26.     Further, Defendants made misrepresentations to Plaintiffs regarding Plaintiffs' forthcoming receipt of the discovery royalties and full amount due from the tax benefits.

<div align="center">

**V.**
**CAUSES OF ACTION**

**NEGLIGENCE / GROSS NEGLIGENCE**

</div>

27.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

28.     Defendants owed a duty to Plaintiffs to conduct operations in a reasonably prudent manner.  Defendants further had a duty to use proper accounting procedures and methods.  Defendants breached their duties.

29.     Defendants knew or should have known and had actual and/or constructive notice that their improper actions reasonably caused Plaintiffs to suffer injury.  Defendants knew or should have known that they were not acting as a reasonably prudent operator.   Defendants continued to act, individually and in concert, which proximately caused the damage to and destruction of Plaintiffs' lawful contractual and equitable rights.   Further, Defendants' interference and negligent actions resulted in

Certified Document Number: 77246890 - Page 7 of 17

Plaintiffs being denied possession of, use of and access to its interests in the assigned rights and property interests.  Defendants' actions constitute negligence and/or gross negligence which proximately caused the injuries described by Plaintiffs herein.

30.     Defendants' negligent acts include, but are not limited to:

a)     Negligently and grossly negligently failed to provide accurate information regarding Plaintiffs' rights under the Lease Agreement and Joint Operating Agreement;

b)     Negligently and grossly negligently failed to make payment of amounts due to Plaintiffs and using same for Defendants' purposes;

c)     Negligently and grossly negligently failing to make and keep proper accounting of all amounts received and expended subject to the Lease Agreement and Joint Operating Agreement;

d)     Negligently and grossly negligently failing to pay to Plaintiffs all amounts properly due to them subject to the Lease Agreement and Joint Operating Agreement;

e)     Negligently and grossly negligently failing to maintain records of all amounts which would offset any payment toward Plaintiffs' interests, such as, their "Back-in right" subject to the Lease Agreement and Joint Operating Agreement;

f)     Failing to properly investigate each other Defendant's improper actions which harmed Plaintiffs and failure to advise Plaintiffs of said actions;

g)     Negligently and grossly negligently receiving and retaining monies properly belonging to Plaintiffs; and

h)     Negligently and grossly negligently failing to cease and desist in all improper activity in violation of Plaintiffs' rights.

31.     Further, the negligent, tortious and improper actions by Defendants by continuing to violate Plaintiffs' contracted and assigned rights are reckless, willful, and wanton disregard for Plaintiffs' known rights.

32.     Defendants consciously and/or deliberately engaged in recklessness, oppression, fraud, willfulness, wantonness and will malice through their operations and administration of Plaintiffs' interests, which proximately caused Plaintiffs' damages in the past and ongoing described herein.

### BREACH OF CONTRACT

33.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

34.     Plaintiffs entered into or have rights derived from the Lease Agreement and Joint Operating Agreement.

35.     Defendants failed to abide by the terms and conditions of the Lease Assignment and Joint Operating Agreement.

36.     Plaintiffs have performed their contractual obligations, and all conditions precedent have been met.

37.     Defendants have breach the Lease Assignment and Joint Operating Agreement by failing to abide by one or more of the terms and conditions.

38.     This breach has cause injury to Plaintiffs.

### BREACH OF FIDUCIARY DUTY/AIDING AND ABETTING

39.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

40.     Defendants acted as a fiduciary to Plaintiffs, owing Plaintiffs the duty of good faith and fair dealing and the duty to make full disclosure to Plaintiffs concerning matters affecting the Leases.

41.     Defendants have breached and/or aided and abetted the breach of fiduciary duties owed to Plaintiffs by knowingly and intentionally failing to fully disclose and account for material facts concerning the Leases.

Certified Document Number: 77246890 - Page 9 of 17

42.     The breaches resulted in damages to Plaintiffs greatly exceeding the minimum jurisdictional limits of this Court.

43.     Defendant Cornucopia further has received funds beneficially owned by and payable to Plaintiffs and breached its legal, equitable and fiduciary duty to Plaintiffs as it received, but failed to account for and pay to Plaintiffs, production royalty or reduction of the production royalty percentage paid to the State of Alaska.

44.     Further, Defendants, acting in concert, sought and received "royalty relief credits" and have failed and refused to account for or pay Plaintiffs these amounts.

<div align="center">

**IMPROPER ADMINISTRATION AND ACCOUNTING**

</div>

45.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

46.     Defendants have breached their duties to Plaintiffs through improper administration.  Defendants have a duty to properly account, bill, and pay the appropriate amounts based on Plaintiffs' interest.

47.     Defendants have failed in this duty causing Plaintiffs' damages greatly exceeding the minimum jurisdictional limits of this Court.

48.     Plaintiffs sue for an equitable accounting related to all joint interest billings, and monies owed to plaintiff.

<div align="center">

**CONVERSION**

</div>

49.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

50.     Pursuant to the Lease Agreement and Joint Operating Agreement, Plaintiffs are entitled to a percentage of royalties and working interest based upon oil and gas removed from the property subject to the Leases at issue.

Certified Document Number: 77246890 - Page 10 of 17

Certified Document Number: 77246890 - Page 11 of 17

51.     Defendants have established commercial production and sold substantial quantities of oil and gas from the Leases but have failed to pay to Plaintiffs their share of such proceeds.   Accordingly, Defendants have improperly converted those rights and monies and have refused to return same to Plaintiffs.   Further, due to Defendants' knowledge of Plaintiffs' rights and their intentional disregard, malice, and gross negligence for Plaintiffs' rights, Plaintiffs' property and the injury which would result, Plaintiffs seek exemplary damages from Defendants.

<div align="center">CONSPIRACY</div>

52.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

53.     Defendants, with knowledge of Plaintiffs' rights, conspired with concerted action and/or aided and abetted each other in the breaches of contract and fiduciary duties owed to Plaintiffs.   Plaintiffs by knowingly and intentionally failing to fully disclose and account for material facts concerning the Leases. The breaches caused and resulted in damages to Plaintiffs.

54.     Defendants, wrongfully breached, intentionally, negligently and grossly negligently acted in concert to prevent Plaintiffs from receiving the benefits of their bargain and their rights set forth under the Lease Agreement and Joint Operating Agreement.   Each of these actions intentionally, negligently and grossly negligently succeeded in breach of the Lease Agreement and Joint Operating Agreement and caused the property interests and rights owned by Plaintiffs to be impaired and damaged.

55.     Defendants caused injury to Plaintiffs as set forth herein.

56.     Further, Defendants operated in concert throughout this matter and have advanced a common scheme to engage in self-dealing through a myriad of interlocking

domestic and foreign entities and to deceive Plaintiffs as to the disposition of property, to conceal amounts received by Defendants, to prevent Plaintiffs from becoming aware of the amounts Defendants received, to conceal and convert amounts expended through self-dealing and other actions set forth herein.

<div align="center">

**UNJUST ENRICHMENT**

</div>

57.     Defendants, through their improper actions, have retained property and property interests which rightfully belong to Plaintiffs.   Retention of such property is unconscionable.

<div align="center">

**FRAUD**

</div>

58.     Plaintiffs incorporate all previous paragraphs as if fully restated herein.

59.     Defendants fraudulently represented to Plaintiffs that receipt of the discovery royalties and full amount due from the tax benefits was forthcoming.   These representations were material.

60.     Defendants representations were false, and Defendants knew the representations were false when they were made.

61.     Defendants had no intention of following through on these misrepresentations.

62.     Defendants fraudulent conduct was willful, wanton, and malicious.

63.     Defendants intended Plaintiffs to rely on their representations and conduct, and Plaintiffs did in fact rely on the representations.

64.     Plaintiffs have been injured by Defendants' fraudulent conduct and are entitled to recover damages for that injury.

# VI.
# <u>DAMAGES</u>

65.     As a direct and proximate result of the incidents made the basis of this lawsuit and improper actions and failures to act by Defendants, Plaintiffs suffered serious damage.  Each action complained of herein is a direct and proximate cause of Plaintiffs' damages set forth herein.

66.     Plaintiffs incurred the following damages, which are of a continuing nature, due to Defendants' actions:

     a)   Any and all amounts not paid to Plaintiffs pursuant to their rights under the Lease Assignment and Joint Operating Agreement.

     b)   All property rights sold and assigned by Defendants, monies paid to Defendants, and the losses incurred by Plaintiffs as a result of same.

     c)   Interest, prejudgment and post judgment; and

     d)   Any and all other damages available via statute, common law and equity.

67.     Because of these injuries and damages, Plaintiffs are entitled to recover compensatory damages of an amount which is within the jurisdictional requirements of this Honorable Court.   Plaintiffs also seek punitive and/or exemplary damages to the extent allowed by law.

68.     Because of the conduct of Defendants, including breach of the agreements between the parties, Plaintiffs have been compelled to engage the services of an attorney to prosecute this action.   Plaintiffs are entitled to recover a reasonable sum for the necessary services to the maximum extent allowed by law, including all expenses and court costs, of the attorney in the preparation and trial of this action and for appeals to the Court of Appeals or the Texas Supreme Court.

Certified Document Number: 77246890 - Page 13 of 17

## VII.
## CONDITIONS PRECEDENT

69.     All conditions precedent to bringing the above causes of action have been met or occurred.

## VIII.
## NO ELECTION OF REMEDIES

70.     The foregoing facts and theories are pled cumulatively and alternatively, with no election or waiver of rights or remedies.

## IX.
## TRIAL BY JURY

71.     Plaintiffs request trial by jury and have submitted the appropriate jury fee.

## X.
## PRAYER

WHEREFORE, PREMISES CONSIDERED, Allen Lawrence Berry and Danny Davis pray that they take judgment against Defendants and recover:

    a.     All the actual damages and special damages caused by the wrongful conduct complained of herein;

    b.     Just and reasonable attorney's fees;

    c.     Pre- and post-judgment interest;

    d.     Costs of suit; and

    e.     Other such relief at law and equity for which it may be justly entitled.

Respectfully submitted,

**BUTCH BOYD LAW FIRM**

_____
ERNEST W. BOYD
State Bar No. 00783694
butchboyd@butchboydlawfirm.com
JEREMY R. STONE
State Bar No. 24013577
jeremystone@butchboydlawfirm.com
CHERYL L. TURNER
State Bar No. 24076279
cherylturner@butchboydlawfirm.com
2905 Sackett Street
Houston, TX 77098
Phone:  (713) 589-8477
Fax:  (713) 589-8563

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and complete copy of this document was served on all counsel of record by method indicated below on the 31st day of October, 2017:

Mr. J. Marcus "Marc" Hill
Hill & Hill, P.C. Law Firm
1770 St. James Place, Ste. 115
Houston, TX 77056
marc@hillpclaw.com
Facsimile (713) 688-2817
***Attorney for Defendant, Lars Degenhardt***

Mr. John Scott Black
Mr. Richard D. Daly
Ms. Melissa Waden Wray
Daly & Black, P.C.
2211 Norfolk Street, Ste. 800
Houston, TX 77098
jblack@dalyblack.com
rdaly@dalyblack.com
mwray@dalyblack.com
Facsimile: (713) 655-1587
***Attorneys for Defendant Damon Kade***

Mr. Chris Reynolds
Mr. Christopher M. Hogan
1100 Louisiana Street, Ste. 3500
Houston, TX 77002
creynolds@reynoldsfrizzell.com
chogan@reynoldsfrizzell.com
Facsimile: (713) 785-7250
***Attorneys for Defendants, Furie Operating Alaska, LLC and Cornucopia Oil & Gas Company, LLC***

Certified Document Number: 77246890 - Page 16 of 17

Robert G. Taylor, III
Law Office of Robert G. Taylor, III
Texas Bar Number 19721100
4119 Montrose, Suite 550
Houston, Texas 77006
Rt3atty@gmail.com
Tel. No. (713) 654-7799
Facsimile: (713) 654-7814
***Attorney for Intervenors Taylor Minerals, LLC and GIZA HOLDINGS, LLC***

_____
ERNEST ("BUTCH") BOYD



I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   <u>November 5, 2019</u>

Certified Document Number:   <u>77246890 Total Pages:  17</u>

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**